## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **CARLOS TURNER** | : | |
| **265 WOODSTREAM DRIVE** | | |
| **SPRINGBORO, OH 45066** | : | **JUDGE:** |
| | | **CASE NO.:** |
| **and** | : | |
| | | |
| **DIANA DAVOLI-TURNER** | : | |
| **265 WOODSTREAM DRIVE** | | |
| **SPRINGBORO, OH 45066** | : | |
| | | |
| **and** | : | |
| | | |
| **MIAMI VALLEY FAIR HOUSING** | : | |
| **CENTER, INC.** | | |
| **505 RIVERSIDE DRIVE** | : | |
| **DAYTON, OH 45406** | | |
| | : | |
|    **Plaintiffs,** | | |
| | : | |
| **v.** | | |
| | : | |
| **HENLEY APPRAISALS, LLC** | | |
| **ATTN: US CORP. OF AGENTS** | : | |
| **1991 CROCKER ROAD, #600-755** | | |
| **WESTLAKE, OH 44145** | : | |
| | | |
| **and** | : | |
| | | |
| **KEVIN D. HENLEY** | : | |
| **1818 ASHLEY DRIVE** | | |
| **MIAMISBURG, OH 45342** | : | |
| | | |
| **and** | : | |
| | | |
| **U.S. BANCORP, INC. D/B/A** | : | **COMPLAINT** |
| **U.S. BANK** | | **JURY TRIAL DEMANDED** |
| **800 NICOLLET MALL** | : | |
| **MINNEAPOLIS, MN 55402** | | |
| | : | |
|    **Defendants.** | | |
| | : | |

## COMPLAINT

Now come Plaintiffs, Carlos Turner, Diana Davoli-Turner, and the Miami Valley Fair Housing Center, Inc. (collectively the "Plaintiffs"), by and through counsel, and for their Complaint state as follows:

## INTRODUCTION

1. Plaintiffs bring this civil action for damages, injunctive relief, and declaratory relief against Defendants, Henley Appraisals, LLC, Kevin D. Henley, and U.S. Bancorp, Inc. d/b/a U.S. Bank (collectively the "Defendants"), to seek redress for violations of Fair Housing Act, 42 U.S.C. § 3601 *et seq*., the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*., the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, the Ohio Fair Housing Act, Ohio Rev. Code § 4112.01, *et seq.,* and Ohio tort law.

2. Defendants, Henley Appraisals, LLC and Kevin Henley, discriminated against Plaintiffs, Carlos Turner and Diana Davoli-Turner, by dramatically undervaluing their home in an appraisal because of the race and national origin of Plaintiffs, Carlos Turner and Diana Davoli-Turner. Plaintiff Carlos Turner is a Black, African-American male. Plaintiff Diana Davoli-Turner is a Canadian citizen with permanent residency in the United States.

3. Defendant U.S. Bancorp, Inc. d/b/a U.S. Bank discriminated against Plaintiffs, Carlos Turner and Diana Davoli-Turner, by knowingly relying on the discriminatory appraisal to deny Plaintiffs a refinance loan, and by failing to maintain any supervision or review process over appraisals when discrimination complaints are made.

4. Defendant U.S. Bancorp, Inc. d/b/a U.S. Bank further discriminated against Plaintiffs by asking inappropriate questions and making unlawful statements to Plaintiff Diana Davoli-Turner regarding her citizenship status prior to the appraisal process. Additionally, U.S.

Bank created unlawful barriers for Plaintiffs to refinance their home, which resulted in significant delay and further harmed Plaintiffs.

5. Defendants' discriminatory misconduct frustrates the mission of Plaintiff, the Miami Valley Fair Housing Center, and forced them to divert their scarce resources to counteract the discrimination.

6. Plaintiffs, Carlos Turner and Diana Davoli-Turner, (hereinafter the "Turner Plaintiffs") own real property at 265 Woodstream Drive, Springboro, OH 45066 (the "Subject Property"). The Subject Property in Springboro is a large home, with nearly 4,000 SQ FT of living area with a 2-car attached garage. Springboro, as well as the Turner Plaintiffs' neighborhood, is predominantly white, with the Black population making up less than 2% of the town's total population. The Turner Plaintiffs purchased their home in November 2020 for $442,000 and made substantial alterations and improvements to the property after that time.

7. Defendants, Henley Appraisals, LLC, and Kevin D. Henley violated the federal and state Fair Housing Act, the Civil Rights Act of 1866, and state tort law when they dramatically undervalued the Subject Property. Defendant Henley Appraisals, LLC knew or should have known that the significant undervaluing of the Subject Property would result in adverse credit decisions by the lender, U.S. Bank.

8. Defendant, U.S. Bancorp, Inc. d/b/a U.S. Bank, violated the federal and state Fair Housing Act, the Civil Rights Act of 1866, the Equal Credit Opportunity Act, and state tort law when they denied the Turner Plaintiffs' refinance loan and home equity loan applications. Defendant, U.S. Bancorp, Inc. d/b/a U.S. Bank, further violated the state and federal Fair Housing Act when they imposed unfavorable terms and conditions on Plaintiffs' and

offered them a less favorable Home Equity Line of Credit ("HELOC") at 60% LtV with a variable interest rate rather than a fixed interest rate.

9. Defendant, U.S. Bancorp, Inc. d/b/a U.S. Bank, ignored critical civil rights protections for consumers when they failed to supervise or audit Defendant, Henley Appraisals, LLC's appraisal of the Subject Property, and failed to offer an appeals process to Plaintiffs to protect them from Henley's discriminatory appraisal.

10. Defendants' appraisal and interactions with the Turner Plaintiffs are consistent with a pattern of discriminatorily undervaluing homes and offering unfavorable loan terms to minorities.

11. The Turner Plaintiffs informed Defendant, U.S. Bancorp d/b/a U.S. Bank that Defendant, Henley Appraisals, LLC's appraisal was riddled with errors and omissions. Despite Plaintiffs' complaints, neither Defendant offered to re-appraise the Subject Property or offer any type of appeals process.

12. Plaintiffs later conducted a "whitewashed" appraisal with an independent appraiser. Plaintiffs whitewashed the Subject Property by removing all family photographs and artwork that would be associated with Black or Canadian culture. The independent appraiser valued the Subject Property at $655,000, more than 39% percent higher than that of Defendant Kevin Henley of Henley Appraisals, LLC. That value far outpaces the year over year increase in property values in Springboro and the Turner Plaintiffs' neighborhood.

13. The final home appraisal (the "Whitewashed Appraisal") was more consistent with the real estate market in the area.

14. Defendants' unlawful actions resulted in harm to Plaintiffs. The Turner Plaintiffs lost the opportunity to refinance their home with an interest rate of 4%. The Turner Plaintiffs also lost the opportunity to obtain a home equity loan at 5.9%. They had to obtain a HELOC at a variable rate which is now over 10%. Furthermore, the HELOC had significantly worse terms and conditions compared to the original refinance loan for which they applied and that was advertised and available to other applicants of U.S. Bank at the same time.

15. During the period that the Turner Plaintiffs pursued a loan with U.S. Bank and attempted to overcome various barriers created by U.S. Bank's actions, refinance rates in the Cincinnati market increased by approximately 2%.

16. As a result of Defendants' unlawful actions, the Turner Plaintiffs contacted the Plaintiff, Miami Valley Fair Housing Center, Inc., to see what their rights were. Plaintiff, Miami Valley Fair Housing Center ("MVFHC"), launched an investigation into the alleged lending and financing discrimination. Defendants' discriminatory misconduct forced MVFHC to drain their limited resources. Defendants' unlawful actions impaired MVFHC's ability to operate as a fair housing organization.

17. Plaintiffs were injured as a result of Defendants' unlawful actions as described herein.

18. Now come Plaintiffs seeking injunctive relief, damages, and any other relief that they are entitled to in this action.

## JURISDICTION AND VENUE

19. Jurisdiction is appropriate in that this civil action is brought under the Federal Fair Housing Act ("FHA"), Federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, *et seq*., the Equal Credit Opportunity Act, and the Civil Rights Act of 1866.

20. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises federal questions under the FHA, FHAA, the Equal Credit Opportunity Act, and the Civil Rights Act of 1866. Additionally, this Court has supplemental jurisdiction over related state law claims, Ohio Rev. Code § 4112.01, *et seq*. (the "Ohio Fair Housing Act"), and Plaintiffs' Ohio tort law claims, under 28 U.S.C. § 1367.

21. The Defendants are subject to the jurisdiction of this Court as they are "Persons" under the FHA and Ohio Fair Housing Act, and the acts described herein occurred primarily in Springboro, Ohio.

22. Defendants conduct business across Ohio, including in Warren County, Ohio. Each Defendant conducts substantial business in the greater Miami Valley region.

23. Venue is proper in this Court in that the discriminatory acts occurred primarily in Springboro, Ohio.

24. Wherefore, Plaintiff respectfully requests that this Court take jurisdiction of this Complaint and award such relief as is appropriate under the federal and state fair housing laws.

## PARTIES

25. Plaintiff, Carlos Turner ("Plaintiff Turner"), is a Springboro, Ohio resident. Plaintiff Turner is a Black, African-American male. Plaintiff Turner is collectively referred to as the "Turner Plaintiffs" throughout this Complaint along with Plaintiff, Diana Davoli-Turner.

26. Plaintiff, Diana Davoli-Turner ("Plaintiff Davoli-Turner"), is a Springboro, Ohio resident. Plaintiff Davoli-Turner is a Canadian citizen and permanent resident of the United States. Plaintiff, Diana Davoli-Turner, is collectively referred to as the "Turner Plaintiffs" throughout this Complaint along with Plaintiff, Carlos Turner.

27. Plaintiff, Miami Valley Fair Housing Center, Inc. ("MVFHC"), is a private, non-profit corporation, organized under the laws of the State of Ohio. MVFHC is governed by a volunteer board of directors and has a principal place of business in Dayton, Montgomery County, Ohio. The mission of MVFHC is to eliminate housing discrimination and ensure equal housing opportunity for all people in the region, the State of Ohio, and nationally.

28. Defendant, Henley Appraisals, LLC, is an Ohio corporation. Upon information and belief, Kevin D. Henley is a licensed appraiser and the owner of Henley Appraisals, LLC. Defendant maintains a principal place of business at 1818 Ashley Drive Miamisburg, OH 45342. Throughout the Complaint, this Defendant is collectively referred to as "Defendant Henley" or the "Henley Defendants" along with Defendant, Kevin D. Henley.

29. Defendant, Kevin D. Henley, is a Miamisburg, Ohio resident. Defendant Kevin Henley owns, operates, and manages Defendant, Henley Appraisals, LLC. Throughout the Complaint, this Defendant is collectively referred to as "Defendant Henley" or the "Henley Defendants" along with Defendant, Henley Appraisals, LLC.

30. Defendant, U.S. Bancorp, Inc. (hereinafter "U.S. Bank"), is an American bank holding company based in Minneapolis, Minnesota, and incorporated in Delaware. It is the parent company of U.S. Bank National Association, and it is the fifth largest banking institution in the United States. Defendant, U.S. Bank does business across the United States, including in the State of Ohio, and the Miami Valley region.

31. Defendant, U.S. Bank's, business is subject to laws that regulate the method by which appraisals are ordered and reviewed. These laws also regulate its interactions with appraisers.

32. In acting or omitting to act as alleged herein, each Defendant acted through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

33. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent was subsequently ratified and adopted by one or more Defendants as principal.

**FACTS**

34. Plaintiffs reallege and restate each and every allegation contained in Paragraphs 1 through 33 as if fully restated herein.

35. Plaintiff Turner is a Black, African-American male and therefore protected from discrimination on the basis of race.

36. Plaintiff Davoli-Turner is a Canadian citizen with permanent residency in the United States. She is protected from discrimination on the basis of national origin. Plaintiff Davoli-Turner handled most of the communications with Defendants.

37. The Turner Plaintiffs' residence (i.e., the Subject Property) is a large home built in 2012. It has nearly 4,000 square foot of living space with 4 bedrooms and 2.5 bathrooms. Prior to the Turner Plaintiffs' purchasing the Subject Property, it had an unfinished basement.

38. The Turner Plaintiffs purchased the Subject Property in November 2020 for approximately $442,000.00 when interest rates were at a historic low.

39. After taking possession of the Subject Property, the Turner Plaintiffs made substantial improvements to the Subject Property. The improvements included, but were not limited to, finishing the basement to increase the livable space at the Subject Property. The cost to

refinish the basement was in excess of $30,000.00. Since rates were beginning to rise, Plaintiffs thought this was the right time to refinance their home to pay off debts they incurred in renovating and improving the Subject Property.

40. The Turner Plaintiffs knew they would need an appraisal to determine the value of the Subject Property. Obtaining a real estate appraisal is generally a necessary step on the path to obtaining a mortgage or refinancing the mortgage of a house in the United States. Mortgage lenders require appraisals – defined by the Uniform Standards of Professional Appraisal Practice (USPAP) as professional, reasoned, and credible assessments of a property's value as of a given date – before approving loans. With few exceptions, home buyers cannot obtain a mortgage, and homeowners cannot refinance a mortgage, without submitting to an appraisal. Because the vast majority of home sales in the United States require mortgage financing, the vast majority of home sales require the use of a professional appraiser to generate an appraisal report of value.

41. The Turner Plaintiffs' first contacted their lender at the time about refinancing. The Turner Plaintiffs' obtained an appraisal that came back with a value of $520,000.00 in March 2022. This appraisal was conducted by Jeff Newsom of Appraisal Ohio, LLC. This appraisal is attached as Plaintiff's Exhibit #1.

42. The Turner Plaintiffs failed to lock in the interest rate with their lender at the time and rates began increasing while they shopped. Since their lender's rate looked higher than others, the Turner Plaintiffs began looking elsewhere for better rates and terms.

43. In March or April 2022, the Turner Plaintiffs observed advertisements to refinance at 4% by Defendant, U.S. Bank.

44. Plaintiff Davoli-Turner then began communicating with U.S. Bank in order to refinance and cash out approximately $60,000.00. Plaintiff Davoli-Turner had a pre-existing relationship with U.S. Bank and thought they would be a good long-term partner.

45. The Turner Plaintiffs then completed an online loan application with Defendant U.S. Bank, in April 2022. The Turner Plaintiffs were denied after a hard credit check. The Turner Plaintiffs were unaware of any major delinquencies, so this prompted Plaintiff Davoli-Turner to visit U.S. Bank at a local branch, located 20 N Main St, Springboro, OH 45066.

46. During that visit, Plaintiff Davoli-Turner was steered toward a home equity loan by a U.S. Bank employee named Stephanie. This occurred after a review of the Turner Plaintiffs' credit history. Defendant, U.S. Bank, provided a loan disclosure statement for a home equity loan of $55,000 at 5.9% interest, and a 20-year term. Plaintiff Davoli-Turner was told that their home equity loan approval would not be an issue.

47. Upon information and belief, Plaintiff Davoli-Turner went forward with that application as interest rates were beginning to steadily rise.

48. After a review of their application, Defendant, U.S. Bank, issued a second denial to the Turner Plaintiffs.

49. After a few days of communicating back and forth with Defendant, U.S. Bank, the Turner Plaintiffs received a new offer for a $15,000.00 home equity loan (the "Second Home Equity Loan"). This offer came with a 6.25% interest rate and 20-year term. Plaintiff Davoli-Turner confirmed there would not be an additional hard pull on their credit reports.

50. A second hard credit check was made despite U.S. Bank's promise not to do so. The Second Home Equity Loan was denied a few days later. The pretextual reasons given by Defendant

U.S. Bank were (1) denial based on collateral; and (2) denial based on history of delinquency.

51. After extensive discussions, Plaintiff Davoli-Turner texted the U.S. Bank loan officer named Stephanie. Plaintiff Davoli-Turner also emailed Stephanie's supervisor named Bruce. These communications were prompted by a verbal conversation with U.S Bank that they would be unable to do up to 80% Loan-to-Value Ratio (LtV) because of Plaintiff Davoli-Turner's citizenship status.

52. The U.S. Bank loan officer stated she could not confirm internal company policy. However, it was later confirmed by the Turner Plaintiffs and Plaintiff, MVFHC, through the U.S. Bank website and U.S. Bank chat feature, that 80% LtV was the standard for U.S. Bank for their home equity loans.

53. After this, in April 2022, Defendant U.S. Bank, requested that Plaintiff Davoli-Turner email U.S. Bank her green card as evidence of her Permanent Resident status. Although Plaintiff Davoli-Turner questioned the legitimacy and reason for the request, she provided the requested information to U.S. Bank.

54. After doing so, the Turner Plaintiffs were told by U.S. Bank that a Home Equity Line of Credit could be approved. The Turner Plaintiffs completed yet another application with Defendant U.S. Bank. U.S. Bank, for the first time, ordered an appraisal of the Subject Property even though it had been appraised just 27 days before in March 2022. As referenced in this Complaint, the first appraisal came back and valued the Subject Property at $520,000. The Turner Plaintiffs were told first by Defendant U.S. Bank that the appraisal had to have occurred within thirty (30) days, and later that U.S. Bank preferred to use its own appraisers.

55. The second appraisal was an external, drive-by appraisal, conducted by Thomas Augsperger, Residential Equity Specialists. The second drive-by appraisal valued the Subject Property at $485,000. That appraisal did not consider the improvements to the interior nor did it consider the recently finished basement. This appraisal is attached as Plaintiff's Exhibit #2.

56. Plaintiff Davoli-Turner initially questioned the Defendant, U.S. Bank about the appraisal, as it did not include a review of the interior of the residence. Defendant, U.S. Bank, and its loan officer, Stephanie, said they would work on overriding the second appraisal as it was unreliable.

57. Defendant, Henley Appraisals, LLC, was then assigned to appraise the Subject Property on behalf of Defendant, U.S. Bank. Upon information and belief, Defendant Kevin Henley, owner of Defendant Henley Appraisals, LLC, visited the Subject Property when the Turner Plaintiffs were home. The sole purpose of the visit was to appraise the Subject Property on behalf of U.S. Bank.

58. The Henley Defendants: failed to measure inside the Subject Property, questioned why the Turners sent their children to a private Catholic school for athletics rather than Springboro High School, and failed to take into account all other improvements made by the Turner Plaintiffs at the Subject Property. The Henley Defendants' appraisal is attached as Plaintiffs' Exhibit #3.

59. To appraise the Turner Plaintiff's home, Defendant Henley used the sales comparison approach. In this common appraisal method, an appraiser assesses the value of a home by identifying recent sales prices of similar homes in the area, called "comparables" or "comps." The rationale underlying this approach is that the sales prices of comparable

properties from the same neighborhood from a similar time period are considered the best indicator of value. However, it simultaneously presents significant fair lending risks, as appraisers have broad discretion in selecting comps and establishing neighborhood boundaries, which opens the door for discrimination.

60. As explained below, the Henley Defendants' undervaluation of the Turner Plaintiffs' home reflected their belief that, because Plaintiff Turner is Black, and Plaintiff Davoli-Turner is not a U.S. citizen, they did not belong in Springboro, a predominantly white city. Because of these discriminatory beliefs, Defendant Henley did not follow proper and well-established appraisal standards including searching for and selecting similar homes throughout the neighborhood to use as comps or measuring the interior of the property. Instead, Defendant Henley arbitrarily and without justification restricted the area from which he selected comps, selected ill-suited homes with low values as comps, and further improperly devalued the comps he selected.

61. Defendant, Henley Appraisals, LLC, undervalued the Subject Property at $470,000. This appraisal was riddled with errors, omissions, and inaccuracies. For example:

    **A.** the square footage on the Turner Plaintiff's home was incorrect,

    **B.** Defendant utilized older comps,

    **C.** the square footage inaccuracies inflated the square foot value of those comps,

    **D.** Defendant's appraisal was $15,000 less than the second appraisal, which was a drive-by appraisal and did not even include information about the recently finished basement, and

    **E.** Defendant used one comp that was nineteen (19) months before the Turner Plaintiffs' appraisal when the real estate market was substantially different and even pre-dated the Turner Plaintiff's purchase of the Subject Property. The 266

Woodstream comp may have been appropriate at the time of purchase, but it was not reliable 19 months later.

62. After receiving this appraisal, Plaintiff Davoli-Turner questioned Defendant U.S. Bank on its veracity. She requested reconsideration of the appraisal as there would be no rationale for this appraisal to come back over $50,000 less than the first appraisal, nor was there any legitimate reason that an appraisal of the entire property would come back $15,000 less than the second appraisal, which was merely a drive-by appraisal that did not take into consideration the recently finished basement.

63. Defendant, U.S. Bank stated there would be no reconsideration and they would be utilizing Defendant Henley's appraisal. Defendant, U.S. Bank, ignored the realities that the appraisal was flawed, riddled with errors and inaccuracies, and came with an indication of bias because of the Turner-Henley conversations that Plaintiff Davoli-Turner reported to U.S. Bank. Bruce from U.S. Bank communicated with Plaintiff Davoli-Turner and acknowledged the errors and omissions in the Henley Defendants' appraisal.

64. In June 2022, Defendant, U.S. Bank offered a home equity line of credit (the "HELOC") with a credit limit of $34,363 for 30-year term with a variable interest rate. This offer was made pursuant to the third appraisal by Defendant, Henley Appraisals, LLC. The Turner Plaintiffs, having recognized that the real estate market was drastically changing, were forced to accept this offer due to changing market conditions and the discriminatory appraisal conducted by the Henley Defendants and endorsed by U.S. Bank.

65. The terms of the HELOC were drastically different than the original offers made by Defendant, U.S. Bank. The Turner Plaintiffs are now paying variable interest, which is currently over 10% per month on the HELOC.

66. Because of this discriminatory treatment, the Turner Plaintiffs sought guidance from Plaintiff, MVFHC, regarding their rights.

## MVFHC INVESTIGATION AND WHITEWASHED APPRAISAL

67. After speaking with the Turner Plaintiffs, Plaintiff, MVFHC launched an investigation into Defendant, U.S. Bank's policy and procedures with respect to lending and refinancing. MVFHC also conducted an investigation of Defendant Henley's appraisal.

68. Suspecting bias in the lending and appraisal process, Plaintiff, MVFHC, along with the Turner Plaintiffs decided to test a whitewashed appraisal. This was the fourth appraisal conducted on the Subject Property and was conducted after Defendant Henley's appraisal. The whitewashed appraisal is attached as Plaintiffs' exhibit #4.

69. "Whitewashing" is where a black homeowner removes markers of black identity, such as family photographs, from their home and enlists a white person to stand in as the homeowner when an appraiser is present, thereby making it seem to the appraiser that the house is owned by white people. Black homeowners regularly see valuations of their homes increase appreciably under whitewashing tests. The increased prevalence of whitewashing is responsible for raising awareness of appraisal discrimination.

70. Before the whitewashed appraisal, Plaintiffs removed family photographs and other markers of Black and Canadian identity from their home.

71. Plaintiffs felt embarrassed, humiliated, and angered that they had to carry out this experiment.

72. The whitewashed appraisal was conducted on or around May 15, 2023. Consistent with their whitewashing test, however, neither Plaintiffs' children nor the Turner Plaintiffs were home. By all appearances, Plaintiffs' home was owned by a white family.

73. The whitewashed appraisal came back with a value of $655,000. This valuation far outpaces the increase in property values in the Springboro housing market year over year.

74. Plaintiffs made no significant improvements in their home in the interim, and although median home prices had increased, the movement from Defendant Henley's appraisal of $470,000 to the whitewashed appraisal of $655,000 represented a 39.4% increase in value, which far exceeds the expected value increase on an annual basis in the Springboro housing market.

75. The first appraisal and whitewashed appraisal confirm that Defendant Henley's appraisal was grossly inconsistent with appraisal guidelines and principles and that their excuses for devaluing the Turner Plaintiffs' home were invalid and pretextual.

**INJURY TO PLAINTIFFS**

76. The harm caused by appraisal discrimination to minority families and society at large is staggering. This discrimination prevents people and families of color from being able to purchase homes and access the equity in the homes they already own, thus preventing them from building generational wealth via homeownership, as so many Americans have done. This contributes to the nation's widening racial wealth gap.

77. Plaintiffs have suffered similar harm due to the appraisal discrimination caused by Defendants, U.S. Bank, Kevin Henley, and Henley Appraisals, LLC.

78. Defendant Henley intentionally engaged in discriminatory practices in appraising the Turner Plaintiffs' home, by (1) arbitrarily selecting comps, which were in effect, not true "comps"; (2) underestimating the increased living space and the finished basement; and (3) further depressing the appraisal by making unjustifiable adjustments that further devalued the Plaintiffs home.

79. The Henley Defendants' did so because of their beliefs that Plaintiff Turner and Plaintiff Davoli-Turner, a mixed-race couple, did not belong in Springboro, an attractive and predominantly affluent, white town. Henley's undervaluation also reflected their belief that the Turner Plaintiffs' home is worth less than other homes in Springboro because the homeowners are a mixed-race couple. Additionally, Defendant Henley made disparaging comments during the appraisal process about the Turner Plaintiffs sending their children to a private school for sports rather than supporting Springboro High School athletics. The Turner Plaintiffs construed these comments as racial discrimination.

80. The Henley Defendants' discrimination prevented the Turner Plaintiffs from realizing the benefit of their home's true value with U.S. Bank. As a result of Defendant Henley's discriminatory appraisal, the Turner Plaintiffs' borrowing limit for the HELOC was substantially lower than they needed and came with unfavorable terms and conditions.

81. Defendant Henley's actions also caused the Turner Plaintiffs significant emotional distress, including humiliation and embarrassment, arising from being subject to discrimination and having to whitewash their own home.

82. Defendant U.S. Bank injured Plaintiffs by relying on Defendant Henley's discriminatory appraisal to deny the Plaintiffs' loan despite the fact that it knew or should have known that the appraisal was racially discriminatory—it was an obvious and egregious undervaluation of the Springboro home, and the Turner Plaintiffs notified their loan officer at U.S. Bank that they understood the valuation to be caused by some type of bias or unlawful motive.

83. This injury was compounded by U.S. Bank's refusal to meaningfully investigate or respond to the Plaintiffs' reconsideration request of the appraisal. Instead, U.S. Bank handled the Plaintiffs' reconsideration request by stating they would not pay for another appraisal,

rather than rightly recognizing that the Henley Defendants' appraisal was infected by discrimination and sending it to a new appraiser for a second opinion. As a result, the Turner Plaintiffs were unable to realize the benefit of their home's true value.

84. The Turner Plaintiffs were further steered toward a different type of financing with U.S. Bank, the HELOC, which came with a variable interest rate, for which the Turner Plaintiffs are now being charged double in interest what they would have received had U.S. Bank not denied their earlier applications for loans with better terms due to Plaintiff Davoli-Turner's national origin and immigration status.

85. Defendant U.S. Bank further injured the Turner Plaintiffs by causing them significant emotional distress, including humiliation and embarrassment, arising from being subjected to discrimination and having to erase themselves from their home to assess whether they were the basis of the lower valuation. Defendants' actions were willful and/or taken in reckless disregard of the civil right protections of the Plaintiffs.

86. As a direct, proximate, and foreseeable result of Defendants' actions as described herein, Plaintiff, MVFHC, has suffered, continues to suffer, and will suffer in the future substantial, particularized, and concrete injuries.

87. Defendants' unlawful conduct, policies, and practices have frustrated and impaired MVFHC's mission and purpose, forced them to drain their limited and scarce resources, and interfered with their ability to operate as a Fair Housing Initiatives Program.

88. Defendants' conduct frustrated MVFHC's mission by interfering with their mission-related activities, impairing their ability to achieve their goals of ensuring equal and fair access to housing and lending opportunities, and harming their community.

89. Defendants' discriminatory conduct has forced and required MVFHC to engage in numerous activities to identify and counteract the Defendants' unlawful conduct, policies, and practices, in order to protect residents from unlawful housing discrimination.

90. Plaintiff, MVFHC, has conducted extensive investigations of race and national origin-related issues now for over a year to determine if this is a pattern or practice of the Defendants.

91. The investigations included research, whitewashing the Subject Property, education and outreach, post-testing research, and extensive discussions with experts and staff to resolve and ameliorate the discriminatory housing policies, practices, and services of Defendants.

92. MVFHC's diversion of time and resources to address Defendant's discriminatory conduct forced MVFHC to suspend, cancel, or postpone other projects that would have furthered its mission, including: conducting training sessions; investigating other housing providers, lenders, and appraisers; missing speaking engagements; missing grant opportunities including ARPA funding; delaying its Analysis of Impediments to Fair Housing Study in Montgomery County, Ohio; and other testing-related activity.

93. Defendants' unlawful conduct as described herein has frustrated MVFHC's mission and its ability to achieve its mission was perceptibly impaired by the race and national origin discrimination of the Defendants.

94. MVFHC will continue to divert its scarce resources and have its mission frustrated until Defendants' egregious discriminatory conduct ceases and the harms caused by Defendants on residents and prospective applicants are remedied and resolved.

**COUNT I – VIOLATION OF THE FAIR HOUSING ACT (All Defendants)**

**42 U.S.C. § 3601 et seq.**

95. Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 94 as if fully restated herein.

96. Defendants' conduct, as alleged herein, violates multiple provisions of the Fair Housing Act. Defendants injured Plaintiffs in violation of the Fair Housing Act by committing the following discriminatory practices:

   A. Discrimination in the terms, conditions, or privileges of a sale of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, or national origin, in violation of 42 U.S.C. § 3604(b);

   B. Discrimination in making available a residential real estate-related transaction, or in the terms or conditions of such a transaction, because of race, color, or national origin, in violation of 42 U.S.C. § 3605;

   C. Interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, including 42 U.S.C. §§ 3604, 3605, 3606, in violation of 42 U.S.C. § 3617;

   D. Making or printing a statement with respect to the sale of a dwelling that indicates preference, limitation, or discrimination based on race, or an intention to make such a preference, limitation or discrimination, in violation of 42 U.S.C. § 3604(c).

97. Accordingly, Plaintiffs are aggrieved persons under 42 U.S.C. section 3602, who are entitled to relief. 42 U.S.C. § 3613 (c).

98. Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

**COUNT II – VIOLATION OF THE CIVIL RIGHTS ACT OF 1866 (All Defendants)**

**99.** Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 98 as if fully restated herein.

**100.** In acting as alleged herein, Defendants have injured Plaintiffs by impairing their right to make and enforce contracts and to the full and equal benefit of the laws for security of property as is enjoyed by white citizens, in violation of 42 U.S.C. §§ 1981 and 1982.

**101.** Accordingly, Plaintiffs are entitled to relief under 42 U.S.C. §§ 1981,1982 and 1988(a).

**102.** Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

**COUNT III – VIOLATION OF THE OHIO FAIR HOUSING ACT (All Defendants)**

**Ohio Rev. Code § 4112.01, et seq.**

**103.** Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 102 as if fully restated herein.

**104.** Defendants' conduct, as alleged herein, violates multiple provisions of the Fair Housing Act. Defendants injured Plaintiffs in violation of the Fair Housing Act by committing the following discriminatory practices:

    **A.** Discrimination in the terms, conditions, or privileges of a sale of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, or national origin, in violation of Ohio Rev. Code § 4112.02(H)(4).

    **B.** Discrimination in making available a residential real estate-related transaction, or in the terms or conditions of such a transaction, because of race, color, or national origin, in violation of Ohio Rev. Code § 4112.02(H).

**C.** Interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, including Ohio Rev. Code § 4112.02(H)(12).

**D.** Making or printing a statement with respect to the sale of a dwelling that indicates preference, limitation, or discrimination based on race, or an intention to make such a preference, limitation or discrimination, in violation of Ohio Rev. Code § 4112.02(H)(7).

**105.** Accordingly, Plaintiffs are aggrieved persons under Ohio Rev. Code § 4112.01(A)(23) and are entitled to relief under the Ohio Fair Housing Act.

**106.** Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

**COUNT IV - Violation of the Equal Credit Opportunity Act (U.S. BANK)**

**15 U.S.C. § 1691, et seq.**

**107.** Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 106 as if fully restated herein.

**108.** Defendant U.S. Bank is a "creditor" within the meaning of 15 U.S.C.§ 1691a(e).

**109.** Defendant U.S. Bank's conduct, as alleged herein, constitutes discrimination with respect to aspects of a credit transaction on the basis of race, color, or national origin, in violation of 15 U.S.C. § 1691(a)(1).

**110.** Accordingly, Plaintiffs are aggrieved applicants who are entitled to relief under 15 U.S.C. § 1691(a)(1).

**111.** Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

### COUNT V – NEGLIGENT MISREPRESENTATION (Henley Defendants)

**112.** Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 111 as if fully restated herein.

**113.** The Henley Defendants owed a duty to Plaintiffs to provide an unbiased appraisal of the Subject Property based on all available information.

**114.** The Henley Defendants represented that they were providing an unbiased appraisal of the Subject Property.

**115.** The Henley Defendants' representations in their appraisal were untrue and unsupported by reliable data. Thus, Defendant Henley supplied false information including unreliable comps and an unsupported valuation of the Subject Property.

**116.** Plaintiffs reasonably relied on Defendant Henley's representations in order to obtain credit from Defendant U.S. Bank.

**117.** Defendant Henley's misrepresentations resulted in pecuniary loss to Plaintiffs, as Plaintiffs obtained a HELOC from Defendant, U.S. Bank which came with a higher interest rate and a reduced borrowing capacity due to Defendant Henley's discriminatory appraisal. The HELOC was obtained because refinance and home equity loans were no longer an option due to the low appraisal and arbitrary U.S. Bank policy of 60% LtV due to Plaintiff Davoli-Turner's immigration status.

**118.** Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

### COUNT VI – NEGLIGENT HIRING AND TRAINING (All Defendants)

**119.** Plaintiffs restate and reallege each and every allegation contained in Paragraphs 1 through 118 as if fully restated herein.

**120.** The Henley Defendants are in the business of real estate appraisals.

**121.** Defendant, U.S. Bank, is in the business of lending and financing for real estate transactions.

**122.** Defendants owe a duty of reasonable care to hire, train, and supervise employees, agents, and contractors with respect to all applicable laws and regulations.

**123.** Defendants breached their duty by failing to hire, properly train, and supervise employees, agents, and contractors with respect to appraisals and residential lending transactions.

**124.** As a direct and proximate result of Defendants' negligent hiring, training, and supervision Plaintiffs were harmed and therefore entitled to relief.

**125.** Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

**WHEREFORE**, due to Defendants' discriminatory conduct as described herein, Plaintiffs respectfully requests that this Court grant judgment in its favor, and against Defendants, as follows:

**A.** Declaring that Defendants' actions violate the Federal Fair Housing Act, 42 U.S.C. § 3601, et seq., Ohio Rev. Code § 4112.02, et seq., the Civil Rights Act of 1866, the Equal Credit Opportunity Act, and state tort law;

**B.** Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

**C.** Awarding compensatory and punitive damages in an amount in excess of $25,000.00 together with costs and reasonable attorney fees pursuant to 42 U.S.C. § 3613(c).

**D.** Mandate that the Defendants and all of their agents and employees receive training fair housing laws; and

**E.** Grant such additional legal and equitable relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues triable as of right.

Respectfully submitted,

*/s/ C. Jacob Davis*
_____
C. Jacob Davis (#0101745)
Nalls Davis
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 200-7285
Jacob.Davis@nallslaw.com

*Attorney for Plaintiffs, The Miami Valley*
*Fair Housing Center, Inc., Carlos Turner, and*
*Diana Davoli-Turner*

**DATED:** December 14, 2023

## CERTIFICATE OF SERVICE

I hereby certify that service is being made upon Defendants in accordance with the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ C. Jacob Davis*
_____
C.  Jacob Davis (#0101745)

**EXHIBIT 1 – First Appraisal**

# SUMMARY OF SALIENT FEATURES

|  | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | **265 Woodstream Dr** |
| | Legal Description | **SPRINGS 3 LOT: 88** |
| | City | **Springboro** |
| | County | **Warren** |
| | State | **OH** |
| | Zip Code | **45066** |
| | Census Tract | **0309.01** |
| | Map Reference | **17140** |
| **SALES PRICE** | Sale Price | $ |
| | Date of Sale | |
| **CLIENT** | Borrower/Client | **Diana Davoli-Turner** |
| | Lender | **Union Home Mortgage** |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | **3,988** |
| | Price per Square Foot | $ |
| | Location | **N;Res;** |
| | Age | **10** |
| | Condition | **C3** |
| | Total Rooms | **10** |
| | Bedrooms | **4** |
| | Baths | **2.1** |
| **APPRAISER** | Appraiser | **Jeff Newsom** |
| | Date of Appraised Value | **03/29/2022** |
| **VALUE** | Opinion of Value | **$ 520,000** |

FHA/VA Case No. | Page # 2 of 37

ACCUPRAISAL OHIO LLC



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
**265 Woodstream Dr**
**SPRINGS 3 LOT: 88**
**Springboro, OH 45066**

### FOR:
**Union Home Mortgage**
**8241 Dow Circle**
**Strongsville, OH  44136**

### AS OF:
**03/29/2022**

### BY:
**Jeff Newsom**
**Accupraisal Ohio LLC**
**PO Box 883**
**Springboro, OH  45066**
**513-260-8700**
**www.accupraisalohio.com**

FHA/VA Case No.

| Borrower/Client | Diana Davoli-Turner | | | | | File No. | 0322035 | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | | |
| City | Springboro | County | Warren | | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | | |

# TABLE OF CONTENTS

Summary of Salient Features ............................................................................................................................ 1
Cover Page ...................................................................................................................................................... 2
URAR ............................................................................................................................................................... 3
Additional Comparables 4-6 ............................................................................................................................ 9
Subject Photos ................................................................................................................................................ 10
Photograph Addendum .................................................................................................................................... 11
Photograph Addendum .................................................................................................................................... 12
Photograph Addendum .................................................................................................................................... 13
Photograph Addendum .................................................................................................................................... 14
Photograph Addendum .................................................................................................................................... 15
Photograph Addendum .................................................................................................................................... 16
Photograph Addendum .................................................................................................................................... 17
Photograph Addendum .................................................................................................................................... 18
Photograph Addendum .................................................................................................................................... 19
Comparable Photos 1-3 .................................................................................................................................. 20
Comparable Photos 4-6 .................................................................................................................................. 21
Building Sketch ................................................................................................................................................ 22
Flood Map ....................................................................................................................................................... 23
Location Map ................................................................................................................................................... 24
Accupraisal Addendum .................................................................................................................................... 25
Appraiser Independence Certification .............................................................................................................. 29
Statement of Limiting Conditions .................................................................................................................... 30
Limited License Agreement ............................................................................................................................. 31
Appraiser Disclosure Statement ..................................................................................................................... 32
UAD Definitions Addendum ............................................................................................................................. 33
License ............................................................................................................................................................ 36
Insur 22-23 ...................................................................................................................................................... 37

Accupraisal Ohio, LLC

FHA/VA Case No.     Page # 3 of 37

# Uniform Residential Appraisal Report

**812170**
File # **0322035**

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | |
|---|---|
| Property Address **265 Woodstream Dr** | City **Springboro**   State **OH**   Zip Code **45066** |
| Borrower **Diana Davoli-Turner**    Owner of Public Record **Diana Davoli-Turner** | County **Warren** |

Legal Description **SPRINGS 3 LOT: 88**

| Assessor's Parcel # **0403173004** | Tax Year **2021** | R.E. Taxes $ **6,010** |
|---|---|---|

Neighborhood Name **Springs/ Springboro**    Map Reference **17140**    Census Tract **0309.01**

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ **0**    ☒ PUD   HOA $ **900**   ☒ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe)

Lender/Client **Union Home Mortgage**    Address **8241 Dow Circle, Strongsville, OH 44136**

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).    **Dayton MLS search.**

## CONTRACT

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ **0**    Date of Contract    Is the property seller the owner of public record? ☐ Yes ☐ No   Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE $ (000) | AGE (yrs) | One-Unit | **100** % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | **379** Low | **1** | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | **674** High | **30** | Multi-Family | % |
| | | | | **450** Pred. | **15** | Commercial | % |
| | | | | | | Other | % |

Neighborhood Boundaries **Route 741 west, Yankee east, Lytle Five Pts south, Austin Pike nort.**

Neighborhood Description    **Shopping, schools, employment, and other such amenities within 2 miles of subject.**

Market Conditions (including support for the above conclusions)    **Conventional financing is prevalant, though FHA, VA, and alternate programs are readily available.**

## SITE

| | | |
|---|---|---|
| Dimensions **Slightly irregular** | Area **10019 sf** | Shape **Fairly rect**   View **N;Res;** |

Specific Zoning Classification **PUD**    Zoning Description **SFR**

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No   If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street **Asphalt** | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley **None** | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone **X**   FEMA Map # **39165C0030E**   FEMA Map Date **12/17/2010**

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No   If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No   If Yes, describe

**No illegal or non-conforming uses noted.**

## IMPROVEMENTS

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls | **Conc/ Avg** | Floors | **WdCptVnlLVT/Avg** |
| # of Stories **2** | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls | **BrkStnSid/avg** | Walls | **Drywall/ Avg** |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area **1,857** sq.ft. | | Roof Surface | **Asph Shingles/ Avg** | Trim/Finish | **Wd/Comp/Avg** |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish **95** % | | Gutters & Downspouts | **Metal/Avg** | Bath Floor | **VnlCT/Avg** |
| Design (Style) **Neo eclectic** | | ☐ Outside Entry/Exit ☒ Sump Pump | | Window Type | **Therm/Avg** | Bath Wainscot | **FbrglsCT/Avg** |
| Year Built **2012** | | Evidence of ☐ Infestation | | Storm Sash/Insulated | **Therm/Avg** | Car Storage | ☐ None |
| Effective Age (Yrs) **5** | | ☐ Dampness ☐ Settlement | | Screens | **Yes/Avg** | ☒ Driveway # of Cars **2** |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | | Driveway Surface | **Conc/Avg** |
| ☐ Drop Stair ☐ Stairs | | ☐ Other   Fuel **Nat gas** | | ☒ Fireplace(s) # **2** ☒ Fence **Rear** | | ☒ Garage # of Cars **2** |
| ☐ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☐ Patio/Deck **Dk** ☐ Porch **Stoop** | | ☐ Carport # of Cars **0** |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool **None** ☒ Other **Conc pad** | | ☐ Att. ☐ Det. ☐ Built-in |
| | | | | | ☒ Woodstove(s) # **0** | | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☐ Microwave ☒ Washer/Dryer ☐ Other (describe)

| Finished area **above** grade contains: | **10** Rooms | **4** Bedrooms | **2.1** Bath(s) | **3,988** Square Feet of Gross Living Area Above Grade |
|---|---|---|---|---|

Additional features (special energy efficient items, etc.).    **Fin bsmt (rec rm, theater, bonus rm).**

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    **C3;No updates in the prior 15 years;A well-built and adequately maintained dwelling which projects average appeal. Functional utility is average, with adequately sized rooms, ample closet space, and an efficient layout. This dwelling meets functional and aesthetic expectations of purchasers in this price range.**

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No   If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No   If No, describe

---

| Freddie Mac Form 70 March 2005 | UAD Version 9/2011 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |
|---|---|---|---|

## Uniform Residential Appraisal Report

812170
File # 0322035

| There are | 6 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 410,000 | to $ | 584,900 | . |
| There are | 45 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 379,900 | to $ | 673,500 | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | **265 Woodstream Dr** **Springboro, OH 45066** | **21 Stanton Dr** **Springboro, OH 45066** | | **30 Willow Grove Dr** **Springboro, OH 45066** | | **80 Millard Ct** **Springboro, OH 45066** | |
| Proximity to Subject | | **0.31 miles W** | | **0.15 miles NW** | | **0.77 miles W** | |
| Sale Price | $ | **0** | $ | **495,000** | $ | **489,900** | $ | **530,000** |
| Sale Price/Gross Liv. Area | $ | sq.ft. | $ | **136.93** sq.ft. | $ | **160.52** sq.ft. | $ | **159.73** sq.ft. | |
| Data Source(s) | | **Day MLS 847097;DOM 53** | | **Day MLS 845921;DOM 35** | | **Day MLS 847588;DOM 47** | |
| Verification Source(s) | | **Aud MLS** | | **Aud MLS** | | **Aud MLS** | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | **ArmLth** **Conv;0** | | **ArmLth** **Conv;0** | | **ArmLth** **VA;0** | |
| Date of Sale/Time | | **s10/21;Unk** | | **s09/21;Unk** | | **s10/21;Unk** | |
| Location | **N;Res;** | **N;Res;** | | **N;Res;** | | **N;Res;** | |
| Leasehold/Fee Simple | **Fee Simple** | **Fee Simple** | | **Fee Simple** | | **Fee Simple** | |
| Site | **10019 sf** | **12319 sf** | **0** | **11500 sf** | **0** | **15464 sf** | **0** |
| View | **N;Res;** | **N;Res;** | | **N;Res;** | | **N;Res;** | |
| Design (Style) | **DT2;neo eclecti** | **DT2;neo eclecti** | | **DT2;neo eclecti** | | **DT2;neo eclecti** | |
| Quality of Construction | **Q3** | **Q3** | | **Q3** | | **Q3** | |
| Actual Age | **10** | **17** | **0** | **7** | **0** | **21** | **0** |
| Condition | **C3** | **C3** | | **C3** | | **C3** | |
| Room Count | Total **10** Bdrms. **4** Baths **2.1** | Total **10** Bdrms. **4** Baths **2.1** | | Total **10** Bdrms. **4** Baths **2.1** | | Total **11** Bdrms. **4** Baths **2.1** | |
| Gross Living Area | **3,988** sq.ft. | **3,615** sq.ft. | **+13,055** | **3,052** sq.ft. | **+32,760** | **3,318** sq.ft. | **+23,450** |
| Basement & Finished | **1857sf1764sfin** | **1904sf1050sfin** | **+2,500** | **1314sf674sfin** | **0** | **1747sf750sfin** | **0** |
| Rooms Below Grade | **1rr0br0.0ba2o** | **1rr0br0.0ba1o** | **0** | **1rr1br1.0ba0o** | **0** | **1rr0br1.0ba0o** | **0** |
| Functional Utility | **Average** | **Avg assumed** | **0** | **Avg assumed** | **0** | **Avg assumed** | **0** |
| Heating/Cooling | **Cent/ Cent** | **Cent/ Cent** | | **Cent/ Cent** | | **Cent/ Cent** | |
| Energy Efficient Items | **Therm win** | **Therm win** | | **Therm win** | | **Therm win** | |
| Garage/Carport | **2ga2dw** | **2ga2dw** | | **2ga2dw** | | **3ga3dw** | **-10,000** |
| Porch/Patio/Deck | **Stp, lg deck** | **Pch, pat, dk** | **0** | **Pch, pat** | **0** | **Patio,Porch** | **0** |
| Misc. | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 15,555 | ☒ + ☐ - | $ 32,760 | ☒ + ☐ - | $ 13,450 |
| Adjusted Sale Price of Comparables | | Net Adj. 3.1 % Gross Adj. 3.1 % | $ 510,555 | Net Adj. 6.7 % Gross Adj. 6.7 % | $ 522,660 | Net Adj. 2.5 % Gross Adj. 6.3 % | $ 543,450 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) **Aud/ Wlkthrgh/ Owner**
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) **Auditor, public record, MLS**
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | **11/09/2020** | | | |
| Price of Prior Sale/Transfer | $ **442,000** | | | |
| Data Source(s) | **Aud Wlkthrgh Owner** | **Aud MLS** | **Aud MLS** | **Aud MLS** |
| Effective Date of Data Source(s) | **03/29/2022** | **03/29/2022** | **03/29/2022** | **03/29/2022** |

Analysis of prior sale or transfer history of the subject property and comparable sales **Sales appear to be arms-length transactions (open-market,**
**unrelated, etc).**

Summary of Sales Comparison Approach **Since not every subject can be compared to "ideal" comparable sales, the appraiser has chosen the**
**best available sales from a market search which meets the investor underwriting standards. Every effort has been made to conform to**
**FNMA guidelines, and, in most cases, an even stricter interpretation which is common to most investors has been used.**

**Unable to bracket subject GLA with above ground square footage. It is not an overimprovement/ oversized for the market, but this**
**typically leads to a lower price/ sf thus the price/ sf is adjusted accordinly on the grid.**

**All seven properties are in the Settlers Walk development.**

Indicated Value by Sales Comparison Approach $ **520,000**

Indicated Value by: Sales Comparison Approach $ **520,000** Cost Approach (if developed) $ Income Approach (if developed) $
**See addendum.**

*SALES COMPARISON APPROACH*

*RECONCILIATION*

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: **No warranty of the subject is**
**given or implied. No liability is assumed for the structural or mechanical elements of the property.**

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ **520,000** , as of **03/29/2022** , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005 UAD Version 9/2011 Page 2 of 6 Fannie Mae Form 1004 March 2005

# Uniform Residential Appraisal Report

**812170**
File # **0322035**

| ADDITIONAL COMMENTS |
|---|
| Blank |
| See addendum |

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   **Not required by FNMA.   The cost approach is not completed because no weight would be placed on it (especially for a house of this age).   Weight in this report is on the Sales Comparison approach.**

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | ......................... =$ | **47,200** |
|---|---|---|---|---|
| Source of cost data | DWELLING | Sq.Ft. @ $ | ......... =$ | |
| Quality rating from cost service          Effective date of cost data | | Sq.Ft. @ $ | ......... =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | ......... =$ | |
| **Site value is per county auditor.  Neither this value, nor any** | Garage/Carport | Sq.Ft. @ $ | ......... =$ | |
| **derivative of it, should be used for insurance purposes.** | Total Estimate of Cost-New | | ......... =$ | |
| **Established neighborhood/ market with no vacant land sales** | Less          Physical | Functional | External | |
| **found.** | Depreciation | | =$( | ) |
| | Depreciated Cost of Improvements | | ......................... =$ | |
| **If the site value is >30% of the appraised value, this is an** | "As-is" Value of Site Improvements | | ......................... =$ | |
| **underwriting issue, not an appraisal issue.** | | | | |
| Estimated Remaining Economic Life (HUD and VA only)          45  Years | INDICATED VALUE BY COST APPROACH | | ......................... = $ | |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X  Gross Rent Multiplier | = $ | | Indicated Value by Income Approach | |
|---|---|---|---|---|---|
| Summary of Income Approach (including support for market rent and GRM)          **NA  Owner occupied.** | | | | | |

## PROJECT INFORMATION FOR PUDs (if applicable)

| Is the developer/builder in control of the Homeowners' Association (HOA)? | ☐ Yes ☒ No | Unit type(s) | ☒ Detached | ☐ Attached |
|---|---|---|---|---|

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

| Legal Name of Project | | | |
|---|---|---|---|
| Total number of phases | Total number of units | Total number of units sold | |
| Total number of units rented | Total number of units for sale | Data source(s) | |
| Was the project created by the conversion of existing building(s) into a PUD? | ☐ Yes | ☐ No  If Yes, date of conversion. | |
| Does the project contain any multi-dwelling units? | ☐ Yes ☐ No  Data Source | | |
| Are the units, common elements, and recreation facilities complete? | ☐ Yes | ☐ No  If No, describe the status of completion. | |
| Are the common elements leased to or by the Homeowners' Association? | ☐ Yes | ☐ No  If Yes, describe the rental terms and options. | |
| Describe common elements and recreational facilities. | | | |

## Uniform Residential Appraisal Report

812170
File # 0322035

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE:  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:  The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Uniform Residential Appraisal Report

812170
File # 0322035

**APPRAISER'S CERTIFICATION:**   The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

# Uniform Residential Appraisal Report

812170
File # 0322035

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature    Jeff Newsom | Signature |
| Name    Jeff Newsom | Name |
| Company Name    Accupraisal Ohio, LLC | Company Name |
| Company Address    PO Box 883 | Company Address |
|    Springboro, OH 45066 | |
| Telephone Number    (513) 260-8700 | Telephone Number |
| Email Address    accuohio@yahoo.com | Email Address |
| Date of Signature and Report    03/30/2022 | Date of Signature |
| Effective Date of Appraisal    03/29/2022 | State Certification # |
| State Certification #    2007000035 | or State License # |
| or State License # | State |
| or Other (describe)                    State # | Expiration Date of Certification or License |
| State    OH | |
| Expiration Date of Certification or License    03/30/2023 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
265 Woodstream Dr
Springboro, OH 45066
APPRAISED VALUE OF SUBJECT PROPERTY $        520,000
LENDER/CLIENT
Name    No AMC
Company Name    Union Home Mortgage
Company Address    8241 Dow Circle, Strongsville, OH 44136

Email Address

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection
☐ Did inspect interior and exterior of subject property
    Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection

| FHA/VA Case No. | Page # 9 of 37 |
|---|---|

## Uniform Residential Appraisal Report

**812170**
**File # 0322035**

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | **265 Woodstream Dr** | **445 Woodstream Dr** | | **148 Winding Creek Dr** | | **50 Tyler Ct** | |
| | **Springboro, OH 45066** | **Springboro, OH 45066** | | **Springboro, OH 45066** | | **Springboro, OH 45066** | |
| Proximity to Subject | | **0.13 miles E** | | **0.21 miles SE** | | **0.40 miles NW** | |
| Sale Price | $ **0** | $ **465,000** | | $ **449,900** | | $ **461,000** | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ **187.27** sq.ft. | | $ **159.65** sq.ft. | | $ **151.94** sq.ft. | |
| Data Source(s) | | **Day MLS 841029;DOM 29** | | **Day MLS 852969;DOM 42** | | **Day MLS 856268;DOM 44** | |
| Verification Source(s) | | **Aud MLS** | | **Aud MLS** | | **Aud MLS** | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | **ArmLth** | | **ArmLth** | | **ArmLth** | |
| Concessions | | **Unknown;0** | | **Cash;0** | | **Conv;0** | |
| Date of Sale/Time | | **s07/21;c06/21** | | **s01/22;Unk** | | **s03/22;Unk** | |
| Location | **N;Res;** | **N;Res;** | | **N;Res;** | | **N;Res;** | |
| Leasehold/Fee Simple | **Fee Simple** | **Fee Simple** | | **Fee Simple** | | **Fee Simple** | |
| Site | **10019 sf** | **8756 sf** | **0** | **9932 sf** | **0** | **11108 sf** | **0** |
| View | **N;Res;** | **N;Res;** | | **N;Res;** | | **N;Res;** | |
| Design (Style) | **DT2;neo eclecti** | **DT1.5;Cape cod** | **0** | **DT1.5;CapeCod** | **0** | **DT2;neo eclecti** | |
| Quality of Construction | **Q3** | **Q3** | | **Q3** | | **Q3** | |
| Actual Age | **10** | **17** | **0** | **17** | **0** | **20** | **0** |
| Condition | **C3** | **C3** | | **C3** | | **C3** | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | **-4,000** | Total Bdrms. Baths | **-4,000** | Total Bdrms. Baths | |
| Room Count | **10** **4** **2.1** | **7** **2** **3.0** | **0** | **8** **3** **3.0** | **0** | **10** **4** **2.1** | |
| Gross Living Area | **3,988** sq.ft. | **2,483** sq.ft. | **+52,675** | **2,818** sq.ft. | **+40,950** | **3,034** sq.ft. | **+33,390** |
| Basement & Finished | **1857sf1764sfin** | **1929sf1418sfin** | **0** | **0sf** | **+20,000** | **1708sf0sfin** | **0** |
| Rooms Below Grade | **1rr0br0.0ba2o** | **1rr1br1.0ba1o** | **0** | | **+10,000** | | **+10,000** |
| Functional Utility | **Average** | **Avg assumed** | **0** | **Avg assumed** | **0** | **Avg assumed** | **0** |
| Heating/Cooling | **Cent/ Cent** | **Cent/ Cent** | | **Cent/ Cent** | | **Cent/ Cent** | |
| Energy Efficient Items | **Therm win** | **Therm win** | | **Therm win** | | **Therm win** | |
| Garage/Carport | **2ga2dw** | **3ga2dw** | **-10,000** | **2ga2dw** | | **2ga2dw** | |
| Porch/Patio/Deck | **Stp, lg deck** | **Stp, pat, encl** | **0** | **Patio,Porch** | **0** | **Stp, pat** | **+5,000** |
| Misc. | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ **38,675** | ☒ + ☐ - | $ **66,950** | ☒ + ☐ - | $ **48,390** |
| Adjusted Sale Price | | Net Adj. **8.3** % | | Net Adj. **14.9** % | | Net Adj. **10.5** % | |
| of Comparables | | Gross Adj. **14.3** % $ **503,675** | | Gross Adj. **16.7** % $ **516,850** | | Gross Adj. **10.5** % $ **509,390** | |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | **11/09/2020** | | | |
| Price of Prior Sale/Transfer | **$442,000** | | | |
| Data Source(s) | **Aud Wlkthrgh Owner** | **Aud MLS** | **Aud MLS** | **Aud MLS** |
| Effective Date of Data Source(s) | **03/29/2022** | **03/29/2022** | **03/29/2022** | **03/29/2022** |

Analysis of prior sale or transfer history of the subject property and comparable sales    **See main form(s).**

Analysis/Comments    **See main form(s).**

---

Freddie Mac Form 70 March 2005    UAD Version 9/2011    Fannie Mae Form 1004 March 2005

## Subject Photo Page

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | **Diana Davoli-Turner** | | | | | |
| Property Address | **265 Woodstream Dr** | | | | | |
| City | **Springboro** | County | **Warren** | State | **OH** | Zip Code **45066** |
| Lender | **Union Home Mortgage** | | | | | |



### Subject Front

**265 Woodstream Dr**

| | |
|---|---|
| Sales Price | **0** |
| Gross Living Area | **3,988** |
| Total Rooms | **10** |
| Total Bedrooms | **4** |
| Total Bathrooms | **2.1** |
| Location | **N;Res;** |
| View | **N;Res;** |
| Site | **10019 sf** |
| Quality | **Q3** |
| Age | **10** |



### Subject Rear



### Subject Street

## Photograph Addendum

| Borrower/Client | Diana Davoli-Turner | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | |



Front / side



Front/ side



Rear alt

FHA/VA Case No. | Page # 12 of 37

## Photograph Addendum

| Borrower/Client | Diana Davoli-Turner | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | |



View to rear



Liv



Din

FHA/VA Case No.     Page # 13 of 37

## Photograph Addendum

| Borrower/Client | Diana Davoli-Turner | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | |

**Lav**



**Util**



**Util**



## Photograph Addendum

| Borrower/Client | Diana Davoli-Turner | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | |



Kit din



Fam



Study

## Photograph Addendum

| Borrower/Client | Diana Davoli-Turner | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code 45066 |
| Lender | Union Home Mortgage | | | | | |



Blank



Gar



Bed

FHA/VA Case No. | Page # 16 of 37

## Photograph Addendum

| Borrower/Client | Diana Davoli-Turner | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | |

**Bath**



**Bed**



**Bed**



## Photograph Addendum

| | |
|---|---|
| Borrower/Client | **Diana Davoli-Turner** |
| Property Address | **265 Woodstream Dr** |
| City **Springboro** | County **Warren** State **OH** Zip Code **45066** |
| Lender | **Union Home Mortgage** |



**Bed**



**En suite**



**en suite alt**

## Photograph Addendum

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | **Diana Davoli-Turner** | | | | |
| Property Address | **265 Woodstream Dr** | | | | |
| City | **Springboro** | County | **Warren** | State **OH** | Zip Code **45066** |
| Lender | **Union Home Mortgage** | | | | |

**Bath**



**Bsmt**



**Bsmt**



FHA/VA Case No. | Page # 19 of 37

## Photograph Addendum

| Borrower/Client | Diana Davoli-Turner | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | |



Bsmt



Util

Blank

## Comparable Photo Page

| Borrower/Client | Diana Davoli-Turner | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | |



### Comparable 1

**21 Stanton Dr**

| | |
|---|---|
| Prox. to Subject | 0.31 miles W |
| Sale Price | 495,000 |
| Gross Living Area | 3,615 |
| Total Rooms | 10 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 12319 sf |
| Quality | Q3 |
| Age | 17 |



### Comparable 2

**30 Willow Grove Dr**

| | |
|---|---|
| Prox. to Subject | 0.15 miles NW |
| Sale Price | 489,900 |
| Gross Living Area | 3,052 |
| Total Rooms | 10 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 11500 sf |
| Quality | Q3 |
| Age | 7 |



### Comparable 3

**80 Millard Ct**

| | |
|---|---|
| Prox. to Subject | 0.77 miles W |
| Sale Price | 530,000 |
| Gross Living Area | 3,318 |
| Total Rooms | 11 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 15464 sf |
| Quality | Q3 |
| Age | 21 |

FHA/VA Case No. | Page # 21 of 37

## Comparable Photo Page

| Borrower/Client | Diana Davoli-Turner | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | |



### Comparable 4

**445 Woodstream Dr**

| | |
|---|---|
| Prox. to Subject | 0.13 miles E |
| Sale Price | 465,000 |
| Gross Living Area | 2,483 |
| Total Rooms | 7 |
| Total Bedrooms | 2 |
| Total Bathrooms | 3.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 8756 sf |
| Quality | Q3 |
| Age | 17 |



### Comparable 5

**148 Winding Creek Dr**

| | |
|---|---|
| Prox. to Subject | 0.21 miles SE |
| Sale Price | 449,900 |
| Gross Living Area | 2,818 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 9932 sf |
| Quality | Q3 |
| Age | 17 |



### Comparable 6

**50 Tyler Ct**

| | |
|---|---|
| Prox. to Subject | 0.40 miles NW |
| Sale Price | 461,000 |
| Gross Living Area | 3,034 |
| Total Rooms | 10 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 11108 sf |
| Quality | Q3 |
| Age | 20 |

## Building Sketch

| | |
|---|---|
| Borrower/Client | **Diana Davoli-Turner** |
| Property Address | **265 Woodstream Dr** |
| City | **Springboro** County **Warren** State **OH** Zip Code **45066** |
| Lender | **Union Home Mortgage** |

FHA/VA Case No. | Page # 22 of 37



TOTAL Sketch by a la mode, inc.

### Area Calculations Summary

**Living Area** — Calculation Details

| First Floor | 1857 Sq ft | |
|---|---|---|
| | | 44 × 26 = 1144 |
| | | 22 × 29 = 638 |
| | | 21 × 1 = 21 |
| | | 15 × 3 = 45 |
| | | 0.5 × 3 × 3 = 4.5 |
| | | 0.5 × 3 × 3 = 4.5 |
| Second Floor | 2131.25 Sq ft | |
| | | 21 × 9 = 189 |
| | | 15 × 8 = 120 |
| | | 36 × 27 = 972 |
| | | 21.5 × 37 = 795.5 |
| | | 15 × 3 = 45 |
| | | 0.5 × 3 × 3.5 = 5.25 |
| | | 0.5 × 3 × 3 = 4.5 |

| **Total Living Area (Rounded):** | **3988 Sq ft** |
|---|---|

**Non-living Area**

| 2 Car Attached | 572 Sq ft | |
|---|---|---|
| | | 22 × 25 = 550 |
| | | 2 × 11 = 22 |

# Flood Map

| Borrower/Client | Diana Davoli-Turner | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | |



FHA/VA Case No.          Page # 24 of 37

## Location Map

| Borrower/Client | Diana Davoli-Turner | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage | | | | | | |



**Accupraisal Addendum**

FHA/VA Case No.    Page # 25 of 37

File No. **0322035**

| Borrower/Client | Diana Davoli-Turner | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code 45066 |
| Lender | Union Home Mortgage | | | | | |

# Scope of Work

 I personally made a field inspection (when applicable) of the subject property unless otherwise noted.

The property being appraised and the comparable sales relied upon in making this appraisal were as represented in the appraisal.

To the best of my knowledge and belief the statements contained in the appraisal herein set forth are true, and the information upon which the opinions expressed therein are based is correct; subject to the limiting conditions therein set forth.

I understand that such appraisal may be used in connection with the acquisition of property for a project utilizing U.S. Department of Housing and Urban Development funds.

This appraisal has been made in conformity with appropriate laws, regulations, and policies and procedures applicable to appraisal of property for such purposes; and that to the best of my knowledge no portion of the value assigned to such property consists of items which are noncompensable under the established law of said State.

Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the project for which such property is acquired, or by the likelihood that the property would be acquired for such project, other than that due to physical deterioration within the reasonable control of the owner, was disregarded in determining the compensation for the property.

Neither my employment nor my compensation for making this appraisal and report are in any way contingent upon the values reported herein.

I have no direct or indirect present or contemplated future personal interest in such property or in any benefit from the acquisition of such property appraised.

I have not revealed the findings and results of such appraisal to anyone other than the proper officials of the acquiring agency or officials of the U.S. Department of Housing and Urban Development and I will not do so until so authorized by said officials, or until I am required to do so by due process of law, or until I am released from this obligation by having publicly testified as to such findings.

I have not given consideration to, or included in my appraisal, any allowance for relocation assistance benefits.

End

## Accupraisal Addendum

File No. **0322035**

| | |
|---|---|
| Borrower/Client | **Diana Davoli-Turner** |
| Property Address | **265 Woodstream Dr** |

| City | **Springboro** | County | **Warren** | State | **OH** | Zip Code | **45066** |
|---|---|---|---|---|---|---|---|

| Lender | **Union Home Mortgage** |
|---|---|

# Accupraisal Ohio General Addendum/ Notes

**This is a Appraisal Report.**

**The intended user of this report is limited solely to the identified client. The rationale for how the appraiser arrived at the opinions and conclusions set forth in the report may not be understood properly without additional information in the appraisers workfile.**

**Unless otherwise noted, no one provided significant real property appraisal assistance to the person signing this certification. If any individuals did provide significant real property appraisal assistance they are identified here along with a summary of the extent of the assistance provided in the report.**

The appraisal report is prepared for the sole and exclusive use of the appraiser's client. No third parties are authorized to rely upon this report without the express written consent of the appraiser and the appraiser's client. The client may not be the same party as the lender.
Those parties listed in Paragraph 23 of page 6, as well as possible others, may rely on this report as stated. However, the Scope of Work for the appraisal and the level of detail provided in the report were based solely on the requirements of the intended user specifically stated.

No employee, director, officer or agent of the lender, or any other third party acting as a joint venture partner, independent contractor, appraisal management company, or partner on behalf of the lender has influenced or attempted to influence the development, reporting, result or review of this assignment through coercion, extortion, collusion, compensation, instruction, inducement, intimidation, bribery or in any other manner.

I have not been contacted by anyone other than the intended user (lender/client as identified on the first page of the report), borrower, or designated contact to make an appointment to enter the property.

The source of definitions in this appraisal is FNMA.

The appraisal is NOT a home inspection. The appraiser conducted only a visual observation of readily accessible areas. The appraisal cannot be relied upon to disclose nor reveal conditions and/ or defects in the property.

**The value estimated in this appraisal is based upon the following assumptions:**
**-that there is an adequate supply of safe water.**
**-that the sanitary waste is disposed of by a properly functioning system, either public or private.**
**-that the subject property is free of soil contamination. That any above-ground or under-ground storage tanks are not leaking and are properly registered and, if abandoned, are free from contamination and were properly drained, filled and sealed.**
**-that there are no hazardous waste sites on or nearby the subject property which could/ would negatively effect the value or safety of the property.**
**-that there is no uncontained friable asbestos or other hazardous material on the property.**
**-that there are no uncontained PCB's on or nearby the property.**
**-that the radon level is at or below EPA recommended levels.**
**-that there is no significant area formaldehyde insulation or material on the property.**

**When any of the environmental assumptions made in this addendum are not correct, the estimated value in this appraisal may not be valid.**

***The appraiser is not a home inspector.*** **The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold or other issues may be present in areas the appraiser cannot see. A professional home inspection or environmental inspection is recommended if there are concerns about these issues.**

**Fees: The fee invoiced and billed for this report is for this report only. It does not include any other services, information, or appearances. If further services are requested or required, such as further research, testimony, court appearances, depositions, or similar, additional fees will be billed, and that invoice (or invoices) will be due within 30 days of the performed service. The person,**

## Accupraisal Addendum

File No. **0322035**

| | |
|---|---|
| Borrower/Client | Diana Davoli-Turner |
| Property Address | 265 Woodstream Dr |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | Union Home Mortgage |

organization, or company which requests the service will be responsible for the invoice and payment.

**Accupraisal Ohio LLC uses electronic/digital signatures and photo imaging on all appraisals. The electronic signature used is the appraisers original signature. This technology is now the industry standard, and fully accepted.**

**Valuation methodology:  The valuation of residential property considers three approaches to value (Cost Approach, Sales Comparison Approach, and Income Approach).  Though considered for all properties, not all three approaches apply to every property.  Each approach utilizes data that is gathered from the marketplace.  The Cost Approach is no longer required by FNMA, Freddie Mac, nor FHA except for Manufactured Homes.   The income approach is only completed for non-owner-occupied properties.**

**No warranty of the subject is given or implied. No liability is assumed for the structural or mechanical elements of the property.   See above re: "not an inspector".**

**Site notes:  a site plan was not provided by the Client, nor was a survey of the subject site.  The site dimensions included here (when applicable and available) are per the respective county auditor, and typically via their website.  If there is any discrepancy between the actual vs. reported dimensions, totals, or acreage, the auditor should be notified.   The information provided by the auditor is assumed to be accurate and correct.**

I do not have any present nor perceived future interest in the appraised property.

No personal property is included in the appraised value.

Neighborhood section, "Growth" refers to new construction/ expansion.

Land use:  "Other" land use encompasses green spaces, parks, places of worship, government buildings, etc.  Things which don't fit cleanly into the other categories.

If sold comps older than six months are used, they are included here in order to convey a better snapshot of the market and activity.

**The appraised value should not be viewed as the absolute value of the subject property.**  Any property has a range of value.  The purpose of this appraisal is to assist the client/ lender in making a loan decision, and is used to show that a price/ cost is (or is not) reasonable for the area/ market.  The value noted herein should be viewed as an estimate of what the property could be worth as of the date of the appraisal based on available sales in the market.

Effective age:  In order to obtain a credible opinion of effective age for the subject property, the Cost Approach to value would need to be completed.  As the Cost Approach was not completed here (see above), a supported effective age could not be completed.

The source of the definition of market value is obtained in HUD Handbook 4150.2, Paragraph 4-1A.  See attached definition of market value contained in Fannie Mae Form 1004.

Intended users:  If applicable, FNMA and HUD are intended users.

Housing trends: Demand/ supply vs. Marketing time:  This isn't correlational, and neither number indicates the other.   Demand supply is determined by a review of Actives vs Solds from the past year, and is exhibited above the Sales 1-3 grid in the URAR.   Marketing time is per the 1004mc, and is taken from a larger sample of the market, per its instructions.   Both numbers change independently.

The GLA noted in this report is based upon the appraisers measurement of the building which may include interior and/ or exterior methods.  The measurements are intended to give an idea of the square footage/ size, and should not be viewed as exact.  Irregularities may occur due to sloping, obstructions, distance measured from the dwelling, and/or ground imperfections.  No guarantee is given nor implied as to the

## Accupraisal Addendum

FHA/VA Case No. | Page # 28 of 37

File No. **0322035**

| | |
|---|---|
| Borrower/Client | **Diana Davoli-Turner** |
| Property Address | **265 Woodstream Dr** |
| City | **Springboro** |
| County | **Warren** |
| State | **OH** |
| Zip Code | **45066** |
| Lender | **Union Home Mortgage** |

actual square footage of the house.  The square footage estimated herein was calculated from physical measurements taken by the appraiser.  See attached sketch.  The appraiser does not, and cannot, guarantee the square footage.

An estimated exposure time for the subject is 47 days.  There is no valid way to predict when a property will sell.

I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of the of this report within the three-year period immediately preceding acceptance of this assignment.

*The subject is a legally permissible use based on its current zoning. Also, the lot size, shape and land-to-building ratio allow the present structure and indicate a good utilization of the improvements.*
*Based on current market conditions, the existing structure as a single family residence is its financially feasible and maximally productive use. The highest and best use, as if vacant, would be to construct a single family residence.*

**NOTE:  If, after the submission of the initial appraisal report to the lender, there is a request from the client or any other party to consider "alternate" or different properties as comparables, there will be a limit of three "alternates" to be researched and fee of $100 will be added to the invoice.**

Median value/ "predominant value":  Median number is just the one value which happens to be in the middle if all values are lined up from lowest to highest.  Being below or above this number means nothing at all.  I'm often asked if the subject is an "under improved property" if its lower than the median, or an "overimprovement" if its higher.  Its neither.  If subject is lower than the lowest value for the neighborhood, or higher than the highest, then its an under- or over-improvement.

The appraiser does not guarantee that the property is free from defects.  The appraisal establishes the value of the property for mortgage purposes only.

Utilities were "on" at the time of my walkthrough.   See photos.

# Appraiser Independence Certification

I do hereby certify, I have followed the appraiser independence safeguards in compliance with Appraisal Independence and any applicable state laws I may be required to comply with. This includes but is not limited to the following:

- I am currently licensed and/or certified by the state in which the property to be appraised is located My license is the appropriate license for the appraisal assignment(s) and is reflected on the appraisal report.
- I certify that there have been no sanctions against me for any reason that would impair my ability to perform appraisals pursuant to the required guidelines.

I assert that no employee, director, officer, or agent of _____**Union Home Mortgage**_____ , or any other third party acting as joint venture partner, independent contractor, appraisal management company, or partner on behalf of _____**Union Home Mortgage**_____ , influenced, or attempted to influence the development, reporting, result, or review of my appraisal through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner.

I further assert that _____**Union Home Mortgage**_____ has never participated in any of the following prohibited behavior in our business relationship:

1) Withholding or threatening to withhold timely payment or partial payment for an appraisal report;

2) Withholding or threatening to withhold future business with me, or demoting or terminating or threatening to demote or terminate me;

3) Expressly or impliedly promising future business, promotions, or increased compensation for myself;

4) Conditioning the ordering of my appraisal report or the payment of my appraisal fee or salary or bonus on the opinion, conclusion, or valuation to be reached, or on a preliminary value estimate requested from me;

5) Requesting that I provide an estimated, predetermined, or desired valuation in an appraisal report prior to the completion of the appraisal report, or requesting that I provide estimated values or comparable sales at any time prior to my completion of an appraisal report;

6) Provided me an anticipated, estimated, encouraged, or desired value for a subject property or a proposed or target amount to be loaned to the borrower, except that a copy of the sales contract for purchase transactions may be provided;

7) Provided to me, or my appraisal company, or any entity or person related to me as appraiser, appraisal company, stock or other financial or non-financial benefits;

8) Any other act or practice that impairs or attempts to impair my independence, objectivity, or impartiality or violates law or regulation, including, but not limited to, the Truth in Lending Act (TILA) and Regulation Z, or the USPAP.

| | |
|---|---|
| _Signature_ | **03/30/2022**<br>Date |
| **Jeff Newsom**<br>Appraiser's Name | **2007000035**<br>State License or Certification # |
| State Title or Designation | **03/30/2023**<br>Expiration Date of License or Certification     **OH**<br>                                          State |

**265 Woodstream Dr, Springboro, OH 45066**
Address of Property Appraised

05/13

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what they considers their own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale. (Source: FDIC Interagency Appraisal and Evaluation Guidelines, October 27, 1994.)

**SCOPE OF REVIEW:** The scope of this review is limited to the information being provided by the original appraiser, and is to form an opinion as to the apparent adequacy and relevance of the data and the propriety of any adjustments to the data; form an opinion as to the appropriateness of the appraisal methods and techniques used and develop the reasons for any disagreement; form an opinion as to whether the analyses, opinions, and conclusions in the report under review are appropriate and reasonable, and develop the reasons for any disagreement.

# CERTIFICATION AND STATEMENT OF LIMITING CONDITIONS

**CERTIFICATION:** The reviewer certifies and agrees that, to the best of his/her knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of the work under review and no personal interest with respect to the parties involved.

4. Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of the work under review within the three-year period immediately preceding acceptance of this assignment.

5. I have no bias with respect to the property that is the subject of the work under review or to the parties involved with this assignment.

6. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. My compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in this review or from its use.

8. My compensation for completing this assignment is not contingent upon the development or reporting of predetermined assignment results or assignment results that favors the cause of the client, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal review.

9. My analyses, opinions, and conclusions were developed and this review report was prepared in conformity with the Uniform Standards of Professional Appraisal Practice.

10. Unless otherwise indicated, I have not made a personal inspection of the subject of the work under review.

11. Unless otherwise indicated, no one provided significant appraisal, appraisal review, or appraisal consulting assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**CONTINGENT AND LIMITING CONDITIONS:** The certification of the Reviewer appearing in the review report is subject to the following conditions and to such other specific and limiting conditions as are set forth by the Reviewer in the review report.

1. The Reviewer assumes no responsibility for matters of a legal nature affecting the property which is the subject of this review or the title thereto, nor does the Reviewer render any opinion as to the title, which is assumed to be good and marketable.

2. The Reviewer will not give testimony or appear in court because he or she reviewed an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

3. The Reviewer assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The Reviewer assumes no responsibility for such conditions, or for engineering which might be required to discover such factors. This review report must not be considered an environmental assessment of the subject property.

4. Information, estimates, and opinions furnished to the Reviewer, and contained in the review report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the Reviewer can be assumed by the Reviewer.

5. Disclosure of the contents of the report is governed by the Uniform Standards of Professional Appraisal Practice, the Bylaws and Regulations of the professional appraisal organizations with which the Reviewer is associated, and any applicable federal, state or local laws.

6. Neither all, nor any part of the content of the review report, or copy thereof (including the conclusions of the review, the identity of the Reviewer, professional designations, reference to any professional appraisal organizations, or the firm with which the Reviewer is connected), shall be used for any purpose by anyone but the client specified in the review report, its successors and assigns, professional appraisal organizations, any state or federally approved financial institution, any department, agency, or instrumentality of the United States or any state or the District of Columbia, without the previous written consent and approval of the Reviewer.

7. No change of any item in the review report shall be made by anyone other than the Reviewer and the Reviewer shall have no responsibility for any such unauthorized change.

**APPRAISER:**

Signature:

Name: **Jeff Newsom**

Title:

State Certification #: **2007000035**

or State License #:

State: **OH**  Expiration Date of Certification or License: **03/30/2023**

Date Signed: **03/30/2022**

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature:

Name:

Title:

State Certification #:

or State License #:

State:  Expiration Date of Certification or License:

Date Signed:

Page 1 of 1

## UNLIMITED USE LICENSE AGREEMENT

This Unlimited Use License Agreement ("LICENSE") is a legal agreement between you (either an individual or a single entity, also referred to as ("LICENSEE") and me, the creator ("OWNER") of this work. This LICENSE is granted to you in consideration of payment of the LICENSE fee and upon condition that you accept the terms of this LICENSE.

**By purchasing this LICENSE, you are granted a non-exclusive, non-transferable LICENSE as follows:**

\B\U\IUnlimited Use.\i\u\b  LICENSEE to use and copy the WORK solely or any derivative thereof out of your organization for any purpose.

\B\UFee.\u\b  An additional fee will be applied

\B\UNotice.\u\b LICENSEE shall include the copyright notice on every copy of the WORK.  Unauthori use, including copying of this WORK is expressly prohibited unless an Unlimited Use LICENSE is obtained.

\B\UWarranties.\u\b OWNER WARRANTS THAT IT OWNS OR HAS THE FULL RIGHT AND AUTHORITY TO LICENSE THE WORK.

This LICENSE represents the entire understanding between the parties with respect to its subject matter.

YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, THAT YOU UNDERSTAND THIS AGREEMENT, AND UNDERSTAND THAT BY ACCEPTING THIS, BY LOADING, OR BY PLACING OR COPYING THE WORK ONTO YOUR COMPUTER HARD DRIVE, YOU AGREE TO BE BOUND BY THIS AGREEMENT'S TERMS AND CONDITIONS. FURTHER AGREE THAT, THIS AGREEMENT IS A COMPLETE AND EXCLUSIVE STATEMENT OF THE RIGHTS AND LIABILITIES OF THE PARTIES.

ALL RIGHTS NOT SPECIFICALLY GRANTED BY THIS LICENSE ARE RESERVED BY OWNER.

*By not purchasing this LICENSE, you shall receive a Restricted Use License ("RESTRICTED USE") to use my WORK at no additional fee.*

*\URESTRICTED Use\u - to use and copy the WORK solely for purposes of managing the loan associated with this WORK.  The lender/client specified in this appraisal report may distribute the report to:  the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns for servicing said loan; and/or to all lenders in your organization to use the WORK and to sell said WORK as a package with the loan as intended.*

*Limitations on Restricted Use*
*LICENSEE shall use the WORK only for the purposes set forth in Section above.  LICENSEE shall not*
  *Reproduce the WORK in copies or electronic form;*
  *Prepare a Derivative work based upon the WORK;*
  *Distribute copies of the WORK by sale or other transfer of ownership, or by rental, lease, or lending; in any form electronic, paper, or otherwise.  This includes Internet application or Software application unless specified in this Agreement, including in any third party proprietary format, unless provided for in this Agreement;*
  *Allow endusers to resell the WORK or a derivation, or to resell data or services which are derived from the WORK.*

# APPRAISER DISCLOSURE STATEMENT

In Compliance with Ohio Revised Code Section 4763.12(C)

**812170**

File No.   **0322035**

Name of Appraiser:   **Jeff Newsom**

Class of Certification/Licensure:

☐ Certified General
☒ Certified Residential
☐ Licensed Residential
☐ Temporary      ☐ General      ☐ Licensed

Certification/Licensure Number:   **2007000035**

Scope:  This Report      ☒ is within the scope of my Certification or License
☐ is not within the scope of my Certification or License

Service Provided by:      ☒ Disinterested & Unbiased Third Party
☐ Interested & Biased Third Party
☐ Interested Third Party on Contingent Fee Basis

Signature of person preparing and reporting the Appraisal:

This form must be included in conjunction with all appraisal assignments or specialized services performed by a
state-certified or state-licensed real estate appraiser

State of Ohio
Department of Commerce
Division of Real Estate Appraiser Section
Cleveland (216) 787-3100

812170

File No.   0322035

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
### (Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1

The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

C3

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

C4

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

C5

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

C6

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Quality Ratings and Definitions

Q1

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
### (Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
### (Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# License

AN APPRAISER LICENSE/CERTIFICATE

has been issued under ORC Chapter 4763 to:

NAME:
Jeffrey D Newsom

LIC/CERT NUMBER:
2007000035

LIC LEVEL:
Certified Residential Real Estate Appraiser

Ohio | Department of Commerce

Division of Real Estate & Professional Licensing

CURRENT ISSUE DATE:
01/13/2022

EXPIRATION DATE:
03/30/2023

USPAP DUE DATE:
03/30/2023

**Insur 22-23**



**GREAT**AMERICAN®
**INSURANCE GROUP**

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED**
**AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒  Great American Assurance Company

Note: The Insurance Company selected above shall herein be referred to as the **Company**.

Policy Number: **RAP3668441-22**       Renewal of: **RAP3668441-21**

Program Administrator:  **Herbert H. Landy Insurance Agency Inc.**
**100 River Ridge Drive, Suite 301  Norwood, MA 02062**

Item 1. **Named Insured**:   **Jeffrey D. Newsom**

Item 2. **Address**:   **PO Box 883**

City, State, Zip Code:   **Springboro, OH 45066**

Item 3. **Policy Period**: From   **03/17/2022**   To   **03/17/2023**
*(Month, Day, Year)*   *(Month, Day, Year)*
(Both dates at 12:01 a.m. Standard Time at the address of the **Named Insured** as stated in Item 2.)

Item 4. **Limits of Liability**:

A. $  **500,000**   **Damages** Limit of Liability – Each **Claim**

B. $  **500,000**   **Claim Expenses** Limit of Liability – Each **Claim**

C. $  **1,000,000**   **Damages** Limit of Liability – Policy Aggregate

D. $  **1,000,000**   **Claim Expenses** Limit of Liability – Policy Aggregate

Item 5. **Deductible** (Inclusive of **Claim Expenses**):

A. $  **0.00**   Each **Claim**

B. $  **0.00**   Aggregate

Item 6. **Premium**: $   **573.00**

Item 7. **Retroactive Date** (if applicable):   **03/17/2005**

Item 8. **Forms, Notices and Endorsements attached**:
**D42100 (03/15)  D42300 OH (05/13)  IL7324 (07/21)**
**D42402 (05/13)  D42408 (05/13)  D42412 (03/17)  D42413 (06/17)**
**D42414 (08/19)**

*Betsy A. Magnuson*
Authorized Representative

D42101  (03/15)       Page 1 of 1

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**EHXIBIT #2 – Second Appraisal**

20221031140104

# Solidifi FLEX Appraisal Report

File No.  OR7297437
Loan No. 20221031140104

## CLIENT AND PROPERTY IDENTIFICATION

Intended Purpose: [ ] Portfolio Evaluation  [ ] Purchase  [X] Junior Lien  [ ] Refinance  [ ] Other: _____
Data/Verification Source(s) Used: [X] Tax Record  [ ] Appraiser Files  [ ] MLS  [X] Other: Exterior Inspection
Interest: [X] Fee Simple  [ ] Leasehold

## CLIENT AND PROPERTY IDENTIFICATION

Client/Lender:  U.S. Bank, N.A.  Address:  200 S 6th Street, Minneapolis, MN 55402
Borrower/Applicant:  Diana Davoli-Turner  Owner of Public Record:  Turner, Diana Davoli
Property Address:  265 Woodstream Dr  City:  Springboro  State:  OH  ZIP:  45066
Legal Description: Lot 88 Springs 3  APN:  0403173004  Census Tract: 0309.01  County: Warren
Property Type: [X] SFR  [ ] Condo  [ ] Attached/SFR  [ ] Vacant Lot  [ ] Other: _____  [ ] PUD HOA $ _____ [ ] per month [ ] per year
Specific Zoning Classification:  R-1  Zoning Description:  Residential Use

## MARKET AREA AND COMPARABLES

Market Value Trend :  [ ] Increasing  [X] Stable  [ ] Declining  Typical Market Price Range: $ 395,000  to $ 489,900
Market Predominant Occupancy: [ ] Tenant  [X] Owner  Typical Market Property Age: 1  yrs to 65  yrs
Location: [ ] Urban  [X] Suburban  [ ] Rural  Estimated marketing time for the subject property: [X] Under 3 months  [ ] 3-6 months [ ] Over 6 months
Is the highest and best use of the subject property as improved (based on the improvements description provided by the various data sources available)
the present use?: [X] Yes  [ ] No
Summarize HBU Analysis  Based on inspection of the immediate area, neighborhood chacteristics, single family residential has been determined as the highest/best use.

| FEATURE | SUBJECT | COMPARABLE #1 | COMPARABLE #2 | COMPARABLE #3 |
|---|---|---|---|---|
| Address | 265 Woodstream Dr Springboro, OH 45066 | 45 Willow Grove Dr Springboro, OH 45066 | 285 Woodstream Dr Springboro, OH 45066 | 30 Willow Grove Dr Springboro, OH 45066 |
| Proximity to Subject | | 0.20 miles NW | 0.02 miles E | 0.15 miles NW |
| Sales Price | $ | $ 471,000 | $ 451,000 | $ 489,900 |
| Price/Gross Liv. Area | $/SF | $/SF $ 159.72 | $/SF $ 167.28 | $/SF $ 160.52 |
| Data Sources | | Pub Rec DAYMLS#856989 | Pub Rec DAYMLS#851491 | Pub Rec DAYMLS#845921 |
| Sales/Fin. Concessions | | | | |
| Date of Sale (MM/DD/YY) | | 03/24/2022 | 11/17/2021 | 08/31/2021 |
| Location | Suburban | Suburban | Suburban | Suburban |
| Site | 9600 sf | 11690 sf | 8910 sf | 11573 sf |
| View | | | | |
| Design (Style) | DT2;Traditional | DT2;Traditional | DT2;Traditional | DT2;Traditional |
| Quality (UAD) | | | | |
| Actual Age | 10 | 4 | 10 | 7 |
| Condition (UAD) | C3 | C3 | C3 | C3 |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | Total / Bdrms / Baths | Total / Bdrms / Baths |
| Room Count | 8 / 4 / 2.1 | 8 / 4 / 2.1 | 9 / 4 / 2.1 | 9 / 4 / 2.1 |
| Gross Living Area (GLA) | 3,898 sq. ft. | 2,949 sq. ft. +31,317 | 2,696 sq. ft. +39,666 | 3,052 sq. ft. +27,918 |
| Basement & Finished | Full | Full | Full | Full |
| Rooms Below Grade | Unfinished | Unfinished | Part Finished -10,500 | Part Finished -10,500 |
| Functional Utility | | | | |
| Heating/Cooling | | | | |
| Garage/Carport | 2ga2dw | 2ga2dw | 2ga2dw | 2ga2dw |
| | 1 Fireplace | 1 Fireplace | 1 Fireplace | 1 Fireplace |
| | | | | |
| Net Adjustment (Total) | | [X] + [ ] - $ 31,317 | [X] + [ ] - $ 29,166 | [X] + [ ] - $ 17,418 |
| Adjusted Sale Price of Comparables | | Net Adj. 6.6 % Gross Adj. 6.6 % $ 502,317 | Net Adj. 6.5 % Gross Adj. 11.1 % $ 480,166 | Net Adj. 3.6 % Gross Adj. 7.8 % $ 507,318 |

## EVALUATION SUMMARY

Analysis of Prior Sale or Transfer History of the Subject Property or Comparable Sales:

The most recent transfer for the subject property appears to be arm length.

General Comments:

Comparable and competitive properties that were considered similar in location, design, age, GLA and other amenities were analyzed, the appraiser has presented what is considered the 3 best sales. Due to the limited number of sales available similar in age, the following conditions will exist.  The GLA could not be bracketed. The property is larger in GLA, similar in amenities for traditional properties within the market area, these features should not affect the marketing of the property.  The appraiser has considered all sales with more weight given to sale #1 as it shows the lowest overall adjustment percentage.

The Appraiser has researched the transfer and listing history of the subject property for the past 3 years and the comparable sales for the past 12 months.
Subject Property Is Currently Listed For Sale?  [ ] Yes  [X] No  Data Source: DAYYMLS

| Current Listing History | List Date | List Price | Days on Market | Data Source |
|---|---|---|---|---|
| | N/A | $ N/A | N/A | N/A |

Subject Property has been Listed within the last 12 Months?  [ ] Yes  [X] No  Data Source: DAYMLS

| 12 Month Listing History | List Date | List Price | Days on Market | Data Source |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |

| Transfer History (if more than use, use comments section) | Subject in past 36 months: | Comp 1 in past 12 months: | Comp 2 in past 12 months: | Comp 3 in past 12 months: |
|---|---|---|---|---|
| | $ 442,000  11/09/2020 | $ N/A  N/A | $ N/A  N/A | $ N/A  N/A |
| | | $ N/A  N/A | $ N/A  N/A | $ N/A  N/A |

As Is Opinion of Market Value: $ 485,000  As of: 04/25/2022

67

AI Ready  Solidifi Desktop 2020

20221031140104

# Solidifi FLEX Appraisal Report

File No. OR7297437
Loan No. 20221031140104

- [ ] No inspection required per assignment
- [X] I performed a visual inspection of the exterior only of the subject property from at least the street
- [ ] I performed a visual inspection of the readily available exterior and interior areas of the subject property
- [ ] FLEX Lite: I did not perform a visual inspection of the exterior or interior areas of the subject property. The appraiser obtained the information in the below Exterior Condition Inspection section (and Interior, if indicated below) from sources that he or she considers reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties. The below third party inspection information was provided by:
- [ ] Company: _____ [ ] Agent/Inspector: _____ License No. (If Applicable): _____
- [ ] Other: _____ Please Specify: _____

## EXTERIOR CONDITION INSPECTION

The subject could be sufficiently viewed to complete this inspection report [X] Yes [ ] No

**Property Damage**
- [X] No Visible Damage
- [ ] Doors [ ] Siding [ ] Foundation [ ] Roof [ ] Windows
- [ ] Driveway [ ] Other: _____

**Damage Type (if applicable)**
- [ ] Fire [ ] Wind [ ] Water [ ] Deferred Maintenance
- [ ] Other: _____
Damage Description: _____

**Property Condition**
- [ ] C1 [ ] C2 [ ] C3 [ ] C4 [ ] C5 [ ] C6 [ ] N/A

**Neighborhood Condition**
- [ ] Improving [ ] Declining [X] Stable [ ] Unknown
Describe Above: _____

**Adverse Neighborhood Attributes**
- [X] No Adverse Attributes
- [ ] High Tension Power Lines [ ] Boarded/Condemned Homes
- [ ] Suspicious Odors [ ] Vacant Lots [ ] Highway
- [ ] Airport/Flight Path [ ] Railroad Tracks [ ] Streets In Disrepair
- [ ] Commercial/Industrial Presence
- [ ] Other: _____
Describe Attributes: _____

**Beneficial Neighborhood Attributes**
- [X] No Beneficial Attributes
- [ ] Golf Course Community [ ] Community Amenities (parks, pools, bike paths, etc.)
- [ ] Waterfront
- [ ] Other: _____
Describe Attributes: _____

**Property Type**
- [X] Detached SFR [ ] Attached SFR/Townhouse [ ] Condo [ ] Duplex
- [ ] Manufactured/Modular Home [ ] Triplex [ ] Quadplex [ ] Vacant Lot
- [ ] Other: _____

For sale sign visible on the subject property
- [ ] Yes [X] No

**Construction Design**
- [ ] 1 Story [ ] 1.5 Story [X] 2 Story [ ] 3 Story [ ] Split Level
_____

**Exterior Sheathing**
- [ ] Stucco [X] Vinyl/Wood/Aluminum [X] Brick/Veneers
- [ ] Other: _____

**Garage** Indicate Type and Number of Bays
- [ ] None [X] Attached [ ] Detached [ ] Carport
- [ ] 1 Car [X] 2 Car [ ] 3 Car
- [ ] Other: _____

**Parking**
- [X] Drive Way [ ] Street
- [ ] Other: _____

**General Inspection Comments:**

## INTERIOR CONDITION INSPECTION

Interior Inspection Performed [ ] Yes [X] No

**Interior Features**
Window Type: [ ] Insulated [ ] DblHung [ ] Other: _____
Flooring: [ ] Hardwood [ ] Carpet [ ] Tile [ ] Vinyl/Laminate
[ ] Other: _____
Walls: [ ] Dry Wall [ ] Plaster [ ] Other: _____
Trim/Finish: [ ] Wood [ ] Other: _____
Add'l Features:

**Kitchen**
Floor: [ ] Tile [ ] Hardwood [ ] Vinyl/Lam. [ ] Other: _____
Counter: [ ] Granite/Stone [ ] Laminate [ ] Other: _____
Appliances: [ ] Dishwasher [ ] Disposal [ ] Refrigerator
[ ] Oven/Range [ ] Microwave [ ] Other: _____
Add'l Features:

**Bath(s)**
Floor: [ ] Tile [ ] Hardwood [ ] Vinyl/Lam. [ ] Other: _____
Bath Wainscot: [ ] Tile [ ] Fiberglass [ ] Other: _____
Add'l Features:

**Foundation/Basement**
Type: [ ] Full [ ] Partial [ ] Slab [ ] Crawl. [ ] Other: _____
Walls: [ ] Poured [ ] Conc. Block [ ] Electric [ ] Oil [ ] Other: _____
Basement Entry/Exit: [ ] Walk Out [ ] Walk Up [ ] Interior Only
Evidence of: [ ] Infestation [ ] Dampness [ ] Settlement
[ ] Other: _____
Add'l Features:

**Mechanicals**
Heat: [ ] FWA [ ] HWBB [ ] Elec. BB [ ] Radiant [ ] Other: _____
Fuel: [ ] GAS [ ] Electric [ ] Oil [ ] Other: _____
Cooling: [ ] Central Air [ ] Individual [ ] Other: _____
Electricity: [ ] Public [ ] Private     Water: [ ] Public [ ] Private
Gas: [ ] Public [ ] Private     Sewer: [ ] Public [ ] Private
Add'l Features:

**Presence of deferred maintenance or conditions that affect the livability, soundness or structural integrity of the property?**
[ ] Yes [ ] No Describe: _____

## MARKETABILITY STATEMENTS

| Statement | Yes | No | Unknown |
|---|---|---|---|
| Subject's style conforms to neighborhood | [X] | [ ] | |
| Subject's current use conforms to the neighborhood | [X] | [ ] | |
| Adverse easements or encroachments | [ ] | [X] | [ ] |
| Commercial activity occurring on subject property | [ ] | [X] | |
| Subject property is occupied | [ ] | [ ] | [X] |
| Visible signs of construction or remodeling of subject | [ ] | [X] | |
| Damages affect the subject's safety or habitability | [ ] | [X] | |
| Presence of security bars on windows | [ ] | [X] | |
| Presence of outbuildings other than common shed or detached garage | [ ] | [X] | [ ] |
| Subject located in a current designated natural disaster area | [ ] | [X] | [ ] |

20221031140104

# Solidifi FLEX Appraisal Report

File No.   OR7297437
Loan No. 20221031140104

## MARKETABILITY COMMENTS

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS

(Source: Fannie Mae UAD Appendix D: UAD Field -Specific Standardization Requirements, updated 1/2014)
For full UAD Definitions Data Set please visit:
https://www.fanniemae.com/singlefamily/uniform-appraisal-dataset#

### Condition Ratings and Definitions

**C1**   The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

*Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**   The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently renovated and are similar in condition to new construction.

*Note:  The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3**   The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation .*

**C4**   The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note:  The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

**C5**   The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note:  Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6**   The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note:  Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

### Quality Ratings and Definitions

**Q1**   Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**   Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**   Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**   Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**   Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**   Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

**Not Updated -** Little or no updating or modernization. This description includes, but is not limited to, new homes. Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

**Updated -** The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost. An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations . Updates do not include significant alterations to the existing structure .

**Remodeled -** Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion. A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Solidifi FLEX Appraisal Report

File No.  OR7297437
Loan No. 20221031140104

**PURPOSE OF APPRAISAL:** The purpose of this appraisal is to form an "as is" opinion of the market value of the real property that is the subject of this report based upon a quantitative sales comparison analysis for use in the mortgage finance transaction.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in United States dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

**INTENDED USE:** This appraisal report is intended for use only by the client. The function of this appraisal is to help the client analyze the risk associated with making a loan on the subject property.

**INTENDED USER:** The intended user of this appraisal report is the lender/client identified.

**SCOPE OF THE APPRAISAL:** The scope of this appraisal consists of identifying the characteristics of the subject property that are relevant to the purpose and intended use of the appraisal, as previously addressed. For the subject, this is accomplished by reviewing public record data, prior appraisal files and/or other documentation from a disinterested source and which is considered reliable from the appraiser's perspective. The data sources for the comparable sales may include public record data services, multiple listing services, automated valuation models and/or other data sources that become available and are deemed to be reliable by the appraiser. The confirmation of comparable sale data (i.e., closed sale documentation and property characteristics) is via public data sources and multiple listing services, as appropriate. The appraiser has not viewed the sales in the field. The data is collected, verified and analyzed in accordance with set parameters as defined within this Scope and the Intended Use of the appraisal. Atypical variances of comparable sales in relation to the subject will be accounted for and detailed in this report.

In developing this appraisal report, the appraiser has incorporated only the Sales Comparison Approach unless otherwise noted in the addenda attached hereto. The appraiser has determined that the scope of this assignment does produce credible assignment results. The client agrees that the limited scope and presentation of the analysis is appropriate given the intended use.

If no inspection of the property is completed, the appraiser has made some basic assumptions, including the following:

- The subject property is assumed to be in average overall condition and generally conforms to the neighborhood in terms of style, condition, construction materials and in external and economic factors.
- There are no adverse environmental conditions (hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property.
- There are no significant discrepancies between the public record information or other data source and the existing site or improvements.

**ANALYSIS OF ANY CURRENT AGREEMENT OF SALE, PRIOR SALE WITHIN THREE YEARS AND RECONCILIATION:** Unless otherwise noted, the appraiser has no knowledge of any current agreement of sale or any current or past listing agreement. Prior sales of the subject property within three years of the effective date of this appraisal have been researched and reported on the appraisal report (in the Transfer History section) if available from MLS or public record sources. The appraiser has reconciled the quality and quantity of data available into an indication of Market Value, in accordance with the intended use and scope of the appraisal.

**STATEMENT OF CONTINGENT AND LIMITING CONDITIONS:** The Appraiser's Certification that appears in this report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect the subject property.
2. The appraiser assumes the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.
3. The appraiser will not give testimony or appear in court because he or she performed this appraisal unless specific arrangements to do so have been made beforehand.
4. Except as noted herein, the appraiser has not made an exterior or interior inspection of the subject property. The appraiser assumes that there are no adverse conditions associated with the improvements or the subject site. Unless otherwise stated in this report, the appraiser has no knowledge of any hidden or apparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) present in the improvements, on the site or in the immediate vicinity that would make the property more or less valuable, and has assumed that there are no such conditions. The appraiser makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report may not be considered an environmental assessment of the property.
5. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.
6. The appraiser will not disclose the content of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.
7. Unless otherwise noted, the appraiser has assumed that the subject real estate's zoning classification complies with local zoning code.
8. Unless otherwise noted in this report, my opinion of reasonable exposure time at the market value stated in this report is equal to the indicated marketing time noted on page 1 of this report.

**APPRAISER'S CERTIFICATION:** Unless otherwise noted in this report, the appraiser certifies, to the best of my knowledge and belief:

1. The statements of fact contained in this report are true and correct.
2. The reported analyses, opinions and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
3. I have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved.
4. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
5. My engagement in this assignment was not contingent upon developing or reporting predetermined results.
6. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
7. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
8. I have not made a personal inspection of the comparable sales noted in this report.
9. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. I have identified all relied upon sources to develop this appraisal report and appraisal assignment. I have identified any individuals who provided significant assistance in developing the opinion of value, or preparation of the appraisal report, and have disclosed any tasks provided by such individuals on page 2 Condition Inspection page or attached addenda.
10. Unless otherwise noted in this report, I have performed NO services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

APPRAISER

Signature

Name  Thomas G Augspurger

Company Name  Residential Equity Specialists

Company Address 526 Sage Run Dr
                 Lebanon          , OH      45036

Telephone Number (513) 423-5177

Email Address  gaugspurger@cinci.rr.com

Date of Signature and Report 05/03/2022

Effective Date of Appraisal 04/25/2022

State Certification #  392602

or State License #

or Other (describe)                 State #

State  OH

Expiration Date of Certification or License 03/01/2023

ADDRESS OF PROPERTY APPRAISED

265 Woodstream Dr

Springboro              , OH      45066

APPRAISED VALUE OF SUBJECT PROPERTY $ 485,000

LENDER/CLIENT

Name (AMC)  Solidifi

AMC #

Company Name  U.S. Bank, N.A.

Company Address 200 S 6th Street
                 Minneapolis      , MN      55402

Email Address

SUPERVISORY APPRAISER (ONLY IF REQUIRED)

Signature

Name

Company Name

Company Address

                 ,

Telephone Number

Email Address

Date of Signature

State Certification #

or State License #

State

Expiration Date of Certification or License

AI Ready

Solidifi Desktop 2020

TEXT ADDENDUM

File #   OR7297437

| | |
|---|---|
| Borrower/Client | Diana Davoli-Turner |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren   State OH   Zip Code 45066 |
| Lender | U.S. Bank, N.A. |

Supplemental Addendum [Single-page]
Comparable Search Criteria
  The appraiser has analyzed sales similar in design, age, site area and other amenities, and presented what are considered the best sales available.

  Defined Market area
  The neighborhood boundaries are th Montgomery county line to the north Settlers Walk to the west, Yankee to the east, Lytle Five Points to the south.

  This property is located within an acceptable distance from my office, 9 miles. I have spent sufficient time in this market and understand the nuances of the local market and the supply and demand factors relating to the specific property type and location involved.

  Due to the exterior only nature of the inspection, the interior features and the GLA for this property has been determined by figures provided by the Montgomery county auditor's office.  The appraiser cannot comment on figures provided by other sources.

  All photo's are original with the report.

  The intended user of this report is the listed client and its assignee's.

  The intended use of this report is market valuation.

  This assignment was performed within the scope of work as outlined on page 2 of this report.

  This appraisal report will contain an electronic signature, and digital photographs that are password protected and locked on transmission.  The electronic signature will be considered as authentic as an actual hand signature.

   I have reviewed and utilized the best available data sources in reporting the physical attributes of
the subject property and comparable sales available. Any discrepancies between the reported physical attributes and what is visible in the public domain is as follows.   None

  The sales presented are considered the best available, although certain features of the subject property are not bracketed, the sales used are the closest in range that were available.

  Based on the surrounding properties, and the current market conditions, the highest and best use of the subject property is single family residential.

  There were active or pending listings similar to the subject property available, due to this, a comparable listing cannot be provided.

20221031140104

# USPAP ADDENDUM

File No. OR7297437

| | |
|---|---|
| Borrower | Diana Davoli-Turner |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren | State OH | Zip Code 45066 |
| Lender | U.S. Bank, N.A. |

## This report was prepared under the following USPAP reporting option:

☒ **Appraisal Report**          This report was prepared in accordance with USPAP Standards Rule 2-2(a).

☐ **Restricted Appraisal Report**          This report was prepared in accordance with USPAP Standards Rule 2-2(b).

## Reasonable Exposure Time

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: 30 to 70 days

## Additional Certifications

I certify that, to the best of my knowledge and belief:

☒ I have **NOT** performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I **HAVE** performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

— The statements of fact contained in this report are true and correct.
— The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no  personal interest with respect to the parties involved.
— I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
— My engagement in this assignment was not contingent upon developing or reporting predetermined results.
— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

## Additional Comments

**APPRAISER:**

Signature:
Name:  Thomas G Augspurger
Date Signed:  05/03/2022
State Certification #:  392602
or State License #:
or Other (describe) _____ State # _____
State:  OH
Expiration Date of Certification or License:  03/01/2023
Effective Date of Appraisal:  04/25/2022

**SUPERVISORY APPRAISER: (only if required)**

Signature:
Name:
Date Signed:
State Certification #:
or State License #:
State:
Expiration Date of Certification or License:
Supervisory Appraiser Inspection of Subject Property:
☐ Did Not   ☐ Exterior-only from Street   ☐ Interior and Exterior

72

20221031140104

## SUBJECT PHOTOGRAPH ADDENDUM

File # OR7297437

| | |
|---|---|
| Borrower/Client | Diana Davoli-Turner |
| Property Address | 265 Woodstream Dr |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | U.S. Bank, N.A. |



### FRONT OF SUBJECT PROPERTY

Subject Front

265 Woodstream Dr



### REAR OF SUBJECT PROPERTY

Subject Rear

265 Woodstream Dr



### STREET SCENE

Subject Street

265 Woodstream Dr

20221031140104

## SUBJECT PHOTOGRAPH ADDENDUM

| | File # OR7297437 |
|---|---|

Borrower/Client   Diana Davoli-Turner
Property Address   265 Woodstream Dr
City   Springboro          County   Warren          State   OH          Zip Code   45066
Lender   U.S. Bank, N.A.



**ADDITIONAL SUBJECT PHOTO**

Subject Side



**ADDITIONAL SUBJECT PHOTO**

Subject Side



**ADDITIONAL SUBJECT PHOTO**

Address

20221031140104

## LOCATION MAP ADDENDUM

File # OR7297437

| | |
|---|---|
| Borrower/Client | Diana Davoli-Turner |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren State OH Zip Code 45066 |
| Lender U.S. Bank, N.A. | |



Location Map

File # OR7297437

| | |
|---|---|
| Borrower/Client | Diana Davoli-Turner |
| Property Address | 265 Woodstream Dr |
| City | Springboro |
| County | Warren |
| State | OH |
| Zip Code | 45066 |
| Lender | U.S. Bank, N.A. |



20221031140104

2022 License

File # OR7297437

| | |
|---|---|
| Borrower/Client | Diana Davoli-Turner |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren State OH Zip Code 45066 |
| Lender | U.S. Bank, N.A. |



20221031140104
2022 E-O

| Borrower/Client | Diana Davoli-Turner | | | | | File # | OR7297437 |

Property Address 265 Woodstream Dr

City Springboro  County Warren  State OH  Zip Code 45066

Lender U.S. Bank, N.A.

---

**NOTICE: DEFENSE EXPENSES ARE INCLUDED WITHIN AND REDUCE THE LIMIT OF LIABILITY AS STATED IN THE CERTIFICATE. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

NORMAN-SPENCER REAL ESTATE RISK PURCHASING GROUP INC dba
THE AMERICAN ACADEMY OF STATE CERTIFIED APPRAISERS
(A Delaware Corporation)

### CERTIFICATE DECLARATIONS

1. Name and Address of Certificate Holder:  Thomas G. Augspurger d/b/a
Residential Equity Specialists
526 Sage Run Drive
Lebanon  OH  45036

2. Certificate Period:  Effective Date: 9/21/2021  to Expiration Date: 9/21/2022
12:01 a.m. Standard Time at the Address of the Certificate Holder shown in item 1. above

2a. Retroactive Date:  9/21/2007
12:01 a.m. Standard Time at the Address of the Certificate Holder shown in item 1. above

3. Limit of Liability:  $ 500,000 each claim
$ 500,000 aggregate limit

4. Deductible:  $ - each claim

5. Professional Covered Services insured by this policy are: REAL ESTATE APPRAISAL SERVICES

6. Advance Certificate Holder Premium:  $593.00  Surplus Lines Tax  29.65

7. Minimum Earned Premium:  25% or  $148.00

Risk Purchasing Group Fee  40.00

Forms and Endorsements:
See Attached Forms list  Total:  $ 69.65

Agency Name and Address:  Norman-Spencer Agency, LLC
8075 Washington Village Drive
Dayton, OH 45458

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE CERTIFICATE HOLDER AGREES TO ALL TERMS AND CONDITIONS AS SET FORTH IN THE ATTACHED MASTER POLICY.

20221031140104

AI Ready PDF Generated on 05/03/2022 11:45:38 AM

**EXHIBIT #3 – Henleys' Appraisal**

# Uniform Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | | |
|---|---|---|---|---|
| Property Address 265 Woodstream Dr | | City Springboro | State OH | Zip Code 45066 |

**SUBJECT**

Borrower DIANA DAVOLI-TURNER — Owner of Public Record DAVOLI-TURNER DIANA — County Warren

Legal Description SPRINGS 3 LOT: 88, 0.228 ACRES

Assessor's Parcel # 0403173004 — Tax Year 2021 — R.E. Taxes $ 6,010

Neighborhood Name Springs — Map Reference 17140 — Census Tract 0309.01

Occupant [X] Owner [ ] Tenant [ ] Vacant — Special Assessments $ 0 — [X] PUD — HOA $ 580 [X] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Home Equity

Lender/Client U.S. Bank, N.A. — Address 1050 Woodward Avenue, Detroit, MI 48226

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s).
DayMLS

**CONTRACT**

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ — Date of Contract — Is the property seller the owner of public record? [ ] Yes [ ] No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [ ] Increasing [X] Stable [ ] Declining | PRICE $(000) | AGE (yrs) | One-Unit 68 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | 250 Low | | 2-4 Unit 1 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [X] Under 3 mths [ ] 3-6 mths [ ] Over 6 mths | 550 High 125 | | Multi-Family 9 % |
| | | 350 Pred. 20 | | Commercial 15 % |
| | | | | Other 7 % |

Neighborhood Boundaries
East of 741, west of Bunnell Hill Rd, north of Central Ave, south of Austin Blvd.

Neighborhood Description
The subject is within a typical suburban neighborhood of Warren County, in a PUD. All necessary amenities are within 5 miles. There is an average overall condition within the subject's neighborhood. There are many different styles and sizes of homes within the subject's neighborhood. Other land use is 6% parks, 1% undeveloped, not affecting market value or marketability.

Market Conditions (including support for the above conclusions)
Market studies from MLS, Pace and Court House Records indicate that the property values appear to be stable. This indicates an active absorption rate and general balance between supply and demand. There is no known prevalence of unusual seller financing concessions/buydowns that impact this market. Marketing time should not exceed 100 days if reasonably priced.

**SITE**

Dimensions NA, irregular, see attached plat map — Area 9932 sf — Shape Irregular — View N;Res;

Specific Zoning Classification PUD — Zoning Description Planned Unit Development District

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements-Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | [ ] |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley None | [ ] | [ ] |

FEMA Special Flood Hazard Area [ ] Yes [X] No — FEMA Flood Zone X — FEMA Map # 39165C0030E — FEMA Map Date 12/17/2010

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.
The site is average in size for the area and the subject improvements. There are no apparent adverse easements, encroachments or use changes presently or contemplated. The improvement on the property apparently conforms to current zoning regulations. If site dimensions are not listed above, they are not available from data source or during normal course of business. Dimensions may be available from county engineer.

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description materials/condition | | Interior materials/condition | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [ ] Concrete Slab [ ] Crawl Space | | Foundation Walls Concrete/C3 | | Floors CarpetHrdWd/C3 | |
| # of Stories 2 | | [X] Full Basement [ ] Partial Basement | | Exterior Walls ConbrdBrckStone/C3 | | Walls Drywall/C3 | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area 1,816 sq. ft. | | Roof Surface AspShingle/C3 | | Trim/Finish Wood/C3 | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 85 % | | Gutters & Downspouts Aluminum/C3 | | Bath Floor Viny/C3 | |
| Design (Style) Colonial | | [ ] Outside Entry/Exit [X] Sump Pump | | Window Type VinDubHng/C3 | | Bath Wainscot FiberGl/C3 | |
| Year Built 2012 | | Evidence of [ ] Infestation | | Storm Sash/Insulated Metal/Insulate/C3 | | Car Storage [ ] None | |
| Effective Age (Yrs) 6 | | [ ] Dampness [ ] Settlement | | Screens Metal/half/C3 | | [X] Driveway # of Cars 2 | |
| Attic [ ] None | | Heating [X] FWA [ ] HWBB [ ] Radiant | | Amenities [ ] WoodStove(s) # 0 | | Driveway Surface Concrete | |
| [ ] Drop Stair [ ] Stairs | | [ ] Other Fuel Gas | | [X] Fireplace(s) # 2 [X] Fence MetalFenc | | [X] Garage # of Cars 2 | |
| [ ] Floor [X] Scuttle | | Cooling [X] Central Air Conditioning | | [X] Patio/Deck Ludk [X] Porch UpoLupat | | [ ] Carport # of Cars 0 | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [ ] Pool None [ ] Other None | | [X] Att. [ ] Det. [ ] Built-in | |
| Appliances [ ] Refrigerator [X] Range/Oven [ ] Dishwasher [ ] Disposal [ ] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | | | | | |

Finished area above grade contains: 11 Rooms 4 Bedrooms 2.1 Bath(s) 3,818 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)

UAD condition descriptions are for all items in the improvements section, just not overall condition.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).
C3;No updates in the prior 15 years;ago;Physical depreciation appears to be normal and expected for the age of the improvements, in average condition throughout. The subject's floor plan reflects adequate separation between work,recreational and sleeping areas. There is no functional obsolescence or deferred maintenance noted.Appliances only checked if real estate, not chattel.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe

**Uniform Residential Appraisal Report**

20221031140104

File # USB-220506-02084-1

| | There are | 0 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 0 | to $ | 0 |
| There are | 11 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 407,900 | to $ | 530,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 265 Woodstream Dr<br>Springboro, OH 45066 | 21 Stanton Dr<br>Springboro, OH 45066 | 190 Stanton Dr<br>Springboro, OH 45066 | 266 Woodstream Dr<br>Springboro, OH 45066 |
| Proximity to Subject | | 0.31 miles W | 0.34 miles NW | 0.04 miles S |
| Sale Price | $ | $ 495,000 | $ 450,000 | $ 427,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 136.93 sq.ft. | $ 132.35 sq.ft. | $ 116.57 sq.ft. |
| Data Source(s) | | DayMls#847097;DOM 53 | DayMls#836580;DOM 42 | DayMls#825178;DOM 57 |
| Verification Source(s) | | WarrnCountyAuditorPRC/Realtor | WarrnCountyAuditorPRC/Realtor | WarrnCountyAuditorPRC/Realtor |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sale or Financing Concessions | | ArmLth<br>Conv;0 | | ArmLth<br>Conv;0 | | ArmLth<br>Conv;0 | |
| Date of Sale/Time | | s10/21;c08/21 | | s05/21;c03/21 | | s10/20;c09/20 | +21,350 |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 9932 sf | 12319 sf | 0 | 13839 sf | 0 | 8973 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT2;Colonial | DT2;Colonial | | DT2;ContCapeCod | 0 | DT2;Colonial | |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Actual Age | 10 | 16 | 0 | 16 | 0 | 8 | 0 |
| Condition | C3 | C3 | | C3 | | C3 | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 11 4 2.1 | 11 4 2.1 | | 10 4 2.1 | 0 | 10 4 2.1 | 0 |
| Gross Living Area | 3,818 sq.ft. | 3,615 sq.ft. | +4,872 | 3,400 sq.ft. | +10,032 | 3,663 sq.ft. | +3,720 |
| Basement & Finished Rooms Below Grade | 1816sf1544sfin<br>1rr1br0.0ba1o | 1904sf1428sfin<br>1r0br0.0ba1o | 0<br>0 | 2421sf1210sfin<br>1rr0br1.0ba2o | 0<br>-4,000 | 1815sf0sfin<br>1r0br0.0ba1o | +8,000<br>0 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/CA | FWA/CA | | FWA/CA | | FWA/CA | |
| Energy Efficient Items | NoneNoted | NoneNoted | | NoneNoted | | NoneNoted | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | UnPorLUdkLupt | UpoLrUpatUdk | +500 | UporLUptLudk | 0 | CovPorLrgUnPt | +500 |
| Exterior Materials | VinBrickStone | VinylBrick | 0 | VinylBrick | 0 | VinBrickStone | |
| Extra Amenities In/Out | 2FlrplacFence | FireplaceFence | 0 | 2Fireplace | 0 | Fireplace | 0 |
| Updates/Dated/Upgrades | NoneNoted | 2UpdBaths | -8,000 | NoneNoted | | UpdKitchen | -6,000 |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -2,628 | ☒ + ☐ - | $ 6,032 | ☒ + ☐ - | $ 27,570 |
| Adjusted Sale Price of Comparables | | Net Adj. 0.5 %<br>Gross Adj. 2.7 % | $ 492,372 | Net Adj. 1.3 %<br>Gross Adj. 3.1 % | $ 456,032 | Net Adj. 6.5 %<br>Gross Adj. 9.3 % | $ 454,570 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data source(s) Courthouse Records/DayMLS&CinMLS

My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data source(s) Courthouse Records/DayMLS&CinMLS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 11/09/2020 | 08/18/2018 | 05/27/2005 | 08/28/2018 |
| Price of Prior Sale/Transfer | $442,000 | $380,000 | $338,838 | $386,000 |
| Data Source(s) | WarrenCountyAuditorWeb | WarrenCountyAuditorWeb | WarrenCountyAuditorWeb | WarrenCountyAuditorWeb |
| Effective Date of Data Source(s) | 05/14/2022 | 05/14/2022 | 05/14/2022 | 05/14/2022 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Prior transfer of the subject is only listed on the auditor site and no further information is available during the normal course of business.No prior sales of the comparables within the past 12 months unless reported below or under Comps 4-6 page:

Summary of Sales Comparison Approach

My search included sales from the past year within the neighborhood boundaries, defined on previous page. My comparable search included sales and listings most similar to the subject and ones included in the report are believed to be the most similar. My search included all 2story dwellings,3218-4418 sf of GLA, 2-40 yrs old, C2-C4 condition and similar quality. Due to a lack of sales more similar to the subject, I used sales that sold over 90 days and 6 months ago, as well as over a 1/2 mile away. Comp1 is weighted heaviest and used for very similar GLA and finished basement area,limited updates,under 20 yrs old. Comp2 (sold 05/07/2021) is used and weighted 2nd for finished basement area and lack of updates, but not weighted heavier due to larger GLA difference. Comp3 is used and weighted 3rd for most similar GLA, same PUD as subject,limited update,but not weighted heavier due to unfinished basement and sold well over a year ago. It sold over a year ago, used for an extreme lack of similar sales from the subject's PUD, selling in the past year. APPRAISAL FEE IS $400, BUT A FEE IS CHARGED BACK TO ME.

Indicated Value by Sales Comparison Approach $ 470,000

Indicated Value by: Sales Comparison Approach $ 470,000     Cost Approach (if developed) $ 488,227     Income Approach (if developed) $

The Sales Comparison Approach was given the most weight in determining the final estimated value since it appears to be the most reliable indicator of the value in the current local market. The Cost Approach is not deemed reliable, due to the difficulty in estimating accrued depreciation and the constant fluctuation of costs for materials. The Income Approach was not requested, and subject is not a rental, thus not completed.

This appraisal is made ☒ "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

It is assumed that no major problems exist with the subject's integral components.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 470,000 as of 05/14/2022, which is the date of inspection and the effective date of this appraisal.

20221031140104
20221031140104

# Uniform Residential Appraisal Report

File # USB-220506-02084-1

**ADDITIONAL COMMENTS**

I have two offices I work out of. One is 529 Ramsgate Dr., Dayton, OH 45430; the other is 7686 Cincinnati Dayton Rd, West Chester, OH
I USE LOCAL, RAPATONI MLS OF GREATER CINCINNATI, AND DAYTON MLS. I USE COUNTY AUDITOR SITE, LOCAL REALTORS, ZILLOW.COM, TRULIA.COM, AND
LOCAL NEWSPAPER. THE SUBJECT IS WITHIN 20 MILES OF APPRAISER'S OFFICE OR HOME, AS THIS APPRAISER LIVES IN BEAVERCREEK, VERY CLOSE TO
DAYTON, AND MY OFFICE IS IN CINCINNATI. I HAVE APPRAISED IN THE SUBJECT'S MARKET FOR OVER 22 YEARS, AND IN THE PAST YEAR I HAVE APPRAISED OVER
10 HOMES IN THE SUBJECT'S MARKET. DURING THE PAST 22 YEARS I HAVE HAD APPRAISAL OFFICES IN MONTGOMERY COUNTY, GREENE COUNTY, BUTLER
COUNTY, AND HAMILTON COUNTY AND I AM VERY FAMILIAR WITH ALL MARKETS IN THOSE COUNTIES, AS WELL AS BORDERING COUNTIES.
I HAVE NOT PERFORMED ANY SERVICES ON THE SUBJECT PROPERTY IN THE PAST THREE YEARS.The market value is the value the subject should sell for, if listed today,
within an exposure time of 60 days, preceding the date of this appraisal.

Some listings may have sold for many days below or above the marketing time noted. This is typically due to initial list price being too high or too
low, or the season in which the property is listed .

No special assessments reported or known.  NO EXTERNAL OBSOLESCENCE IS NOTED. There is no gas or oil drilling or leased on the subject property.

Due to updates and upgrades over the years, the subject's effective age is much less than its actual age.

No personal property is included within the estimate value of the subject, and appraiser has no training in the valuation of personal property,
whatsoever.

The subject is above predominant values due to its much larger GLA compared to all dwellings in the market.

CONDITION ADJUSTMENTS, WITHIN THE CONDITION FIELD ON THE GRID, ARE BASED ON THE DEFINITIONS PROVIDED WITHIN THIS REPORT. FURTHER
ADJUSTMENTS, I MAY BELIEVE THAT GO BEYOND THESE STRICT AND MINIMAL RANGE OF DEFINITIONS, CAN BE FOUND AT THE BOTTOM OF THE GRID. THIS IS
WHERE ADJUSTMENTS FOR UPGRADES, UPDATES, OR DATED MATERIALS ARE MADE. DATED EXAMPLES WOULD BE, BUT NOT LIMITED TO: WORN CARPET;
WALLS WITH DAMAGE OR DISCOLORING; STAINS ON WALLS OR CARPETS; MISSING PIECES OF WAINSCOTT; OLDER KITCHEN CABINETS;  OLDER ROOF;
OUTDATED WALLPAPER,ETC.
 I avoided the use of REO homes and homes with limited exposure time.

THE SUBJECT'S PUD INCLUDES SHARED GREEN SPACES, EXERCISE ROOM, PLAY AREA,POOL, PROFESSIONAL MANAGEMENT.

## COST APPROACH TO VALUE (not required by Fannie Mae)

**COST APPROACH**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

Site value is based on extraction method.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE ................................................. =$ | 110,000 |
|---|---|---|
| Source of cost data  Marshall and Swift Estimator | Dwelling  3,818  Sq. Ft. @ $  82.50  ............ =$ | 314,985 |
| Quality rating from cost service  Aavg      Effective date of cost data  05/14/2022 | Baseme 1,816  Sq. Ft. @ $  35.00  ............ =$ | 63,560 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | ................................................. =$ | |
| The estimated remaining economical life of the property is 64 years | Garage/Carport  442  Sq. Ft. @ $  30.00  ............ =$ | 13,260 |
| | Total Estimate of Cost-New ................................. =$ | 391,805 |

| | Less | Physical | Functional | External | | |
|---|---|---|---|---|---|---|
| | Depreciation | 33,578 | | | =$ ( | 33,578 ) |
| | Depreciated Cost of Improvements ...................... =$ | | | | | 358,227 |
| | "As-is" Value of Site Improvements ...................... =$ | | | | | 20,000 |

| Estimated Remaining Economic Life (HUD and VA only) | 64 Years | Indicated Value by Cost Approach  ................................ =$ | 488,227 |
|---|---|---|---|

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

**INCOME**

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes ☒ No    Unit type(s)  ☒ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes   ☐ No  If Yes, date of conversion

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data source(s)

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities

20221031140104
20221031140104
File # USB-220506-02084-1

# Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

# Uniform Residential Appraisal Report

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

# Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION**: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name   Kevin Henley | Name |
| Company Name   Henley Appraisals | Company Name |
| Company Address   529 Ramsgate Dr | Company Address |
| Dayton , OH   45430 | |
| Telephone Number   513-290-4400 | Telephone Number |
| Email Address   khenleyappraisals@gmail.com | Email Address |
| Date of Signature and Report   05/18/2022 | Date of Signature |
| Effective Date of Appraisal   05/14/2022 | State Certification # |
| State Certification #   2008004175 | or State License # |
| or State License # | State |
| or Other (describe)   State # | Expiration Date of Certification or License |
| State   OH | |

ADDRESS OF PROPERTY APPRAISED

265 Woodstream Dr

Springboro , OH   45066

APPRAISED VALUE OF SUBJECT PROPERTY $   470,000

LENDER/CLIENT

Name   Red Sky Risk Services, LLC

Company Name   U.S. Bank, N.A.

Company Address   1050 Woodward Avenue

Detroit , MI   48226

Email Address

Expiration Date of Certification or License   06/01/2023

**SUBJECT PROPERTY**

☐ Did not inspect subject property

☐ Did inspect exterior of subject property from street

Date of Inspection

☐ Did inspect interior and exterior of subject property

Date of Inspection

**COMPARABLE SALES**

☐ Did not inspect exterior of comparable sales from street

☐ Did inspect exterior of comparable sales from street

Date of Inspection

20221031140104

# Uniform Residential Appraisal Report

20221031140104

File # USB-220506-02084-1

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 265 Woodstream Dr<br>Springboro, OH 45066 | 8835 Winton Hills Ct<br>Springboro, OH 45066 | | 8837 Glen Abby Ct<br>Springboro, OH 45066 | | | |
| Proximity to Subject | | 0.66 miles SW | | 0.71 miles SW | | | |
| Sale Price | $ | | $ 503,000 | | $ 465,000 | | $ |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 155.44 sq.ft. | | $ 111.01 sq.ft. | | $ sq.ft. | |
| Data Source(s) | | DayMls#846736;DOM 54 | | DayMls#844324;DOM 44 | | | |
| Verification Source(s) | | WarrenCountyAuditorPRC/Realtor | | WarrenCountyAuditorPRC/Realtor | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | | |
| Concessions | | Conv;0 | | Conv;0 | | | |
| Date of Sale/Time | | s10/21;c08/21 | | s08/21;c07/21 | | | |
| Location | N;Res; | N;Res; | | N;Res; | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 9932 sf | 2.75 ac | -14,000 | 27482 sf | -3,000 | | |
| View | N;Res; | B;ResWoods; | -12,000 | N;Res; | | | |
| Design (Style) | DT2;Colonial | DT2;Colonial | | DT2;Colonial | | | |
| Quality of Construction | Q3 | Q3 | | Q3 | | | |
| Actual Age | 10 | 39 | 0 | 38 | 0 | | |
| Condition | C3 | C3 | | C3 | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | 0 | Total Bdrms. Baths | 0 | Total Bdrms. Baths | |
| Room Count | 11 4 2.1 | 10 4 2.1 | 0 | 11 4 3.1 | -8,000 | | |
| Gross Living Area | 3,818 sq.ft. | 3,236 sq.ft. | +13,968 | 4,189 sq.ft. | -8,904 | sq.ft. | |
| Basement & Finished | 1816sf1544sfin | 1568sf900sfwo | +800 | 1854sf400sfwo | +4,800 | | |
| Rooms Below Grade | 1rr1br0.0ba1o | 1rr0br0.1ba0o | -2,000 | 1rr0br1.0ba0o | -4,000 | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | FWA/CA | FWA/CA | | FWA/CA | | | |
| Energy Efficient Items | NoneNoted | NoneNoted | | NoneNoted | | | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | | |
| Porch/Patio/Deck | UnPorLUdkLupt | CovPorLrgUndk | -500 | CporUpatLrUdk | -1,000 | | |
| Exterior Materials | VinBrickStone | BrickStucWood | 0 | BrckStucConbrd | 0 | | |
| Extra Amenities In/Out | 2FirplacFence | 2FireplacePool | -5,000 | 3FireplacePool | -5,000 | | |
| Updates/Dated/Upgrades | NoneNoted | NoneNoted | | Dated | +23,250 | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -18,732 | ☐ + ☒ - | $ -1,854 | ☐ + ☐ - | $ |
| Adjusted Sale Price<br>of Comparables | | Net Adj. 3.7 %<br>Gross Adj. 9.6 % | $ 484,268 | Net Adj. 0.4 %<br>Gross Adj. 12.5 % | $ 463,146 | Net Adj. %<br>Gross Adj. % | $ |

Summary of Sales Comparison Approach

\* OVERFLOW - SEE "ADDITIONAL FIELD TEXT ADDENDA" \*

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 11/09/2020 | 07/12/1993 | 03/03/2011 | |
| Price of Prior Sale/Transfer | $442,000 | $0 | $0 | |
| Data Source(s) | WarrenCountyAuditorWeb | WarrenCountyAuditorWeb | WarrenCountyAuditorWeb | |
| Effective Date of Data Source(s) | 05/14/2022 | 05/14/2022 | 05/14/2022 | |

Analysis of prior sale or transfer history of the subject property and comparable sales

20221031140104

ADDITIONAL FIELD TEXT

File # USB-220506-02084-1

| Borrower/Client | DIANA DAVOLI-TURNER | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code 45066 |
| Lender | U.S. Bank, N.A. | | | | | |

COMMENT SALES COMPARE COMPS 4-6

Comps 4 and 5 are used due to an extreme lack of more similar sales that sold within the past year, where 2 comps over a year were used, I added two other sales, not as similar as those two, but sold in the past year. Comp4 is weighted 4th and used for lack of updates, but not weighted heavier due to much larger lot size and much smaller GLA. Comp5 is used for bracketing of subject's GLA and lack of more similar sales that bracket subject's GLA. It is weighted last due to dated,interior wallpaper, bathrooms and kitchen.

ALL ADJUSTMENTS AND LACK OF ADJUSTMENTS ARE BASED ON RESULTS FROM A PAIRED SALES (DATA) ANALYSIS, IN WHICH I COMPARED SIMILAR SALES WITH THEIR DIFFERENT OR SIMILAR ATTRIBUTES, EXTRAPOLATING CONTRIBUTORY VALUE,OR LACK OF CONTRIBUTORY VALUE. AFTER THESE EXTRAPOLATIONS, I APPLIED MY ESTIMATED RESULTS TO THE SALES COMPARISON GRID. I HAVE REPORTED ADJUSTMENTS TO THE COMPARABLE SALES THAT REFLECT THE MARKET'S REACTION TO THE DIFFERENCES BETWEEN THE SUBJECT PROPERTY AND COMPARABLE SALES.  THE LOGIC AND REASONING WAS DERIVED FROM THIS METHOD, SUPPORTED AND USED BY MY APPRAISER PEERS.  THE FOLLOWING NARRATION IS A BRIEF SUMMARY OF HOW THE ADJUSTMENTS WERE DERIVED.

A 5% adjustment is supported for 5% appreciation, when this market appreciated at this rate from 10/20-04/21, since has remained stable.  There is no value difference for lot sizes that have less than a 5,000 sq ft difference. A lot size adjustment is warranted at about $1000 for every 5,000 sq ft, estimated, up to 2 acres.  A CDS or wooded lot is valued at about $6000 more than typical lots and a lot on a CDS and with woods, contributes $12,000.  There is no value difference for style differences. No age adjustments are supported once dwellings are over 10 yrs old or within 10 yrs of each other, over 5 yrs old. There is no value difference for differences in room counts. There is no value difference for bedrooms once 3 bedrooms are accounted for. A full bath and 1/2 bath contribute  about $8000 and  $4000 to market value, above grade and respectively. GLA was supported at about $24.00 per square foot, in relation to sales of Q3 quality, over 3000 sf of GLA. There is no value difference noted for different sizes of basements, but finished area contributes about $8.00 per sq ft of finished area, up to 1000 sf. No value difference not for different types of rooms below grade, except bathrooms. A bathroom and 1/2 bathroom, below grade, contributes $4000 and $2000 to market value, respectively. A walk-out basement  doesn't contribute to market value in this neighborhood.  There is no value difference for driveway count difference. Covered porches, covered patios, covered decks or larger porches,patios and decks contribute $2000 to market value. Open porches, decks and patios contribute $1000. No siding adjustments are warranted. Fences and fireplaces do not contribute to market value. An upgraded kitchen contributes about $12000 to market value; updated kitchens contribute about $6000; upgraded bathrooms contribute $6000 and updated bathrooms contribute $4000. A dated property is valued about 5% less than a property that is not dated. There is no value for properties being from different PUDs or for having different HOA fees or ammenities. Typically, fees are higher for more ammenties and less for less ammenties.

TEXT ADDENDUM

File # USB-220506-02084-1

| Borrower/Client | DIANA DAVOLI-TURNER | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code 45066 |
| Lender | U.S. Bank, N.A. | | | | | |

Supplemental Addendum [Multi-page]
Henley Appraisals

In accordance with your request, we have appraised this property. The report of that appraisal follows.

The purpose of this appraisal is to estimate the fair market value of the property described in this appraisal report,

as improved, in unencumbered fee simple title of ownership.

This report is based on a physical inspection and analysis of the site and improvements, a locational analysis of the

neighborhood and city, and an economical analysis of the market for properties such as the subject. The appraisal

was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal

Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the

certification and limiting conditions attached.

It has been a pleasure to assist you. Please do not hesitate to contact me or any of my associates if we can be of any

additional service to you.

Sincerely,

Kevin Henley

Supplemental Addendum [Multi-page]
The appraiser certifies and agrees that this appraisal was prepared in accordance with the requirements of Title XI of the Financial Institutions, Reform, Recovery, and Enforcement Act (FIRREA) of 1989, as amended (12 U.S.C. 3331 et seq.), and any applicable implementing regulations in effect at the time the appraiser signs the appraisal certification.

 The Sixth Edition of The Dictionary of Real Estate Appraisal by the Appraisal Institute defines highest and best use as: The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, financially feasible and that results in the highest value. The subject is a legally permissible use based on its current zoning. Also, the lot size, shape and land-to-building ratio allow the present structure and indicate a good utilization of the improvements. Based on current market conditions, the existing structure as a single family residence is its financially feasible and maximally productive use. The highest and best use, as if vacant, would be to construct a single family residence.Highest and best use of property is as it is being used and how it is legally zoned, conforming to other similar properties in its neighborhood.

 All public utilities and appliances were on at the time of the site visit and  appear to be operational.  The garage was observed with the same consistency as the dwelling and no issues noted..

   UAD DESCRIPTIONS ARE USED IN ALL OF IMPROVEMENTS AREA, AS EXPECTED PER UAD PROTOCOL. WITHIN UAD DIRECTIVES, THERE IS NO DIRECTION ON USING AVERAGE, GOOD, FAIR, BELOW AVERAGE, POOR, TYPICAL, NEUTRAL, GOOD+, -AVERAGE, ETC. THERE IS, HOWEVER, DIRECTIVES TO USE C1-C6, AND THIS IS NOT EXCLUSIVE TO OVERALL CONDITION. SIMPLY STATED, THE UAD PROTOCOL, WITH REGARDS TO IMPROVEMENTS SECTION, ONLY REFERS TO THE C1-C6 RATINGS.

In addition to providing an estimate of value, the appraisal provides an examination of the property for any visible, obvious and/or apparent deficiencies that may affect the livability of the property in terms of basic needs, health and safety of the occupants. This information is not warranted.Buyers/borrowers must determine for themselves that the condition of the property is acceptable.

This appraiser has made a "complete" interior and exterior site visit of the subject property. This means that the appraiser has walked around the exterior of the subject property at ground level. An interior walk through of all habitable area has been made. No personal property was moved and the inspection is considered non-invasive.

Even though a reader or user of this appraisal may consider broad streets, RR tracks, creeks or rivers, as neighborhood dividers, the neighborhood boundaries are, as defined, on the first page of the URAR. The boundaries are discussed within this report. Properties located on any side of large artery roads or across creeks or other, large man-mad structures does not change market value or marketability, as long as located within the neighborhood boundaries defined on the URAR, or if discussed here, or anywhere within the report.

Verification source was my drive by, verifying comps exist and matches MLS, as well as any sales agents I called who viewed the interior of comparable sales, but were not involved in their respective transactions. This list is provided by the listing agent, who keeps records of agents who "showed" the properties.

Exposure time is always presumed to precede the effective date of the appraisal. It is the estimated length of time the property would have been offered on the market, prior to the hypothetical sale, at the appraised value, on the effective date of the appraisal. It is a retrospective estimate based on an analysis of past events assuming a competitive and open market. This includes not only adequate, sufficient and reasonable time, but adequate, sufficient and reasonable effort. It is often expressed as a range and is based on the following:
1. Statistical information about days on the market, most commonly obtained from the local Multiple Listing Service.
2. Information gathered through sales verification.
3. Interviews with market participants.

Exposure time of 60 DAYS is based on the analyses of current market trends in the general area and takes into account the size, condition and price range of the subject property and surrounding area. It presupposes that the listed price would be at or near the appraised value. It also assumes aggressive professional marketing by reputable local real estate offices . Exposure time can vary widely for a number of variables in this particular market.

There is a difference in adjusted price ranges due to the differences in comparable sales that are larger or more different with regards to their differences when being compared to the subject, individually. Comparables are compared to the subject within the Sales Comparison Approach, not compared to each other. These sales most represent the subject in most regards, but some are better, larger, have more amenities than the subject, but much more than they have from each other.  The subject, overall, falls somewhere between the low and high values, but weighted as discussed.

***CONTINUED ON NEXT PAGE***

20221031140104

## TEXT ADDENDUM

File # USB-220506-02084-1

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren   State OH   Zip Code 45066 |
| Lender | U.S. Bank, N.A. |

Sales are used if they have one or two items similar to the subject, or bracket certain line items, such as GLA.  This practice leads to larger differences in adjusted sales price, as well.
THERE ARE NO LAWS, GUIDELINES, REGULATIONS FOR THE SUBJECT, PERTAINING TO SMOKE OR CARBON MONOXIDE DETECTORS.
FEMA HAS DECLARED THE SUBJECT'S MARKET , AS WELL AS THE ENTIRE US, A DISASTER AREA DUE TO COVID 19, AS OF 03/31/2020. THIS DOES NOT APPEAR TO HAVE AN AFFECT ON MARKET  VALUE OR MARKETABILITY.
I USE ANSI MEASUREMENTS AND GUIDELINES WHEN CALCULATING THE GLA AND LIVING AREA.
I WAS ASKED TO ADDRESS SALES DUE TO THE FOLLOWING REASONING: An online source did reveal some closed sales with less than a mile from the subject.  That being said, there are at least 40 other sales that sold in the past year, within a mile from subject. There was no other reasoning given for me to address the following sales:30 willow Grove Dr 45 Willow Grove Dr, and 285 Wood stream Dr.

30 Willow Grove only has 3052 sf of GLA, too small to use
45 Willow Grove only has 2949 sf of GLA, too small to use
285 Wood Stream only has 2696 sf of GLA, too small to use.

The GLA of all of the preceding sales is available on the Warren County Auditor site.

As reported on my appraisal, ".....My search included all 2story dwellings,3218-4418 sf of GLA, 2-40 yrs old,  C2-C4 condition and similar quality......"

# INVOICE

File No. _____ USB-220506-02084-1

| | |
|---|---|
| **Invoice #** | USB-220506-02084-1 |
| **Invoice Date** | 05/16/2022 |
| **Fee** | 400.00 |
| **Due Date** | |

**Lender or Client:** _____

**Borrower:** DIANA DAVOLI-TURNER
265 Woodstream Dr
Springboro          OH      45066

| Item | Cost |
|---|---|
| FULL APPRAISAL WITH LENDER REQUIREMENTS | 400.00 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total Amount Due** | 400.00 |

**Terms**

Please remit payment to:   KEVIN HENLEY
HENLEY APPRAISALS
529 RAMSGATE DR
DAYTON                OH      45430

**Thank you**

20221031140104
2022103110104

# USPAP COMPLIANCE ADDENDUM

File No.    USB-220506-02084-1

| SUBJECT | | | |
|---|---|---|---|
| Borrower  DIANA DAVOLI-TURNER | | | |
| Property Address  265 Woodstream Dr | | | |
| City  Springboro | County  Warren | State  OH | Zip Code  45066 |
| Lender/Client  U.S. Bank, N.A. | | | |

## PURPOSE OF THE APPRAISAL

As reported

## SCOPE OF THE APPRAISAL

As noted and complying with Appraisal reporting requirements within standards 2-2.(a) and client requirements.

## REPORT OF THE PRIOR YEAR SALES HISTORY FOR THE SUBJECT PROPERTY

Is the subject property currently listed?      ☐ Yes   ☒ No      List Price $ _____

Has the property sold during the prior year?    ☐ Yes   ☒ No      If yes, describe below:

## MARKETING TIME

What is your estimate of marketing time for the subject property?  60 days_____    Describe below the basis (rationale) for your estimate:

Based on other similar sales in the market.

## NON-REAL PROPERTY TRANSFERS

Does the transaction involve the transfer of personal property, fixtures, or intangibles that are not real property?    ☐ Yes   ☒ No

If yes, provide description and valuation below:

## ADDITIONAL LIMITING CONDITIONS OR ADDITIONAL COMMENTS

None added.

## ADDITIONAL CERTIFICATION STATEMENTS OR ADDITIONAL COMMENTS

I have not performed any services on the subject property in the past three years.

DO DUE LENDER BRACKETING RULES OR GUIDELINES, THERE IS A CHANCE  COMPARABLE SALES USED ARE LESS LIKE THE SUBJECT THAN OTHER POSSIBLE SALES NOT USED JUST TO BRACKET ONE OR MORE BRACKETING ITEMS.  IF THIS IS THE CASE, I WILL TYPICALLY ADD A STATEMENT THAT THE COMP WAS USED FOR THAT PURPOSE.

Date: 05/18/2022_____    Appraiser(s):

Kevin Henley

Date: _____    Review Appraiser(s):

20221031140104

# APPRAISER DISCLOSURE STATEMENT

### In Compliance with Ohio Revised Code Section 4763.12 (C)

File No.   USB-220506-

**Name of Appraiser:**   Kevin Henley

**Class of Certification/Licensure:**

| | |
|---|---|
| _____ | Certified General |
| YES | Certified Residential |
| _____ | Licensed Residential |
| _____ | Temporary _____ General   YES   Licensed |

**Certification/Licensure Number:**   2008004175

**Scope: This Report**   YES   is within the scope of my Certification or License.

_____ is not within the scope of my Certification or License.

**Service Provided by:**   YES   Disinterested & Unbiased Third Party

_____ Interested & Biased Third Party

_____ Interested Third Party on Contingent Fee Basis

**Signature of person preparing and reporting the Appraisal:**

This form must be included in conjunction with all appraisal assignments or specialized services performed by a state-certified or state-licensed real estate appraiser

**State of Ohio**
**Department of Commerce**
**Division of Real Estate Appraiser Section**
**Cleveland (216) 787-3100**

20221031140104

# USPAP ADDENDUM

20221031140104

File No. USB-220506-02084-1

| | |
|---|---|
| Borrower | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren | State OH | Zip Code 45066 |
| Lender | U.S. Bank, N.A. |

### This report was prepared under the following USPAP reporting option:

[X] **Appraisal Report**    This report was prepared in accordance with USPAP Standards Rule 2-2(a).

[ ] **Restricted Appraisal Report**    This report was prepared in accordance with USPAP Standards Rule 2-2(b).

### Reasonable Exposure Time

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: 60 Days

### Additional Certifications

I certify that, to the best of my knowledge and belief:

[X] I have **NOT** performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

[ ] I **HAVE** performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

— The statements of fact contained in this report are true and correct.
— The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
— I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
— My engagement in this assignment was not contingent upon developing or reporting predetermined results.
— My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
— Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
— Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

### Additional Comments

**APPRAISER:**

Signature:
Name: Kevin Henley
Date Signed: 05/18/2022
State Certification #: 2008004175
or State License #:
or Other (describe) _____ State # _____
State: OH
Expiration Date of Certification or License: 06/01/2023
Effective Date of Appraisal: 05/14/2022

**SUPERVISORY APPRAISER: (only if required)**

Signature:
Name:
Date Signed:
State Certification #:
or State License #:
State:
Expiration Date of Certification or License:
Supervisory Appraiser Inspection of Subject Property:
[ ] Did Not  [ ] Exterior-only from Street  [ ] Interior and Exterior

20221031140104
20221031140104
File # USB-220506-02084-

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
### (Source: UAD Appendix D: UAD Field-Specific Standardization Requirements)

## Condition Ratings and Definitions

### C1
The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

### C2
The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

### C3
The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

### C4
The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

### C5
The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminish d due to condition, but the dwelling remains useable and functional as a residence.

### C6
The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

## Quality Ratings and Definitions

### Q1
Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinement s and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

### Q2
Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

### Q3
Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

### Q4
Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

### Q5
Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available and basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

### Q6
Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

## Definitions of Not Updated, Updated, and Remodeled

### Not Updated
**Little or no updating or modernization. This description includes, but is not limited to, new homes.**
Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical /functional deterioration.

### Updated
**The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.**
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure .

### Remodeled
**Significant finish and/or structural  changes have been made that increase utility and appeal through complete replacement and/ or expansion.**
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

## Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

2022103114010<br>2022103114010<br>**File #** USB-220506-02084-

## Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Appropriate Fields |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA –Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

## Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

20221031140104

## SUBJECT PHOTOGRAPH ADDENDUM

| | | | | |
|---|---|---|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER | | | File # USB-220506-02084-1 |

Property Address  265 Woodstream Dr

City  Springboro  County  Warren  State  OH  Zip Code  45066

Lender  U.S. Bank, N.A.



**FRONT OF SUBJECT PROPERTY**

Subject Front

265 Woodstream Dr



**REAR OF SUBJECT PROPERTY**

Subject Rear

265 Woodstream Dr



**STREET SCENE**

Subject Street

265 Woodstream Dr

# ADDITIONAL PHOTOGRAPH ADDENDUM

File # USB-220506-02084-1

Borrower/Client  DIANA DAVOLI-TURNER

Property Address  265 Woodstream Dr

City  Springboro     County  Warren     State  OH     Zip Code  45066

Lender  U.S. Bank, N.A.



Bedroom



Sitting Room



Office

# ADDITIONAL PHOTOGRAPH ADDENDUM

| | | | | |
|---|---|---|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER | | | File # USB-220506-02084-1 |
| Property Address | 265 Woodstream Dr | | | |
| City Springboro | | County Warren | State OH | Zip Code 45066 |
| Lender | U.S. Bank, N.A. | | | |



Landing



Mud Room



Laundry closet

## ADDITIONAL PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren State OH Zip Code 45066 |
| Lender | U.S. Bank, N.A. |

File # USB-220506-02084-1



Half Bathroom





Bathroom 1



Bathroom 2

20221031140104

## ADDITIONAL PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |
| City | Springboro |
| County | Warren |
| State | OH |
| Zip Code | 45066 |
| Lender | U.S. Bank, N.A. |

File # USB-220506-02084-1



Bedroom




Bedroom



Bedroom

20221031140104

## ADDITIONAL PHOTOGRAPH ADDENDUM

| | | | |
|---|---|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER | | File # USB-220506-02084-1 |
| Property Address | 265 Woodstream Dr | | |
| City | Springboro | County Warren | State OH Zip Code 45066 |
| Lender | U.S. Bank, N.A. | | |



Basement

rec-room



Basement

bedroom



basement

media room

## ADDITIONAL PHOTOGRAPH ADDENDUM

| | | | |
|---|---|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER | | File # USB-220506-02084-1 |
| Property Address | 265 Woodstream Dr | | |
| City Springboro | County Warren | State OH | Zip Code 45066 |
| Lender U.S. Bank, N.A. | | | |



garage



opposite street view



Left side

20221031140104

# ADDITIONAL PHOTOGRAPH ADDENDUM

| | | | | |
|---|---|---|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER | | | File # USB-220506-02084-1 |
| Property Address | 265 Woodstream Dr | | | |
| City Springboro | | County Warren | State OH | Zip Code 45066 |
| Lender U.S. Bank, N.A. | | | | |



Right side



Living room



Family Room

ADDITIONAL PHOTOGRAPH ADDENDUM

File # USB-220506-02084-1

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren  State OH  Zip Code 45066 |
| Lender | U.S. Bank, N.A. |



Dining Room



Kitchen

## COMPARABLES PHOTOGRAPH ADDENDUM

File #  USB-220506-02084-1

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |

| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
|---|---|---|---|---|---|---|---|

| | |
|---|---|
| Lender | U.S. Bank, N.A. |



**Comparable Sale 1**

21 Stanton Dr

Springboro            OH    45066

Date of Sale:  s10/21;c08/21

Sale Price:        495,000

Sq. Ft.:            3,615

$ / Sq. Ft.:        136.93



**Comparable Sale 2**

190 Stanton Dr

Springboro            OH    45066

Date of Sale:  s05/21;c03/21

Sale Price:        450,000

Sq. Ft.:            3,400

$ / Sq. Ft.:        132.35



**Comparable Sale 3**

266 Woodstream Dr

Springboro            OH    45066

Date of Sale:  s10/20;c09/20

Sale Price:        427,000

Sq. Ft.:            3,663

$ / Sq. Ft.:        116.57

## COMPARABLES PHOTOGRAPH ADDENDUM

20221031140104

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | U.S. Bank, N.A. |

File #   USB-220506-02084-1



**Comparable Sale 4**

8835 Winton Hills Ct

Springboro          OH      45066

| | |
|---|---|
| Date of Sale: | s10/21;c08/21 |
| Sale Price: | 503,000 |
| Sq. Ft.: | 3,236 |
| $ / Sq. Ft.: | 155.44 |



**Comparable Sale 5**

8837 Glen Abby Ct

Springboro          OH      45066

| | |
|---|---|
| Date of Sale: | s08/21;c07/21 |
| Sale Price: | 465,000 |
| Sq. Ft.: | 4,189 |
| $ / Sq. Ft.: | 111.01 |

**Comparable Sale 6**

| | |
|---|---|
| Date of Sale: | |
| Sale Price: | |
| Sq. Ft.: | |
| $ / Sq. Ft.: | |

20221031140104

## LOCATION MAP ADDENDUM

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER | | | | File # USB-220506-02084-1 |
| Property Address | 265 Woodstream Dr | | | | |
| City Springboro | | County Warren | State OH | Zip Code 45066 | |
| Lender U.S. Bank, N.A. | | | | | |



20221031140104

**SKETCH ADDENDUM**

File # USB-220506-02084-1

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren State OH Zip Code 45066 |
| Lender U.S. Bank, N.A. | |

| Living Area | Calculation Details | |
|---|---|---|
| FirstFloor | 1815.75 Sq ft | $0.5 \times 2.5 \times 2.5 = 3.12$ |
| | | $0.5 \times 2.5 \times 2.5 = 3.12$ |
| | | $15 \times 2.5 = 37.5$ |
| | | $46 \times 32 = 1472$ |
| | | $25 \times 12 = 300$ |
| SecondFloor | 2001.75 Sq ft | $0.5 \times 2.5 \times 2.5 = 3.12$ |
| | | $0.5 \times 2.5 \times 2.5 = 3.12$ |
| | | $15 \times 2.5 = 37.5$ |
| | | $46 \times 36 = 1656$ |
| | | $10 \times 11 = 110$ |
| | | $10 \times 8 = 80$ |
| | | $14 \times 8 = 112$ |
| **Total Living Area (Rounded):** | **3818 Sq ft** | |
| **Non-living Area** | | |
| 2CarAttGarage | 442 Sq ft | $21 \times 20 = 420$ |
| | | $11 \times 2 = 22$ |
| UncPorch | 18 Sq ft | $6 \times 3 = 18$ |
| LargeUncDck | 567.38 Sq ft | $21.5 \times 22 = 473$ |
| | | $2.5 \times 2.5 = 6.25$ |
| | | $0.5 \times 2.5 \times 2.5 = 3.12$ |
| | | $5 \times 15 = 75$ |
| | | $0.5 \times 5 \times 4 = 10$ |
| LargeUncPatio | 400 Sq ft | $20 \times 20 = 400$ |
| Basement | 1815.75 Sq ft | $0.5 \times 2.5 \times 2.5 = 3.12$ |
| | | $0.5 \times 2.5 \times 2.5 = 3.12$ |
| | | $15 \times 2.5 = 37.5$ |
| | | $46 \times 32 = 1472$ |
| | | $25 \times 12 = 300$ |

20221031140104

## SKETCH ADDENDUM

| | | |
|---|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER | File # USB-220506-02084-1 |
| Property Address | 265 Woodstream Dr | |
| City Springboro | County Warren | State OH   Zip Code 45066 |
| Lender | U.S. Bank, N.A. | |



TOTAL Sketch by a la mode, inc.

20221031140104

## PLAT MAP ADDENDUM

File # USB-220506-02084-1

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER | | | | |
| Property Address | 265 Woodstream Dr | | | | |
| City | Springboro | County | Warren | State OH | Zip Code 45066 |
| Lender | U.S. Bank, N.A. | | | | |



File #   USB-220506-02084-1

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |
| City Springboro | County Warren | State OH | Zip Code 45066 |
| Lender | U.S. Bank, N.A. |



Kevins License

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender | U.S. Bank, N.A. |



20221031140104
E AND O 2022 2023
File #   USB-220506-02084-1

| | |
|---|---|
| Borrower/Client | DIANA DAVOLI-TURNER |
| Property Address | 265 Woodstream Dr |

City  Springboro    County  Warren    State  OH    Zip Code  45066

Lender  U.S. Bank, N.A.

**HUDSON INSURANCE COMPANY**
100 William Street, 5th Floor
New York, NY 10038



**REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE
POLICY DECLARATIONS**

**NOTICE: THIS IS A "CLAIMS MADE AND REPORTED" POLICY. THIS POLICY REQUIRES THAT A CLAIM BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR AUTOMATIC EXTENDED REPORTING PERIOD.**

**THIS POLICY MAY CONTAIN PROVISIONS WHICH LIMIT THE AMOUNT OF CLAIM EXPENSES THE INSURER IS RESPONSIBLE TO PAY IN CONNECTION WITH CLAIMS. CLAIM EXPENSES SHALL BE SUBJECT TO ANY DEDUCTIBLE AMOUNT. THE PAYMENT OF CLAIM EXPENSES WILL REDUCE THE LIMITS OF LIABILITY STATED IN ITEM 4. OF THE DECLARATIONS. PLEASE READ YOUR POLICY CAREFULLY.**

**PLEASE READ THIS POLICY CAREFULLY.**

**Policy Number:**    PRA-2AX-1008976           **Renewal of:**    PRA-2AX-1001490
1.  **Named Insured:**    Kevin D Henley

2.  **Address:**    529 Ramsgate Drive
                    Dayton, OH  45430

3.  **Policy Period:**    **From:**    April 8, 2022    **To:**    April 8, 2023

   12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above

4.  **Limit of Liability**          Each **Claim**              Policy Aggregate
   **Damages** Limit of Liability    **A.**    $1,000,000         **B.**    $2,000,000
   **Claims Expense** Limit of
   Liability                        **C.**    $1,000,000         **D.**    $2,000,000

5.  **Deductible** (Inclusive of **Claims** Expenses):
   **5A.**    $ 500    Each **Claim**    **5B.**    $ 1,000    Aggregate
6.  **Policy Premium:**    $560.00        **State Taxes/Surcharges:**        $0.00

7.  **Retroactive Date:**    April 8, 2002

8.  **Notice to Company:**    Notice of a **Claim** or Potential **Claim** should be sent to:
                             Hudson Insurance Group

                             100 William Street, 5th Floor
                             New York, NY  10038

                             Fax: 646-216-3786
                             Email: hudsonclaims300@hudsoninsgroup.com
9.  **A. Program Administrator:**    Riverton Insurance Agency Corp.
   **B. Agent/Broker:**             OREP Insurance Services, LLC
                                    (888) 347-5273

*IN WITNESS WHEREOF, We have caused this policy to be executed by our President and our Corporate Secretary at New York, New York*

President                                    Secretary

PRA100 (01/20)                                    P a g e | 1

20221031140104

AI Ready PDF Generated on 05/18/2022 8:10:53 AM

**EXHIBIT #4 – The Whitewashed Appraisal**

Davis Appraisal Group (937) 859-6273

# INVOICE

**Davis** Appraisal Group

| INVOICE NUMBER |
|---|
| 2305007 |
| **DATE** |
| 05/08/2023 |

**TO:**

Diana Turner
265 Woodstream Dr
Springboro, OH 45066

| | |
|---|---|
| Telephone Number: | Fax Number: |
| Alternate Number: | E-Mail: turner.cd15@gmail.com |

| REFERENCE | |
|---|---|
| Internal Order #: | 2305007 |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 2305007 |
| Other File # on form: | |
| Federal Tax ID: | 31-1738403 |
| Employer ID: | |

## DESCRIPTION

| | | | |
|---|---|---|---|
| Lender: Diana Turner | | Client: Diana Turner | |
| Purchaser/Borrower: n/a | | | |
| Property Address: 265 Woodstream Dr | | | |
| City: Springboro | | | |
| County: Warren | | State: OH | Zip: 45066 |
| Legal Description: Springs 3 Lot: 88 0.228 acres | | | |

## FEES | AMOUNT

| | |
|---|---|
| Residential Appraisal | 550.00 |
| **SUBTOTAL** | 550.00 |

## PAYMENTS | AMOUNT

| Check #: | Date: | Description: | paid in full...Thank you | 550.00 |
|---|---|---|---|---|
| Check #: | Date: | Description: | | |
| Check #: | Date: | Description: | | |
| | | | **SUBTOTAL** | 550.00 |

| Payable Upon Inspection | **TOTAL DUE** | $ 0 |
|---|---|---|

---

Please Return This Portion With Your Payment

**FROM:**

Diana Turner
265 Woodstream Dr
Springboro, OH 45066

| | |
|---|---|
| Telephone Number: | Fax Number: |
| Alternate Number: | E-Mail: turner.cd15@gmail.com |

| AMOUNT DUE: | $ | 0 |
|---|---|---|
| AMOUNT ENCLOSED: | $ | |

| INVOICE NUMBER |
|---|
| 2305007 |
| **DATE** |
| 05/08/2023 |

**TO:**

Davis Appraisal Group
Davis Appraisal Group
PO Box 506
Miamisburg, OH 45343-0506

| REFERENCE | |
|---|---|
| Internal Order #: | 2305007 |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 2305007 |
| Other File # on form: | |
| Federal Tax ID: | 31-1738403 |
| Employer ID: | |

117

Form NIV2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Davis Appraisal Group (937) 859-6273



# Appraisal Report

## 265 Woodstream Dr
## Springboro, OH 45066

**Davis Appraisal Group**
**(937) 859-6273**
**www.davisappraisalgroup.com**

| Appraised Value as of: | 05/08/2023 |
|---|---|
| $ | **655,000** |

**FEATURES**

| | | | |
|---|---|---|---|
| Style/Design: | **colonial** | Lot Size: | **9,932 Sq.Ft.** |
| Living Area (Sq.Ft.): | **3,966** | Neighborhood: | **Clearcreek Township** |
| Total Bedrooms: | **4** | Total Baths: | **2.1** |
| Year Built: | **2012** | Effective Age: | **5** |
| Condition: | **above average** | Date of Report: | **05/09/2023** |

**PREPARED FOR**

| | |
|---|---|
| Client: | **Diana Turner** |
| Address: | **265 Woodstream Dr** |
| City: | **Springboro** State: **OH** Zip: **45066** |
| Phone: | Fax: |
| E-mail: | **turner.cd15@gmail.com** |

**PREPARED BY**

_Clark Davis_ (signature)

Appraiser's Signature

| | |
|---|---|
| Name: | **Clark A Davis** |
| Designation: | |
| Certification or License #: | **2004004362** |
| Expiration Date: | **04/06/2024** ST: **OH** |
| E-mail: | **buckiappraiser@gmail.com** |

**FILING**

Client File #:

Appraiser File #: 2305007

The value opinion expressed above is only valid in conjunction with the attached appraisal report. This value opinion may be subject to Hypothetical Conditions and/or Extraordinary Assumptions as indicated in the body of the report. A true and complete copy of this Summary Appraisal Report contains _17_ pages.

**GP CONSUMER SF** Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPCSF LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE
10/2007

# RESIDENTIAL APPRAISAL REPORT
## SUBJECT PROPERTY IDENTIFICATION

Property Address: 265 Woodstream Dr     City: Springboro

State: OH    Zip Code: 45066    County: Warren

Legal Description of Real Property: Springs 3 Lot: 88 0.228 acres

Tax Assessor's Parcel #: 0403173004    R.E. Taxes: $ 6,458.30    Tax Year: 2022

Special Assessments: $ 0    Current Owner of Record: Davoli-Turner, Diana

Occupancy: ☒ Owner ☐ Tenant ☐ Vacant    Current Occupant (if occupied): Davoli-Turner, Diana

Project Type (if applicable): ☒ Planned Unit Development ☐ Condominium ☐ Cooperative ☐

Home Owners' Association Membership Fees (if applicable): $ 800 ☒ per year ☐ per month

Market Area Name: Clearcreek Township    Map Reference: 17140    Census Tract: 0309.01

## ASSIGNMENT

The purpose of this appraisal is to develop a Current opinion of Market Value (as defined elsewhere in this report).

Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)

Intended Use: determine current market value

Intended User(s) (by name or type): Client/Owner

Client: Diana Turner    Address: 265 Woodstream Dr, Springboro, OH 45066

Appraiser: Clark A Davis    Address: PO Box 506, Miamisburg, OH 45343-0506

## MARKET AREA DESCRIPTION

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Location: | ☐ Urban | ☒ Suburban | ☐ Rural | Built Up: | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% |
| Growth Rate: | ☐ Rapid | ☒ Stable | ☐ Slow | Property Values: | ☐ Increasing | ☒ Stable | ☐ Declining |
| Demand/Supply: | ☒ Shortage | ☐ In Balance | ☐ Over Supply | Marketing Time: | ☒ Under 3 Mos. | ☐ 3-6 Mos. | ☐ Over 6 Mos. |

Typical One-Unit Housing Ranges: Price: ($) Low 225,000   High 2,500,000   Predominant 450,000

Age: (yrs.) Low 0   High 150   Predominant 30

Present Land Use: One-Unit: 75 %   2-4 Unit: 5 %   Multi-Unit: 5 %   Comm'l: 15 %   _____ %

Change in Land Use: ☒ Not Likely ☐ Likely * ☐ Is Changing *   * To: 

Market Area Comments:

The subject property is located in the City of tSpringboro, Warren,. Ohio. The subject neighborhood is an average mix of single and multi family dwellings. There is ease of access to employment,

shopping, schools and community support services. The general market conditions within the subject market area are considered to be stable at this time. Demand is outpacing Supply with list price

trends remaining stable over the most recent six month period. Predominate financing consists of conventional and government loans at market rates and terms. The neighborhood boundaries are:

Austin Road to the north, State Route 48 Street to the east, State Route 73 to the south, and I-75 to the west.

## SALE / TRANSFER / LISTING HISTORY OF SUBJECT PROPERTY

My research: ☒ Did ☐ Did not   reveal any prior sales or transfers of the subject property for the three years prior to the Effective Date of this

appraisal. Data Source(s): Warren County Auditor, Dabr / Cabr MLS, Realist.com

| | 1st Prior Sale / Transfer | 2nd Prior Sale / Transfer | 3nd Prior Sale / Transfer |
|---|---|---|---|
| Date of Prior Sale / Transfer: | 11/09/2020 | | |
| Price of Prior Sale / Transfer: | $442,000 | | |
| Source(s) of Prior Sale / Transfer Data: | Realist/Auditor's website | | |

Analysis of sale / transfer history, any current agreements of sale or listing, and listing history (if relevent):

Sales activity for the previous thirty-six months is documented above all data is gathered from public record and believed to be

accurate but is NOT warranted.

Client: Diana Turner    Client File No.:    Appraiser File No.: 2305007

**GP CONSUMERSF** Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPCSF LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    10/2007

# RESIDENTIAL APPRAISAL REPORT
## SITE DESCRIPTION

| | | | |
|---|---|---|---|
| Dimensions: | 77 x 153 x 54 x 149 | Site Area: | 9,932 Sq.Ft. |

Zoning Classification: R-2  Zoning Description: single family residential

Zoning Compliance: ☒ Legal ☐ Legal Non-Conforming (Grandfathered) ☐ Illegal ☐ No Zoning Regulations

Deed Restrictions: Are Covenants, Conditions, & Restrictions (CC&Rs) applicable? ☐ Yes ☐ No ☒ Unknown

Have the documents been reviewed? ☐ Yes ☐ No ☐ N/A Ground Rent (if applicable) $ /

Comments:

Highest & Best Use, as improved, is the: ☒ Present use, or ☐ Other use (explain)

the subject property is located in a suburban residential neighborhood, highest and best use is single family residential.

| Characteristics: | Topography: | generally level | Size: | typical for market area |
|---|---|---|---|---|
| | Shape: | mostly rectangular | Drainage: | appears adequate |
| | View: | similar residential | Landscaping: | typical for market |

Other features: ☒ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☒ Underground Utilities ☐

| Utilities: | Public | Other | Provider/Description | Off-site Improvements: | Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity: | ☒ | ☐ | on & operable | Street: | asphalt | ☒ | ☐ |
| Gas: | ☒ | ☐ | on & operable | Curb/Gutter: | concrete | ☒ | ☐ |
| Water: | ☒ | ☐ | on & operable | Sidewalk: | concrete | ☒ | ☐ |
| Sanitary Sewer: | ☒ | ☐ | public / operable | Alley: | none | ☐ | ☐ |

Is the property or the improvements located in a FEMA Special Flood Hazard Area? ☐ Yes ☒ No

| FEMA Flood Zone: | X | FEMA Map # | 39165C0030E | FEMA Map Date: | 12/17/2010 |
|---|---|---|---|---|---|

Site Comments:

No apparent adverse easements or encroachments noted at the time of inspection. The flood information provided in this appraisal report is believed to be accurate but is NOT warranted.

## DESCRIPTION OF THE IMPROVEMENTS

General Description: # of Units: 1 ☐ + Accessory Unit # of Stories: 2 Design (Style): colonial

Type: ☒ Detached ☐ Attached ☐ Status: ☒ Existing ☐ Proposed ☐ Under Construction

Actual Age (years): 11 Effective Age (years): 5 Year Built: 2012

Exterior Description:

| Foundation: | concrete/avg | Exterior Walls: | brick/hrdbrd/avg |
|---|---|---|---|
| Roof Surface: | composite/avg | Gutters & Downspouts: | aluminum/avg |
| Window Type(s): | thermal/avg | Storm / Screens: | yes/avg |

Heating System: forced air  Cooling System: central air

Car Storage: ☐ None ☒ Garage ☐ Carport ☒ Driveway (Surface: concrete ) Total # of Cars: 4

Livable area above grade contains: 9 Rooms, 4 Bedrooms, 2.1 Bath(s), and 3,966 Sq.Ft. of GLA

Describe Additional Features and Improvements:

The property is in above average condition and has been well maintained by the current owner. No repairs were needed at the time of inspection. Condition is generally average to above average for the neighborhood when compared to other properties in this age bracket and design.

| Client: | Diana Turner | Client File No.: | | Appraiser File No.: | 2305007 |
|---|---|---|---|---|---|

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP CONSUMER SF**

Form GPCSF LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

10/2007

# RESIDENTIAL APPRAISAL REPORT
## SALES COMPARISON APPROACH TO VALUE

For the Sales Comparison Approach, the appraiser selects comparable sales that they consider the best matches to the subject in terms of physical characteristics, physical proximity, and time of sale. The appraiser then makes adjustments to the known sale price of each comparable sale to account for differences that are recognized by the market. For example, if the subject has a single bathroom but a comparable has 2, the comparable's sale price would be reduced by the attributable value given to the extra bathroom based on the market's reaction. Likewise, if a comparable sale has a smaller square footage than the subject, its sale price would be adjusted upward in the same manner. By weighting and reconciling these adjusted sales prices together, an opinion of value for the subject can be determined.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(−) $ Adjust. | COMPARABLE SALE # 2 | +(−) $ Adjust. | COMPARABLE SALE # 3 | +(−) $ Adjust. |
|---|---|---|---|---|---|---|---|
| Address | 265 Woodstream Dr Springboro, OH 45066 | 165 Wellspring Dr Springboro, OH 45066 | | 477 Stolle Dr Springboro, OH 45066 | | 10934 Ruston Glen Ct Dayton, OH 45458 | |
| Proximity to Subject | | 0.06 miles S | | 0.28 miles W | | 2.29 miles E | |
| Sale Price | $ | $ 661,000 | | $ 660,000 | | $ 612,000 | |
| Sale Price / GLA | $ /Sq.Ft. | $ 207.60/Sq.Ft. | | $ 196.20/Sq.Ft. | | $ 156.68/Sq.Ft. | |
| Data Source(s) | inspection/auditor | DabrMLS#880103 DOM 52 | | DabrMLS#881214 DOM 31 | | DabrMLS#880954 DOM 34 | |
| ADJUSTMENT ITEMS | DESCRIPTION | DESCRIPTION | +(−) $ Adjust. | DESCRIPTION | +(−) $ Adjust. | DESCRIPTION | +(−) $ Adjust. |
| Sales or Financing | | ArmLth | 0 | ArmLth | 0 | ArmLth | 0 |
| Concessions | | none noted | 0 | Conv;0 | 0 | Conv;0 | 0 |
| Date of Sale / Time | | 02/2023 | 0 | 03/2023 | 0 | 03/2023 | 0 |
| Rights Appraised | fee simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | suburban | suburban | | suburban | | suburban | |
| Site | 9,932 Sq.Ft. | 14,854 sf | 0 | 15,856 sf | 0 | 15,673 sf | 0 |
| View | similar residential | similar residential | | similar residential | | similar residential | |
| Design (Style) | Colonial/2 story | Colonial/spl lvl | 0 | Colonial/2 story | | Colonial/2 story | |
| Quality of Construction | above average | above average | | above average | | above average | |
| Age | 11 | 3 | 0 | 7 | 0 | 8 | 0 |
| Condition | above average | above average | | above average | | above average | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 9   4   2.1 | 8   4   3.1 | −30,000 | 11   4   2.1 | 0 | 11   4   2.1 | 0 |
| Gross Living Area | 3,966 Sq.Ft. | 3,184 Sq.Ft. | +40,700 | 3,364 Sq.Ft. | +29,500 | 3,906 Sq.Ft. | 0 |
| Basement Total Area | full | partial | +10,000 | full | | full | |
| Basement Finish Area | 85% finish | unfinished | +30,000 | finished/bath | −15,000 | unfinished | +30,000 |
| Functional Utility | average/4bdrm | average/4bdrm | | average/4bdrm | | average/4bdrm | |
| Heating / Cooling | fa/ca | fa/ca | | fa/ca | | fa/ca | |
| Energy Efficient Items | thrml windows | thrml windows | | thrml windows | | thrml windows | |
| Garage / Carport | 2gbi2dw | 2gbi2dw | | 3gbi3dw | −20,000 | 3gbi3dw | −20,000 |
| Porch / Patio / Deck | stoop/deck | stoop/deck | | stoop/patio | | stoop/deck | |
| Additional Features | fireplace | fireplace | | fireplace | | fireplace | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ +  ☐ − $ | 50,700 | ☐ +  ☒ − $ | −5,500 | ☒ +  ☐ − $ | 10,000 |
| Adjusted Sale Price of Comparables | | $ | 711,700 | $ | 654,500 | $ | 622,000 |

Comments on the Sales Comparison Approach:

All three comparables are closed sales from the subject market area and are reflective of value in the area. All three comparables were given consideration. Adjustments have been made to the comparables for such characteristics as gross living area, age, basement appeal, garage utility and other amenities based on market observation and analysis. Condition adjustments are based on MLS interior photos and descriptions. Adjustment amounts are derived from paired sales, sensitivity analysis, market surveys, and market reaction. All three sales are located in competing market areas and are impacted by similar external and socio economic forces. A factor of 25% was calculated on the price per square foot of each comparable and this amount was utilized for the GLA adjustment of each comparable. Therefore, due to the size and sales price differences adjustments for each comparable will calculate differently. Current market data does not support gla adjustments for differences of 200 square feet in the subject market segment.

| Appraiser's Indicated Value by the Sales Comparison Approach: | $ 655,000 |
|---|---|

Client: Diana Turner          Client File No.:          Appraiser File No.: 2305007



Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPCSF LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE          10/2007

# RESIDENTIAL APPRAISAL REPORT

## RECONCILIATION

Final Reconciliation of the Approaches to Value:

In developing this appraisal, the appraiser has incorporated only the Sales Comparison approach. The appraiser has excluded the Cost and Income approaches. The appraiser has determined that this appraisal process is not so limited that the results of the assignment are no longer credible.

This appraisal is made ☒ "as is"; ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed; ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed; ☐ subject to the following required inspection(s) based on the Extraordinary Assumption that the following condition or deficiency does not require alteration or repair:

☐ This report is also subject to other Hypothetical Conditions or Extraordinary Assumptions as specified elsewhere in this report.

## ATTACHMENTS

A true and complete copy of this report contains __17__ pages, including all exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

☒ Scope of Work  ☒ Limiting Cond./Certification  ☐ Narrative Addendum  ☒ Photograph Addenda
☒ Sketch Addendum  ☒ Map Addenda  ☐ Cost Addendum  ☐ Flood Addendum
☐ Additional Sales  ☐ Additional Rentals  ☐ Income/Expense Analysis  ☐ Hypothetical Conditions
☐ Extraordinary Assumptions  ☐  ☐  ☐

## OPINION OF VALUE

This Opinion of Value may be subject to other Hypothetical Conditions and / or Extraordinary Assumptions, if so indicated above. Based on the degree of inspection of the subject property as indicated below; the defined Scope of Work for this appraisal assignment; the attached Statement of Assumptions and Limiting Conditions; and the attached Appraiser's Certifications, my (our) Current Opinion of the Market Value (or value range), as defined elsewhere in this report, of the real property that is the subject of this report is: $ 655,000 , as of: 05/08/2023 , which is both the Inspection Date and the Effective Date of this appraisal.

## SIGNATURES

APPRAISER

SUPERVISORY APPRAISER (if required)
or CO-APPRAISER (if applicable)

Appraiser Name: Clark A Davis
Company: Davis Appraisal Group
Phone: (937) 859-6273  Fax:
E-mail: buckiappraiser@gmail.com
Date of Report (Signature): 05/09/2023
License or Certification #: 2004004362  State: OH
Designation:
Expiration Date of License or Certification: 04/06/2024
Inspection of Subject: ☒ Interior & Exterior ☐ Exterior Only ☐ None
Date of Inspection: 05/08/2023

Supervisory or
Co-Appraiser Name:
Company:
Phone:  Fax:
E-mail:
Date of Report (Signature):
License or Certification #:  State:
Designation:
Expiration Date of License or Certification:
Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None
Date of Inspection:

Client: Diana Turner  Client File No.:  Appraiser File No.: 2305007

**GP CONSUMER SF**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPCSF LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE
10/2007

## Assumptions, Limiting Conditions & Scope of Work

| | | File No.: | 2305007 | |
|---|---|---|---|---|
| | City: Springboro | | State: OH | Zip Code: 45066 |
| Property Address: 265 Woodstream Dr | | | | |
| Client: Diana Turner | Address: 265 Woodstream Dr, Springboro, OH 45066 | | | |
| Appraiser: Clark A Davis | Address: PO Box 506, Miamisburg, OH 45343-0506 | | | |

### STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS

- The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

- The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

- If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

- The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

- If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.

- The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

- The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

- The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

- If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.

- An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser-client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.

- The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

- An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non-invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.

**The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.**

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**   Form GPRES2AD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE   3/2007

## Certifications

File No.: 2305007

| | | | | |
|---|---|---|---|---|
| Property Address: | 265 Woodstream Dr | City: Springboro | State: OH | Zip Code: 45066 |
| Client: | Diana Turner | Address: | 265 Woodstream Dr, Springboro, OH 45066 | |
| Appraiser: | Clark A Davis | Address: | PO Box 506, Miamisburg, OH 45343-0506 | |

**APPRAISER'S CERTIFICATION**
**I certify that, to the best of my knowledge and belief:**
- The statements of fact contained in this report are true and correct.
- The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification.

**DEFINITION OF MARKET VALUE \*:**
Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:
1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised and acting in what they consider their own best interests;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.
\* This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), Federal Deposit Insurance Corporation (FDIC), the Office of Thrift Supervision (OTS), and the Office of Comptroller of the Currency (OCC). This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994, and in the Interagency Appraisal and Evaluation Guidelines, dated October 27, 1994.

| | |
|---|---|
| Client Contact: | Client Name: Diana Turner |
| E-Mail: | Address: 265 Woodstream Dr, Springboro, OH 45066 |

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| *[signature: Clark A Davis]* | |
| Appraiser Name: Clark A Davis | Supervisory or Co-Appraiser Name: |
| Company: Davis Appraisal Group | Company: |
| Phone: (937) 859-6273   Fax: | Phone:   Fax: |
| E-Mail: buckiappraiser@gmail.com | E-Mail: |
| Date Report Signed: 05/09/2023 | Date Report Signed: |
| License or Certification #: 2004004362   State: OH | License or Certification #:   State: |
| Designation: | Designation: |
| Expiration Date of License or Certification: 04/06/2024 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior  ☐ Exterior Only  ☐ None | Inspection of Subject: ☐ Interior & Exterior  ☐ Exterior Only  ☐ None |
| Date of Inspection: 05/08/2023 | Date of Inspection: |

124

**GP RESIDENTIAL**

Copyright 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2AD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

3/2007

# Aerial Map

| | | | | | |
|---|---|---|---|---|---|
| Borrower | n/a | | | | |
| Property Address | 265 Woodstream Dr | | | | |
| City | Springboro | County Warren | State OH | Zip Code 45066 | |
| Lender/Client | Diana Turner | | | | |



Form MAP LT.LOC - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Location Map

| Borrower | n/a | | | | |
|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | |
| City | Springboro | County Warren | | State OH | Zip Code 45066 |
| Lender/Client | Diana Turner | | | | |



Form MAP LT.LOC - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Building Sketch (Page - 1)

| Borrower | n/a | | | | |
|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | |
| City | Springboro | County Warren | | State OH | Zip Code 45066 |
| Lender/Client | Diana Turner | | | | |



TOTAL Sketch by a la mode, inc.

**Area Calculations Summary**

| Non-living Area | | |
|---|---|---|
| Basement | 1886 Sq ft | $0.5 \times 4 \times 2 = 4$ |
| | | $0.5 \times 2 \times 2 = 2$ |
| | | $15 \times 2 = 30$ |
| | | $33 \times 22 = 726$ |
| | | $25 \times 44 = 1100$ |
| | | $1 \times 23 = 23$ |
| | | $0.5 \times 1 \times 2 = 1$ |

127

## Building Sketch (Page - 2)

| | | | | | |
|---|---|---|---|---|---|
| Borrower | n/a | | | | |
| Property Address | 265 Woodstream Dr | | | | |
| City | Springboro | County  Warren | | State  OH | Zip Code  45066 |
| Lender/Client | Diana Turner | | | | |



TOTAL Sketch by a la mode, inc.

**Area Calculations Summary**

| Living Area | | Calculation Details | |
|---|---|---|---|
| First Floor | 1886 Sq ft | 0.5 × 4 × 2 = | 4 |
| | | 0.5 × 2 × 2 = | 2 |
| | | 15 × 2 = | 30 |
| | | 33 × 22 = | 726 |
| | | 25 × 44 = | 1100 |
| | | 1 × 23 = | 23 |
| | | 0.5 × 1 × 2 = | 1 |
| **Total Living Area (Rounded):** | **1886 Sq ft** | | |
| Non-living Area | | | |
| 2 Car Built-In | 442 Sq ft | 21 × 20 = | 420 |
| | | 11 × 2 = | 22 |
| Uncvrd Stp | 22 Sq ft | 11 × 2 = | 22 |
| Wood Deck | 647 Sq ft | 24 × 22 = | 528 |
| | | 2 × 2 = | 4 |
| | | 0.5 × 2 × 4 = | 4 |
| | | 6 × 15 = | 90 |
| | | 0.5 × 6 × 7 = | 21 |

128

## Building Sketch (Page - 3)

| Borrower | n/a | | | | |
|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | |
| City | Springboro | County  Warren | | State  OH | Zip Code  45066 |
| Lender/Client | Diana Turner | | | | |



**Second Floor**

TOTAL Sketch by a la mode, inc.                                    Area Calculations Summary

| Living Area | | Calculation Details | |
|---|---|---|---|
| Second Floor | 2080 Sq ft | 0.5 × 4 × 2 = | 4 |
| | | 0.5 × 2 × 2 = | 2 |
| | | 15 × 2  = | 30 |
| | | 11 × 2  = | 22 |
| | | 21 × 8  = | 168 |
| | | 15 × 8  = | 120 |
| | | 46 × 4  = | 184 |
| | | 33 × 45 = | 1485 |
| | | 2 × 32  = | 64 |
| | | 0.5 × 2 × 1 = | 1 |
| Open to Below | -80 Sq ft | 8 × 10  = | 80 |
| **Total Living Area (Rounded):** | **2080 Sq ft** | | |

**Subject Photo Page**

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | | State | OH | Zip Code | 45066 |
| Lender/Client | Diana Turner | | | | | | |



**Subject Front**

265 Woodstream Dr



**Subject Rear**



**Subject Street**

Form PICPIX.TR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Photograph Addendum

| Borrower | n/a | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code 45066 |
| Lender/Client | Diana Turner | | | | | |


**Street**


**Side**


**Side**


**Entry**


**Living room**


**Dining room**


**1/2 bath**


**Breakfast area**


**Kitchen 1**


**Kitchen 2**


**Family room**


**Garage interior**

Form PIC12  LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Photograph Addendum

| Borrower | n/a | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | |
| City | Springboro | County Warren | | State OH | Zip Code 45066 | |
| Lender/Client | Diana Turner | | | | | |


**Den**


**HVAC**


**Basement media room**


**Basement family room**


**Basement den**


**Foyer**


**Bedroom**


**Bath**


**Bedroom**


**Bedroom**


**Bedroom**


**Den**

Form PIC12 LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE



**Photograph Addendum**

| Borrower | n/a | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code 45066 |
| Lender/Client | Diana Turner | | | | | |

  

**Bath**        **Laundry room**



Form PIC12 LT - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Comparable Photo Page

| Borrower | n/a | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 265 Woodstream Dr | | | | | | |
| City | Springboro | County | Warren | State | OH | Zip Code | 45066 |
| Lender/Client | Diana Turner | | | | | | |



**Comparable 1**

165 Wellspring Dr

MLS photo



**Comparable 2**

477 Stolle Dr

MLS photo



**Comparable 3**

10934 Ruston Glen Ct

Form PICPIX.BR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE