**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

**CASE NO. 3:23-cv-00371-RICE/GENTRY**

Carlos Turner, et al.,

     Plaintiffs

v.

Henley Appraisals LLC, et al.,

     Defendants.

_____/

## <u>DEFENDANT U.S. BANCORP'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH SUPPORTING MEMORANDUM OF LAW</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and applicable law, Defendant U.S. Bancorp moves for an order dismissing the Complaint with prejudice because it fails to state any claim upon which relief can be granted. A supporting memorandum follows.

Respectfully submitted,

*/s/ Timothy C. Sullivan*
Timothy C. Sullivan (0031069), Trial Attorney
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: 513.357-9382
sullivan@taftlaw.com

*/s/ Olivia Kelman*
Olivia Kelman (admitted *pro hac vice*)
K&L Gates LLP
200 South Biscayne Boulevard, Suite 3900
Miami, Florida 33131
Phone: 305.539.3382
olivia.kelman@klgates.com

**Counsel for U.S. Bancorp**

## TABLE OF CONTENTS

I.     FACTUAL ALLEGATIONS OF THE COMPLAINT ........................................................ 2

II.    PLAINTIFF DAVOLI-TURNER FAILS TO STATE A CLAIM OF NATIONAL ORIGIN DISCRIMINATION UNDER ANY ANTI-DISCRIMINATION LAW ............ 7

III.   PLAINTIFF CARLOS TURNER FAILS TO STATE A DISCRIMINATION CLAIM............................................................................................................................ 10

IV.   ALL PLAINTIFFS FAIL TO PLAUSIBLY PLEAD DISCRIMINATION CLAIMS ....................................................................................................................... 11

       A.    The Complaint Does Not Support an Inference of Intentional Discrimination............................................................................................... 11

       B.    The Complaint Fails to Plead an Unintentional Disparate Impact ....................... 19

V.     THE STATE LAW NEGLIGENCE CLAIM SHOULD BE DISMISSED....................... 20

VI.   CONCLUSION……………………………………………………………………… 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................13

*Bacon v. Honda of Am. Mfg., Inc.,*
    370 F.3d 565 (6th Cir. 2004) ........................................................15

*Barney v. Holzer Clinic, Ltd.,*
    110 F.3d 1207 (6th Cir. 1997) ......................................................10

*Bernard v. Fed. Nat'l Mortg. Ass'n,*
    587 F. App'x 266 (6th Cir. 2014) ................................................12

*Bricker v. R&A Pizza,*
    804 F. Supp. 2d 615 (S.D. Ohio 2011) ........................................21

*Campbell v. Robb,*
    162 F. App'x 460 (6th Cir. 2006) ................................................11

*Clark v. Viacom Int'l Inc.,*
    617 F. App'x 495 (6th Cir. 2015) ..........................................14, 17

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,*
    140 S. Ct. 1009 (2020)........................................................12, 19, 20

*Corwin v. B'Nai B'Rith Senior Citizen Hous., Inc.,*
    489 F. Supp. 2d 405 (D. Del. 2007)................................................9

*Douglass v. Salem Cmty. Hosp.,*
    2003-Ohio-4006, 153 Ohio App. 3d 350, 794 N.E.2d 107....................20

*El-Zabet v. Nissan N. Am., Inc.,*
    211 F. App'x 460 (6th Cir. 2006) ..................................................7

*Espinoza v. Farah Mfg. Co., Inc.,*
    414 U.S. 86 ....................................................................................8

*Eva v. Midwest Nat'l Mortg. Bank, Inc.,*
    143 F. Supp. 2d 862 (N.D. Ohio 2001)........................................11

*Groner v. Golden Gate Gardens Apartments,*
    250 F.3d 1039 (6th Cir. 2001) ......................................................9

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)...................................................................................11

*HDC, LLC v. City of Ann Arbor,*
    675 F.3d 608 (6th Cir. 2012) ...............................................8, 10, 12, 13

*Hogrobrooks v. Wells Fargo Bank, N.A.,*
    2020 WL 7231501 (6th Cir. June 9, 2020) ............................................12

*Jones v. Alfred H. Mayer Co.,*
    392 U.S. 409 (1968).................................................................................8

*Midkiff v. Adams Cnty. Reg'l Water Dist.,*
    409 F.3d 758 (6th Cir. 2005) .................................................................12

*Price v. Country Brook Homeowners Ass'n, Inc.,*
    2021 WL 5577407 (S.D. Ohio Nov. 30, 2021)......................................20

*Ray v. U.S. Bank Nat'l Ass'n,*
    627 F. App'x 452 (6th Cir. 2015) ...............................................12, 14, 19

*Seaton v. TripAdvisor,*
    728 F.3d 592 (6th Cir. 2013) ...............................................................6, 16

*Selden Apartments v. U.S. Dep't of Hous. & Urb. Dev.,*
    785 F.2d 152 (6th Cir. 1986) ..................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)...............................................................................16

*Tex. Dep't Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.,*
    135 S. Ct. 2507 (2015)...........................................................................19

*Thompson v. Bank of Am.,*
    773 F.3d 741 (6th Cir. 2014) ..................................................................3

*United States v. Bestfoods,*
    524 U.S. 51 (1998).................................................................................13

*United States v. Matusoff Rental Co.,*
    494 F. Supp. 2d 740 (S.D. Ohio 2007) ................................................15

*Wilson v. Cap. One Bank (USA),*
    2022 WL 1784822 (6th Cir. Feb. 10, 2022) .........................................12

**Statutes**

15 U.S.C. § 1002.6(b)(7) ...................................................................................9

iii

15 U.S.C. § 1639e(a) ....................................................................................................17, 19

15 U.S.C. § 1639e(b)(1) ...............................................................................................17, 19

15 U.S.C. § 1691(a) .......................................................................................................9, 10

42 U.S.C. § 1981 ..................................................................................................................7

42 U.S.C. § 1982 ..................................................................................................................7

42 U.S.C. § 3602(i) ............................................................................................................11

42 U.S.C. § 3605(a) .............................................................................................................9

42 U.S.C. § 3613(a)(1) .......................................................................................................11

Ohio Rev. Code § 4112.01(A)(23) .....................................................................................11

**Other Authorities**

12 C.F.R. § 1002.5(6)(b)(7) ...............................................................................................13

12 C.F.R. § 1002.5(6)(e) ....................................................................................................13

12 C.F.R. §§ 1002.5(e) ........................................................................................................9

Consumer Financial Protection Bureau, Data Point: 2022 Mortgage Market
    Activity and Trends, (Sept. 2023),
    https://files.consumerfinance.gov/f/documents/cfpb_data-point-mortgage-
    market-activity-trends_report_2023-09.pdf .............................................................16

Fannie Mae, Non-Citizen Borrower Eligibility,
    https://singlefamily.fanniemae.com/media/7181/display ..........................................4

Freddie Mac, Primary Mortgage Market Survey,
    https://www.freddiemac.com/pmms ......................................................................3, 4

U.S. Department of Housing and Urban Development, Mortgagee Letter 2021-12
    (May 28, 2021), https://www.hud.gov/sites/dfiles/OCHCO/documents/2021-
    12hsgml.pdf ................................................................................................................4

Miami Valley Fair Housing Center, 21st Century Fair Housing Issues, at 59 (Jan. 2016),
http://www.mvfairhousing.com/realtors/files/21st%20Century%20Fair%20Housing%20Issues.P
DF ................................................................................................................... 9, 13

U.S. Bank National Association ("U.S. Bank") is committed to fair lending at all stages of the home mortgage process, and this discrimination suit is misguided. The Complaint (Doc. No. 1) reflects frustration felt by mortgage applicants nationwide when, in 2022, interest rates spiked after a long period of historic lows during the COVID-19 pandemic. It also shows the impact of loan qualification standards and independent appraisal rules set by Congress in the wake of the financial crisis of 2008 to combat industry-wide problems of borrowers lacking the ability to repay their mortgages and inflated appraisal values. The Complaint seeks to recast these issues as violations of anti-discrimination laws, but the facts alleged fail to state any claim against U.S. Bank.

Plaintiff Diana Davoli-Turner, a Canadian citizen living in the United States, and Plaintiff Carlos Turner, who is Black, bought a home in November 2020 when mortgage interest rates were at historic lows. The Complaint alleges that Plaintiff Davoli-Turner contacted U.S. Bank in March or April 2022 about refinancing. By then, interest rates had risen sharply. Plaintiff Davoli-Turner alone submitted an application to U.S. Bank, but it was denied before any appraisal was ordered due to credit report delinquencies. She next submitted two home equity loan applications that were denied, again before any appraisal was ordered and again due to credit delinquencies. She then applied for a home equity line of credit ("HELOC"), and U.S. Bank ordered an exterior appraisal in April 2022. When Plaintiff Davoli-Turner expressed dissatisfaction with the value, U.S. Bank ordered a full interior appraisal in May 2022 conducted by Defendant Henley Appraisals. The Complaint claims the appraisal contained "errors," but does not allege it had any discriminatory statements. The appraisal itself confirms that U.S. Bank granted Plaintiff Davoli-Turner's request for reconsideration, and though the value did not change, the HELOC was approved in June 2022.

The Complaint's generalized allegations collectively reference Plaintiff Davoli-Turner and Plaintiff Carlos Turner as the "Turner Plaintiffs," but the factual allegations and materials attached

1

to the pleadings confirm that Plaintiff Davoli-Turner was the **only** person involved with the loan applications and appraisals. Plaintiff Carlos Turner was not a co-applicant, and his claims fail because he does not plead any act, let alone a discriminatory act, that injured **his** statutory rights. As to Plaintiff Davoli-Turner, no facts suggest that any loan was denied due to her Canadian national origin—the refinance and home equity loans were denied because she did not qualify. Nor do any facts show that the independent appraisal or reconsideration review were discriminatory.

None of U.S. Bank's alleged conduct supports an inference of discrimination, and nothing alleged in the Complaint alters that conclusion. For example, U.S. Bank asked Plaintiff Davoli-Turner to provide documentation of her permanent residency status, but such a request conforms to lending requirements set by the U.S. Department of Housing and Urban Development ("HUD") and government-sponsored entities ("GSEs") and does not violate fair lending laws. As another example, when conducting the appraisal, Kevin Henley allegedly "questioned why the Turners sent their children to a private Catholic school for athletics rather than Springboro High School," but even if true, that statement raises no inference of discrimination due to Canadian national origin or race. Finally, the Complaint asserts that another appraisal that was conducted as a "test" for discrimination returned a higher value, but that appraisal occurred one year later in May 2023 when home prices had risen and it was completed for Plaintiff Davoli-Turner, a person who had an interest in the outcome of the appraisal. The Court should dismiss all claims against U.S. Bank.

## I.     FACTUAL ALLEGATIONS OF THE COMPLAINT

Plaintiff Davoli-Turner "is a Canadian citizen with permanent residency in the United States" who is Caucasian, and Plaintiff Turner "is a Black, African-American." Compl. ¶¶ 35-36. They own a home at 265 Woodstream Drive, Springboro, OH 45066 ("Subject Property") in a "predominantly white" area that they bought "in November 2020 for approximately $442,000.00

when interest rates were at a historic low."[1] *Id.* ¶¶ 6, 38. Over the next year, the Turner Plaintiffs allegedly made "substantial improvements" to the Subject Property, but the Complaint identifies only one improvement: "finishing the basement" at a cost "in excess of $30,000.00." *Id.* ¶ 39.

By 2022, "interest rates were beginning to rise." *Id.* In order "to pay off debts they incurred in renovating and improving the Subject Property," the Turner Plaintiffs "contacted their lender at the time about refinancing" their November 2020 mortgage. *Id.* ¶¶ 39, 41. "Obtaining a real estate appraisal is generally a necessary step on the path to obtaining a mortgage or refinancing," and "in March 2022," an appraisal "came back with a value of $520,000.00" ("March 2022 Appraisal"). *Id.* ¶¶ 40-41. The March 2022 Appraisal confirms that "Borrower Diana Davoli-Turner" alone applied for a "Refinance Transaction" with "Lender/Client Union Home Mortgage." *Id.*, Ex. 1, PageID 31. The refinance loan was not originated. "The Turner Plaintiffs failed to lock in the interest rate with their lender at the time and rates began increasing while they shopped." *Id.* ¶ 42.

"In March or April 2022,"[2] "Plaintiff Davoli-Turner then began communicating with U.S. Bank" about loan options. *Id.* ¶¶ 43-44. Many of the Complaint's allegations refer collectively to the "Turner Plaintiffs," but the materials attached to the Complaint confirm that Plaintiff Davoli-Turner was the only "borrower" or "applicant" on all applications submitted to U.S. Bank.

In "April 2022," Plaintiff Davoli-Turner "completed an online loan application with Defendant U.S. Bank" to "refinance and cash out approximately $60,000." *Id.* ¶¶ 44-45. The

---

[1] GSE Freddie Mac reports that, in the month of November 2020, the national average interest rate for a 30-year fixed-rate mortgage ranged between 2.72% and 2.84%. *See* Freddie Mac, Primary Mortgage Market Survey [hereinafter Freddie Mac PMMS], https://www.freddiemac.com/pmms. The Court may take judicial notice of publicly available data published by Freddie Mac. *See Thompson v. Bank of Am.*, 773 F.3d 741, 749 & n.3 (6th Cir. 2014) (taking judicial notice of report on government website at Federal Rule of Civil Procedure 12(b)(6) stage).

[2] National average interest rates for a 30-year fixed-rate mortgage sharply increased in the month of March 2022, from 3.76% to 4.67%. *See* Freddie Mac PMMS (weeks 3/3/2022–3/31/2022). By April 2022, rates increased from 4.72% to 5.10%. *See id.* (weeks 4/7/2022–4/28/2022).

refinance application was "denied after a hard credit check" before any appraisal was conducted. *Id.* ¶ 45. Plaintiff Davoli-Turner claims to be "unaware of any major delinquencies," but does not dispute the existence of the credit delinquencies or allege she qualified for the refinance loan. *Id.*

The refinance denial "prompted Plaintiff Davoli-Turner to visit U.S. Bank at a local branch," where she met with a loan officer "named Stephanie" who reviewed her "credit history" and recommended "a home equity loan of $55,000 at 5.9% interest." *Id.* ¶¶ 45-46. "Plaintiff Davoli-Turner went forward with that application as interest rates were beginning to steadily rise." *Id.* ¶ 47. The $55,000 home equity loan was denied based on credit history. *See id.* ¶ 48. Plaintiff Davoli-Turner does not allege that she qualified for the home equity loan.

U.S. Bank "communicat[ed] back and forth" with Plaintiff Davoli-Turner, and she then applied "for a $15,000.00 home equity loan" with "a 6.25% interest rate." *Id.* ¶ 49. The Complaint alleges that U.S. Bank underwrote the application consistent with government eligibility guidelines by inquiring into "citizenship status prior to the appraisal process" and "request[ing] that Plaintiff Davoli-Turner email U.S. Bank her green card as evidence of her Permanent Resident status."[3] *Id.* ¶¶ 4, 51, 53. When Plaintiff Davoli-Turner "questioned the legitimacy and reason for the request," U.S. Bank employees had "extensive discussions" to address her concerns. *Id.* ¶ 51. After a "credit check," however, the home equity loan "was denied" due to a "history of delinquency." *Id.* ¶ 48. The Complaint does not allege that Plaintiff Davoli-Turner qualified for the loan or that U.S. Bank approved refinance or home equity loans to non-Canadian borrowers with similar delinquencies.

---

[3] GSE Fannie Mae permits "mortgages to non-citizens who are lawful permanent or non-permanent residents of the United States" if the mortgage applicant provides "documentation showing immigration status is current (e.g., Green Card …)." Fannie Mae, Non-Citizen Borrower Eligibility, https://singlefamily.fanniemae.com/media/7181/display. HUD permits loans to non-citizens if the borrower provides "required documentation" with "evidence of lawful permanent residence status." HUD, Mortgagee Letter 2021-12 at 3-4 (May 28, 2021), https://www.hud.gov/sites/dfiles/OCHCO/documents/2021-12hsgml.pdf.

Plaintiff Davoli-Turner then completed an "application with Defendant U.S. Bank" for a "Home Equity Line of Credit" and "U.S. Bank, for the first time, ordered an appraisal of the Subject Property." *Id.* ¶ 54. An "external, drive-by appraisal" was conducted for "Borrower/Applicant Diana Davoli-Turner" on "04/05/2022" that "valued the Subject Property at $485,000" ("April 2022 Appraisal"). *Id.* ¶ 55 & Ex. 2, PageID 67. Plaintiff Carlos Turner is not listed as a "Borrower/Applicant." *See id.* The Complaint alleges that "Plaintiff Davoli-Turner initially questioned the Defendant, U.S. Bank about the [April 2022 Appraisal]," that "U.S. Bank, and its loan officer, Stephanie, said they would work on overriding the [April 2022 Appraisal]," and that U.S. Bank did—in fact—order a new, full interior appraisal. *Id.* ¶ 56.

"Defendant Kevin Henley, owner of Defendant Henley Appraisals, LLC," conducted a full interior appraisal for "Borrower Diana Davoli-Turner" on "05/14/2022" ("May 2022 Appraisal"). *Id.* ¶ 57 & Ex. 3, PageID 81. Plaintiff Carlos Turner is not listed as a "Borrower." *See id.* The May 2022 Appraisal valued the Subject Property at "$470,000." *Id.* ¶ 61. Mr. Henley signed the version of the May 2022 Appraisal attached as to the Complaint on "05/18/2022." *Id.*, Ex. 3, PageID 86.

"Plaintiff Davoli-Turner questioned Defendant U.S. Bank on the appraisal's veracity" and "requested reconsideration" of the May 2022 Appraisal, as the value was "less" than the March 2022 Appraisal for a different lender and the exterior April 2022 Appraisal. *Id.* ¶ 62. Plaintiff Davoli-Turner claims that she identified five "errors and inaccuracies" in the May 2022 Appraisal: (1) "the square footage on the [Subject Property] was incorrect," (2) Mr. Henley "utilized older comps," (3) "square footage inaccuracies inflated the square foot value of those comps," (4) it "was $15,000 less than the [April 2022 Appraisal]," and (5) "266 Woodstream," the home directly across the street from the Subject Property, was "not reliable" because the sale was from "19 months ago." *Id.* ¶ 61. Plaintiff Davoli-Turner also claims that she "reported to U.S. Bank" that

she had a "conversation" with Mr. Henley during his appraisal of the Subject Property's interior in which Mr. Henley allegedly "questioned why the Turners sent their children to a private Catholic school for athletics rather than Springboro High School," and she alleges that this asserted conversation about private versus public school raised "an indication of bias." *Id.* ¶ 63. The Complaint does not allege that Plaintiff Davoli-Turner reported to U.S. Bank that she believed the May 2022 Appraisal indicated bias or discrimination on the bases of race or national origin.

The Complaint alleges that "U.S. Bank stated there would be no reconsideration" of the May 2022 Appraisal and that "U.S. Bank refus[ed] to meaningfully investigate or respond to the Plaintiffs' reconsideration request of the appraisal." *Id.* ¶¶ 63, 83. The allegations are contradicted by the May 2022 Appraisal, which confirms that U.S. Bank granted the reconsideration request and records Mr. Henley's reconsideration-review conclusions in a version signed on "05/25/2022": "I have been asked to look at 3 more sales, a total of 6, as of today … ." *See* Exhibit A, p. 10.[4] Mr. Henley's opinion of the Subject Property's value did not change as a result of reconsideration.

After the reconsideration review of the May 2022 Appraisal, in "June 2022," Plaintiff Davoli-Turner decided to "accept" the HELOC with "a credit limit of $34,363 for 30-year term with a variable interest rate." Compl. ¶ 64. The "terms of the HELOC" were "different" than the refinance and home equity loans that were denied (before any appraisal was ordered) because Plaintiff Davoli-Turner did not qualify for those loans due to credit report delinquencies. *Id.* ¶¶ 45, 50, 65. The Complaint makes a conclusory claim that U.S. Bank "denied" the "earlier applications" for refinance and home equity loans "due to Plaintiff Davoli-Turner's national origin and immigration status" and "because of Plaintiff Davoli-Turner's citizenship status." *Id.* ¶¶ 84, 51.

---

[4] The post-reconsideration version of the May 2022 Appraisal signed by Mr. Henley on May 25, 2022 is central to the Complaint's claims, is attached hereto as Exhibit A, and may be considered in resolving this Motion. *See Seaton v. TripAdvisor*, 728 F.3d 592, 596 (6th Cir. 2013).

Sometime after June 2022, "the Turner Plaintiffs contacted the Plaintiff Miami Valley Fair Housing Center" ("MVFHC"). *Id.* ¶ 16. Plaintiff MVFHC is a "housing organization" that "decided to test" for "bias" by removing "markers of Black and Canadian identity" from the Subject Property and having it appraised. *Id.* ¶¶ 16, 68, 90. An appraisal on "May 15, 2023"—***one year*** after the May 2022 Appraisal—came back at "$655,000" ("May 2023 Appraisal"). *Id.* ¶¶ 72-73. The May 2023 Appraisal was conducted for "Client: Diana Turner," a person interested in the outcome. *Id.*, Ex. 4, PageID 117. By May 2023, "median home prices had increased." *Id.* ¶ 74.

On December 14, 2023, Plaintiffs filed the Complaint and asserted five counts against U.S. Bank. Count I alleges violations of the Fair Housing Act ("FHA"). Count II alleges violations of the Civil Rights Act ("CRA") of 1866, 42 U.S.C. §§ 1981, 1982. Count III alleges violations of the Ohio Fair Housing Act ("Ohio FHA"). Count IV alleges violations of the Equal Credit Opportunity Act ("ECOA"). Count VI alleges a state law claim for "negligent hiring and training."

## II.      PLAINTIFF DAVOLI-TURNER FAILS TO STATE A CLAIM OF NATIONAL ORIGIN DISCRIMINATION UNDER ANY ANTI-DISCRIMINATION LAW

Plaintiff Davoli-Turner fails to state a claim of "national origin" discrimination under § 1981 and § 1982 of the CRA, ECOA, FHA, and Ohio FHA. To start, Supreme Court and Sixth Circuit caselaw is clear that the CRA does not permit claims of national origin discrimination: It "is legally impossible to state a claim for national-origin discrimination under section 1981" *El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 462-63 (6th Cir. 2006) (citing *Saint Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 613 (1987)), and "section 1982 does not prohibit discrimination based on sex, religion or national origin," *Selden Apartments v. U.S. Dep't of Hous. & Urb. Dev.*, 785 F.2d 152, 159 n.12 (6th Cir. 1986); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968). Thus, Plaintiff Davoli-Turner's § 1981 and § 1982 CRA claims should be dismissed.

While claims of national origin discrimination are recognized by the ECOA, FHA, and Ohio FHA, Plaintiff Davoli-Turner does not actually plead that she was discriminated against because of her Canadian national origin. Rather, the gravamen of Plaintiff-Davoli Turner's claims is that she was allegedly discriminated against because of her *citizenship* status. The U.S. Supreme Court has explained that "national origin" is distinct from "citizenship," as "the term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came," and "Congress did not intend the term 'national origin' to embrace citizenship requirements." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88-89.

Here, Plaintiff Davoli-Turner bases her claims against U.S. Bank on alleged "inappropriate questions … regarding her *citizenship status* prior to the appraisal process," alleged "conversations with U.S. Bank" about her "*citizenship status*," an alleged "belief" that "because … Plaintiff Davoli-Turner *is not a U.S. citizen* [she] did not belong in Springboro," and alleged consideration of "*immigration status*" in connection with her "applications for loans." Compl. ¶¶ 4, 51, 60, 84 (emphasis added). In contrast, Plaintiff Davoli-Turner "put forth only conclusory allegations of discriminatory intent" on the basis of national origin, and did not include any "supporting factual allegations" to "show" she was discriminated against because of her Canadian ancestry or because she was born in Canada. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012).

Here, the distinction between "national origin" and "citizenship" is dispositive of Plaintiff Davoli-Turner's claims under the ECOA, the FHA, and the Ohio FHA because those laws do not recognize discrimination claims based on "citizenship." The ECOA prohibits discrimination "on the basis of race, color, religion, national origin, sex or marital status, or age" or receipt of "public assistance." 15 U.S.C. § 1691(a). On its face, the ECOA does not prohibit discrimination based on citizenship or immigration status. In fact, ECOA's implementing regulation promulgated by the

8

Consumer Financial Protection Bureau ("CFPB") expressly permits lenders to consider immigration status.[5] *See* 12 C.F.R. §§ 1002.5(e) (a "creditor may inquire about the permanent residency and immigration status of an applicant."), 1002.6(b)(7) (a "creditor may consider the applicant's immigration status or status as a permanent resident of the United States.").

Similarly, the FHA and Ohio FHA do not prohibit discrimination on the basis of citizenship or immigration status. The FHA prohibits discrimination because of "race, color, religion, sex, handicap, familial status, or national origin."[6] 42 U.S.C. § 3605(a). On its face, the FHA "does not prohibit discrimination on the grounds of citizenship." *Corwin v. B'Nai B'Rith Senior Citizen Hous., Inc.*, 489 F. Supp. 2d 405, 409 (D. Del. 2007) (dismissing FHA claim because "Plaintiffs do not claim discrimination based upon their national origin which is determined by their ancestry, but rather, they claim discrimination based upon their status as citizens"). In fact, Plaintiff MVFHC published a training program stating that the FHA "does not prohibit discrimination based solely on a person's citizenship status" and asking "applicants to provide documentation of their citizenship or immigration status during the screening process would not violate the Fair Housing Act." MVFHC, 21st Century Fair Housing Issues, at 59 (Jan. 2016) [hereinafter MVFHC Training], http://www.mvfairhousing.com/realtors/files/21st%20Century%20Fair%20Housing%20Issues.PDF. Because the Complaint does not allege any facts to support the conclusory allegation of discrimination based on Plaintiff Davoli-Turner's national origin, as opposed to citizenship status, her ECOA, FHA, and Ohio FHA claims should be dismissed. *See HDC,* 675 F.3d at 613.

---

[5] The CFPB explains the business reasons why: "The applicant's immigration status and ties to the community (such as employment and continued residence in the area) could have a bearing on a creditor's ability to obtain repayment. Accordingly, the creditor may consider immigration status and differentiate, for example, between a noncitizen who is a long-time resident with permanent resident status and a noncitizen who is temporarily in this country …." 15 U.S.C. § 1002.6(b)(7).

[6] The Ohio FHA is "equivalent" to the FHA and is interpreted under the same standards as the FHA. *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1047 (6th Cir. 2001).

III.     **PLAINTIFF CARLOS TURNER FAILS TO STATE A DISCRIMINATION CLAIM**

All of Plaintiff Carlos Turner's claims should be dismissed because he does not and cannot plead that U.S. Bank took any action at all—let alone a racially discriminatory action—that injured *his* statutory rights under the FHA, Ohio FHA, ECOA, or § 1981 and § 1982. The Complaint is replete with allegations about loan applications submitted by Plaintiff Davoli-Turner, appraisals ordered by U.S. Bank in connection with Plaintiff Davoli-Turner's applications, and interactions between Plaintiff Davoli-Turner and U.S. Bank employees. Compl. ¶¶ 4, 36, 44-47, 49, 51, 53, 56, 62-63. In contrast, the Complaint does not allege that Plaintiff Turner ever visited a U.S. Bank branch, that he ever spoke or corresponded with U.S. Bank employees, or that he was ever a co-applicant in connection with Plaintiff Davoli-Turner's refinance loan application, home equity loan applications, or HELOC application. The April 2022 Appraisal and May 2022 Appraisal confirm that Plaintiff Turner was not an applicant for any loan, and the only "Borrower/Applicant" was Plaintiff "Diana Davoli-Turner." *Id.*, Ex. 2, PageID 67; Ex. 3, PageID 81.

The ECOA makes it "unlawful for any creditor to discriminate against any applicant" for credit. 15 U.S.C. § 1691(a). The term "applicant" means "any person who applies to a creditor directly for an extension, renewal, or continuation of credit …." *Id.* § 1691a(b). Because Plaintiff Turner was not an "applicant" under the ECOA, he "cannot invoke the Act's protections." *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1209 (6th Cir. 1997).

Similarly, the FHA and Ohio FHA prohibit "discrimination in making available a residential real estate-related transaction." Compl. ¶¶ 96(B) (citing 42 U.S.C. § 3605), 103(B). Only an "aggrieved person," meaning a person who has "been injured by a discriminatory housing practice," may sue. 42 U.S.C. §§ 3613(a)(1), 3602(i); Ohio Rev. Code § 4112.01(A)(23). Plaintiff Turner was not an applicant in any residential real estate-related transaction. Thus, he "does not

10

allege that he was a victim of a discriminatory [housing practice], [and] he has not pleaded a cause of action under [the FHA]." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 375 (1982).[7]

Finally, § 1981 states that "[a]ll persons within jurisdiction of the United States shall have the same right … to make and enforce contracts ... as is enjoyed by white citizens." Section 1982 states that "[a]ll citizens of the United States shall have the same right… as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Plaintiff Turner fails to allege a claim under § 1981 or § 1982 because he "could not have been denied 'the same right' to make a contract" when he was not an applicant for credit. *Campbell v. Robb*, 162 F. App'x 460, 476 (6th Cir. 2006) (affirming dismissal of § 1981 and § 1982 claims).

## IV.  ALL PLAINTIFFS FAIL TO PLAUSIBLY PLEAD DISCRIMINATION CLAIMS

As explained above, Plaintiff Davoli-Turner's claims should be dismissed because she fails to plead any discrimination because of her Canadian national origin, and Plaintiff Carlos Turner's claims should be dismissed because he was not an applicant for any loan in connection with any appraisal and thus fails to plead that any action was taken against him at all. Even if that were not true, all three Plaintiffs' claims against U.S. Bank should be dismissed because the Complaint fails to plausibly allege claims of intentional disparate treatment discrimination or disparate impact.

### A.  The Complaint Does Not Support an Inference of Intentional Discrimination

Disparate treatment claims under the CRA, FHA, Ohio FHA, and ECOA can be established by pleading facts showing intentional discrimination because of a prohibited basis. *See Comcast*

---

[7] The Complaint also asserts FHA claims under 42 U.S.C. § 3604, which prohibits discrimination only in connection with the "sale or rental of a dwelling." Compl. ¶¶ 96(A), 103(A). The Turner Plaintiffs owned the home since November 2020, and the refinance, home equity, and HELOC applications had nothing to do with the "sale" of a "dwelling." Section 3604 of the FHA does not reach those types of loans relating to an already-owned home, and the § 3604 claims should be dismissed. *See Eva v. Midwest Nat'l Mortg. Bank, Inc.*, 143 F. Supp. 2d 862, 886 (N.D. Ohio 2001) (stating that § 3604 covers transactions related to acquiring a home, while § 3605 covers "providing other financial assistance for maintaining a dwelling previously acquired").

11

*Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1013 (2020) (under § 1981, "a plaintiff must initially plead … that, but for race, it would not have suffered the loss of a legally protected right"); *Hogrobrooks v. Wells Fargo Bank, N.A.*, 2020 WL 7231501, at *3 (6th Cir. June 9, 2020) (claims under § 1982 "require that the plaintiff plead racial animus"); *HGC*, 675 F. 3d at 612 (allegations of "intentional discrimination" can support an FHA claim); *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 772 (6th Cir. 2005) (ECOA claim requires plaintiff to "allege discrimination against [plaintiffs] on the basis of any protected class").

The "essential elements of a claim remain constant throughout the life of a lawsuit" and "determine what the plaintiff must plausibly allege at the outset." *Comcast*, 140 S. Ct. at 1013. To "state a claim for relief under the FHA, plaintiff must plead that (1) she was a member of a protected class; (2) she attempted to engage in a 'real estate-related transaction' with defendants and met all relevant qualifications for doing so; (3) defendants refused to transact business with plaintiff despite her qualifications; and (4) defendants continued to engage in that type of transaction with other parties with similar qualifications." *Bernard v. Fed. Nat'l Mortg. Ass'n*, 587 F. App'x 266, 272–73 (6th Cir. 2014) (alterations omitted) (quoting *Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 346 (6th Cir.1994)); *Ray v. U.S. Bank Nat'l Ass'n*, 627 F. App'x 452, 454 (6th Cir. 2015); *Wilson v. Cap. One Bank (USA)*, 2022 WL 1784822, at *2 (6th Cir. Feb. 10, 2022) (ECOA claim lacked "information to suggest that [plaintiff] was qualified to receive the credit card"). A claim based on "conclusory allegations of discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief." *HDC*, 675 F.3d at 613.

Here, the Complaint fails to plead facts showing that U.S. Bank intentionally discriminated because of Plaintiff Davoli-Turner's Canadian national origin or Plaintiff Turner's race.

12

*1. Parent Company.* U.S. Bancorp, the parent company of U.S. Bank, is a holding company that does not engage in mortgage operations, is not alleged to have engaged in any conduct at all, and should be dismissed from this action. *See United States v. Bestfoods*, 524 U.S. 51, 63 (1998).

*2. Documenting Plaintiff Davoli-Turner's Immigration Status*. The Complaint asserts that, "prior to the appraisal process," U.S. Bank allegedly "discriminated" by "asking inappropriate questions" of "plaintiff Diana Davoli-Turner regarding her citizenship status" and requesting "her green card as evidence of her Permanent Resident status." Compl. ¶ 4; *see also id.* ¶¶ 51-53. But U.S. Bank's request for documentation of Plaintiff Davoli-Turner's permanent residency status when evaluating her home equity loan application conforms to lending requirements set by HUD and guidelines set by the GSEs. *See supra* note 3. Obtaining such documentation is a standard requirement for lending to non-citizens because a borrower's "continued residence in the area" bears on the "creditor's ability to obtain repayment," and requesting Plaintiff-Davoli Turner's green card was expressly permitted by the ECOA. 12 C.F.R. § 1002.5(6)(b)(7), (e). Plaintiff MVFHC states that asking "applicants to provide documentation of their citizenship or immigration status during the screening process would not violate the Fair Housing Act." MVFHC Training at 59. As between this "obvious alternative explanation" for U.S. Bank's conduct and "the purposeful, invidious discrimination [plaintiff] asks [the Court] to infer, discrimination is not a plausible conclusion." *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

*3. Denial of Refinance and Home Equity Loans*. U.S. Bank allegedly discriminated when it "denied" the "refinance loan and home equity loan applications." Compl. ¶ 8. Plaintiffs, however, admit the loans were denied for the non-discriminatory reason that Plaintiff Davoli-Turner did not qualify for credit: The refinance application was "denied after a hard credit check" due to credit report "delinquencies," *id.* ¶ 45; the first home equity application was subject to

13

"denial" after "a review" of "credit history," *id.* ¶¶ 46, 48; and the second home equity application was "denied" after a "second hard credit check" based on a "history of delinquency," *id.* ¶¶ 49-50.[8] The Complaint cannot raise an inference that the denials were due to discrimination because it fails to allege the Turner Plaintiffs were "qualified for a loan." *Bernard*, F. App'x at 272; *Ray*, 627 F. App'x at 454 (affirming dismissal of FHA claim for denied loan modification with no "facts in the complaint actually demonstrating [plaintiffs] qualifications"). The Complaint also fails to plead discrimination because it does not allege that U.S. Bank approved refinance or home equity applications of non-minority borrowers with credit delinquencies similar to Plaintiff Davoli-Turner's credit delinquencies. *See Bernard*, F. App'x at 272 (affirming dismissal of FHA claim that had not "alleged that defendants offered modifications to those outside of the protected class while denying them to her"); *Ray*, 627 F. App'x at 454 (FHA "claim fails because the[] complaint makes no allegation that U.S. Bank continued to engage in loan-modification reviews with other similarly qualified individuals outside of their race"). In fact, though Plaintiff MVFHC "conducted extensive investigations" for "over a year," the Complaint says nothing at all about any other U.S. Bank borrowers. Compl. ¶ 90. No facts establish that the refinance or home equity loans were denied because of Plaintiff Davoli-Turner's Canadian national origin or Plaintiff Turner's race.

**4. "Steering" to a Home Equity Loan and HELOC**. The Complaint alleges that "Plaintiff Davoli-Turner was steered toward a home equity loan." *Id.* ¶ 46. The Complaint admits that she was offered a home equity loan only after the refinance application was "denied after a hard credit

---

[8] The Complaint confusingly asserts in passing that U.S. Bank allegedly "discriminated" by "relying on the discriminatory appraisal to deny Plaintiffs a refinance loan." Compl. ¶ 3. Yet, the facts alleged elsewhere in the Complaint confirm that the refinance application was denied ***before any appraisal was ordered***. *See id.* ¶ 54 (***after*** denial of refinance and home equity applications, "yet another application" was made for "a Home Equity Line of Credit" and "U.S. Bank, ***for the first time***, ordered an appraisal of the Subject Property" (emphasis added)). The "complaint at issue here is self-contradictory," and the allegation that the refinance was denied due to an appraisal is not plausible. *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 507 (6th Cir. 2015).

check" due to "delinquencies." *Id.* ¶ 45. The Complaint also alleges that, after the home equity applications were denied due to delinquencies, Plaintiff Davoli-Turner was "further steered toward a different type of financing with U.S. Bank, the HELOC." *Id.* ¶ 84. Plaintiffs do not allege any facts that even suggest, much less establish, that Plaintiff Davoli-Turner was offered home equity loans and the HELOC because of her Canadian national origin. Rather than supporting an inference of "steering" because of her Canadian national origin, the Complaint establishes that, each time an application was denied based on credit delinquencies, U.S. Bank continued to work with Plaintiff Davoli-Turner to achieve her goal of obtaining mortgage credit to "pay off debts" by offering successive possible options for which she might qualify until the HELOC she ultimately received was approved in June 2022. *Id.* ¶ 39. The allegations fall far short of pleading discriminatory animus in offering home mortgage loan options.[9]

Not only do the allegations confirm U.S. Bank's commitment to customer service, but Plaintiff Davoli-Turner's HELOC was a beneficial option for accessing equity in her home to "pay off debts" during a period of spiking interest rates. *Id.* She obtained the existing mortgage to purchase the Subject Property in "November 2020 … when interest rates were at a historic low." *Id.* ¶ 38. By the time she contacted U.S. Bank in "March or April 2022," national average rates for a 30-year fixed rate loan had risen dramatically. *Id.* ¶ 43; *see supra* note 2. Even if Plaintiff Davoli-Turner could have qualified for a cash-out refinance loan (she could not), it would not have been financially beneficial to refinance the low-rate mortgage she obtained in November 2020 in the

---

[9] The Complaint makes one conclusory allegation of "a pattern of discriminatorily … offering unfavorable loan terms to minorities." Compl. ¶ 10. "Pattern-or-practice" claims are available to the government and in class actions, but any such claim fails here because "the pattern-or-practice method of proving discrimination is not available to individual plaintiffs." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004). The Complaint identifies no other borrower outcomes, and the claim cannot stand on "mere occurrence of isolated or 'accidental' or sporadic" acts. *United States v. Matusoff Rental Co.*, 494 F. Supp. 2d 740, 747 (S.D. Ohio 2007).

higher interest rate environment of Spring 2022 when she contacted U.S. Bank. Consistent with Plaintiff Davoli-Turner's circumstances, rising interest rates in 2022 "caught up with cash-out refinance activities" and "the total number of HELOC originations … increased" industry-wide. CFPB, Data Point: 2022 Mortgage Market Activity and Trends, at 5, 36 (Sept. 2023), https://files.consumerfinance.gov/f/documents/cfpb_data-point-mortgage-market-activity-trends_report_2023-09.pdf. The CFPB explained this shift was due to "consumers using HELOCs instead of cash-out refinance loans in a high interest rate environment." *Id.* at 5.

*5. Supposedly Refusing to Reconsider the May 2022 Appraisal*. After receiving the May 2022 Appraisal, Plaintiff Davoli-Turner "questioned" U.S. Bank and "requested reconsideration." Comp. ¶ 62. The Complaint claims that "U.S. Bank stated there would be no reconsideration" and that U.S. Bank allegedly "refus[ed] to meaningfully investigate or respond to the Plaintiffs' reconsideration request of the appraisal." *Id.* ¶¶ 63, 83. The Court should disregard these conclusory allegations in resolving this Motion because materials attached to the pleadings and central to the claims confirm the allegations are false and that U.S. Bank did grant Plaintiff Davoli-Turner's request for reconsideration of the appraisal. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Seaton*, 728 F.3d at 596.

The initial version of the May 2022 Appraisal, attached to the Complaint as Exhibit 3, was signed by the appraiser, Mr. Henley, on "05/18/2022." Compl., Ex. 3, PageID 86. When Plaintiff Davoli-Turner complained of "errors," U.S. Bank granted her request for reconsideration of the appraisal and "asked" Mr. Henley "to look at 3 more sales" and reconsider his opinion of value. Ex. A, at 10. The reconsideration review Mr. Henley performed at U.S. Bank's request is documented in the version of the May 2022 Appraisal dated "05/25/2022." *Id.* at 6. Though the opinion of value did not change, U.S. Bank followed all appropriate and legally permissible steps

16

for obtaining reconsideration of the independent appraisal performed by Mr. Henley. Indeed, U.S. Bank is prohibited by federal appraisal independence laws from influencing the appraiser's opinion of value, but it took all appropriate steps to seek reconsideration of the May 2022 Appraisal. *See* 15 U.S.C. § 1639e(a) ("It shall be unlawful, in extending credit or in providing any services for a consumer credit transaction secured by the principal dwelling of the consumer, to engage in any act or practice that violates appraisal independence."); *id.* § 1639e(b)(1) (prohibiting lenders from "any act that compensates coerces, extorts, colludes, instructs, induces, bribes, or intimidates a person … conducting or involved in an appraisal, or attempts [to do so] for the purpose of causing the appraised value assigned, under the appraisal, to the property to be based on any factor other than the independent judgment of the appraiser . . . [or] seeking to influence an appraiser or otherwise to encourage a targeted value in order to facilitate the making or pricing of the transaction"). Conclusory allegations that U.S. Bank refused to reconsider the appraisal are flatly contradicted by the controlling materials attached to the pleadings, and the Complaint thus fails to plead intentional discrimination based on this alleged conduct. *Clark*, 617 F. App'x at 507.

     ***6. Relying on an Allegedly Discriminatory Appraisal***. Plaintiffs contend that U.S. Bank violated anti-discrimination laws "by relying on Defendant Henley's discriminatory appraisal to deny the Plaintiffs' loan despite the fact that it knew or should have known that the appraisal was racially discriminatory." Compl. ¶ 82. To start, these assertions fail to establish a claim of intentional discrimination because the Complaint confirms that U.S. Bank did ***not*** deny any application due to the May 2022 Appraisal. Rather, as explained above, the Complaint alleges that Plaintiff Davoli-Turner's earlier refinance application and home equity applications were denied based on credit delinquencies ***before*** any appraisal was ordered. *See supra* at 13-14. Subsequently, Plaintiff Davoli-Turner completed an "application" for a "Home Equity Line of Credit," and "U.S.

Bank, for the first time, ordered an appraisal." Compl. ¶ 54. After the May 2022 Appraisal and reconsideration review, the HELOC was approved. *See id.* ¶ 64. The Complaint is devoid of facts showing that U.S. Bank denied any application following or in reliance on the May 2022 Appraisal.

Further, the Complaint contains no allegations supporting an inference that U.S. Bank "knew or should have known" that the May 2022 Appraisal was discriminatory (to be clear, U.S. Bank does not concede that the May 2022 Appraisal was discriminatory). On its face, the May 2022 Appraisal contains no overtly discriminatory statements that directly establish bias or discrimination on the basis of Canadian national origin or race. Indeed, while alleging the May 2022 Appraisal contained five asserted "errors, omissions, and inaccuracies," such as "square footage inaccuracies," the Complaint fails to identify any aspect of the May 2022 Appraisal as expressly discriminatory or biased. *Id.* ¶ 61. The only fact pled is that the May 2022 Appraisal allegedly "came with an indication of bias because of the Turner-Henley conversations that Plaintiff Davoli-Turner reported to U.S. Bank." *Id.* ¶ 63. But elsewhere, the Complaint explains that the referenced "conversation" involved Mr. Henley supposedly "question[ing] why the Turners sent their children to a private Catholic school for athletics rather than Springboro High School." *Id.* ¶ 58. Even assuming Plaintiff Davoli-Turner actually did "report" this "conversation" to U.S. Bank, the alleged comments relating to "private Catholic school" versus "Springboro High School" in no way indicate bias or discrimination because of race or Canadian national origin.

It is alleged that the May 2022 Appraisal valued the Subject Property at $470,000, the external April 2022 Appraisal valued it at $485,000, the March 2022 Appraisal ordered by another lender valued it at $520,000, and the May 2023 Appraisal conducted one year later for interested person Plaintiff Davoli-Turner valued it at $655,000.[10] Appraisals offer an independent estimate

---

[10] Four different appraisals returning four different opinions of value do not raise an inference that the differences in value are because of Canadian national origin or race. Indeed, in his initial report

that a property's market value supports the amount of financing in the event a borrower becomes unable to repay the loan, and the Complaint does not—and cannot—allege that U.S. Bank determined or influenced any appraisal value. *See* 15 U.S.C. § 1639e(a), (b)(1). The Turner Plaintiffs allege that U.S. Bank did not "send[] it to a new appraiser for a second opinion," Compl. ¶ 83, but this allegation fails to raise an inference of discrimination because the Complaint does not identify any instance in which U.S. Bank sought a new opinion from a second appraiser when a first appraisal for a non-Hispanic white customer came back low. *See Bernard*, F. App'x at 272; *Ray*, 627 F. App'x at 454. The claim fails because it does not allege "the defendant would have responded differently but for the plaintiff's race." *Comcast*, 140 S. Ct. at 1009.

### B.    The Complaint Fails to Plead an Unintentional Disparate Impact

Disparate impact claims of discrimination are cognizable under the FHA, but "to protect potential defendants against abusive disparate-impact claims," the Supreme Court directs lower courts "at the pleading stage" to examine with care whether a plaintiff has made out a prima facie case of disparate impact. *Tex. Dep't Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2523-24 (2015). To plausibly plead disparate impact, a "plaintiff is required to show that the challenged practices have a 'disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale.'" *Price v. Country Brook Homeowners Ass'n, Inc.*, 2021 WL 5577407, at *2 (S.D. Ohio Nov. 30, 2021) (quoting *Inclusive Cmtys.*, 135 S. Ct. at 2513). At the pleading stage, "the plaintiff must satisfy" a "robust causality requirement" by "point[ing] to a specific policy of the defendant and provid[ing] evidence showing that the policy causes the disparity." *Id.* (quoting *Inclusive Cmtys.*, 135 S. Ct. at 2523).

---

and the post-reconsideration report, Mr. Henley addressed five out of six comparable sales used in the March 2022 Appraisal and all comparable sales used in the external April 2022 Appraisal. *Compare* Compl., Ex. 1, PageID 32, 37, *and* Compl., Ex. 2, PageID 67, *with* Ex. A, at 2, 7, 10.

Here, the Complaint fails to allege facts to support any "essential element" of disparate impact. *Comcast*, 140 S. Ct. at 1013. There is no allegation of any disparity or disproportionate outcome adverse to Black or Canadian borrowers—indeed, the Complaint identifies no other U.S. Bank borrowers, even though Plaintiff MVFHC "conducted extensive investigations" for "over a year." Compl. ¶ 90. Without alleging a disparity, the Complaint does not and cannot meet the "robust causality requirement" of pleading facts that link a disparity to a U.S. Bank policy. The Complaint fails to plead any elements of disparate impact, and any such claim should be dismissed.

## V.   THE STATE LAW NEGLIGENCE CLAIM SHOULD BE DISMISSED

The Complaint asserts a bare-bones common law claim for "negligent hiring and training" based on conclusions of "failing to hire, properly train, and supervise employees, agents, and contractors with respect to appraisals and residential lending transactions." *Id.* ¶ 123. To prevail, a plaintiff must plead: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause." *Douglass v. Salem Cmty. Hosp.*, 2003-Ohio-4006, ¶ 51, 153 Ohio App. 3d 350, 366, 794 N.E.2d 107, 119-20 (omitting citations and quotations.) Plaintiffs do not even identify a U.S. Bank employee who allegedly was improperly hired, trained, or supervised, and thus fail to plead the most basic element of "the existence of an employment relationship." *Bricker v. R&A Pizza,* 804 F. Supp. 2d 615, 622 (S.D. Ohio 2011). The state law claim fails federal pleading standards and, like all other claims, and should be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, all claims asserted by all Plaintiffs against U.S. Bank should be dismissed with prejudice.

Dated: February 6, 2024                        Respectfully submitted,

                                               */s/ Timothy C. Sullivan*
                                               Timothy C. Sullivan (0031069), Trial Attorney
                                               Taft Stettinius & Hollister LLP
                                               425 Walnut Street, Suite 1800
                                               Cincinnati, Ohio 45202
                                               Phone: 513.357-9382
                                               sullivan@taftlaw.com

                                               */s/ Olivia Kelman*
                                               Olivia Kelman (admitted *pro hac vice*)
                                               K&L Gates LLP
                                               200 South Biscayne Boulevard, Suite 3900
                                               Miami, Florida 33131
                                               Phone: 305.539.3382
                                               olivia.kelman@klgates.com

                                               **Counsel for U.S. Bancorp**


                            **CERTIFICATE OF SERVICE**

       I hereby certify that on February 6, 2024, I filed a copy of the foregoing electronically.

Notice of this filing will be sent to all parties in this case by operation of the Court's EM/ECF

System. Parties may access this filing through the Court's system.

                                               */s/ Timothy C. Sullivan*