IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARLOS TURNER, et al.

      Plaintiffs,

v.

HENLEY APPRAISALS, LLC,
et al.,

      Defendants.

:

:

:

Case No. 3:23-cv-371

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART THE MOTION TO DISMISS FILED BY DEFENDANTS U.S.
BANCORP, INC., AND U.S. BANK NATIONAL ASSOCIATION (DOC.
#16) AND SUSTAINING THE MOTION TO DISMISS FILED BY
DEFENDANTS KEVIN D. HENLEY AND HENLEY APPRAISALS (DOC.
#28)

---

Plaintiffs Carlos Turner, Diana Davoli Turner (the "Turners"), and the Miami

Valley Fair Housing Center, Inc., (collectively, "Plaintiffs") filed this lawsuit against

Henley Appraisals, LLC, Kevin D. Henley ("Henley"),[1] U.S. Bancorp, Inc., and U.S.

Bank National Association ("U.S. Bank") (collectively, "Defendants"). Doc. 9.

Plaintiffs contend that Defendants discriminated against the Turners by artificially

---

[1] Plaintiffs allege that Kevin D. Henley is the owner of Henley Appraisals, LLC. Doc. #9,
PageID #224. Unless the Court specifically mentions otherwise, any references to "Henley"
concerns allegations, arguments, or analyze common to both Kevin D. Henley and Henley
Appraisals, LLC.

depreciating the appraisal value of their house. *Id.* at PageID #239–40. Plaintiffs are seeking relief under the Fair Housing Act, the Civil Rights Act of 1866, the Ohio Fair Housing Act, and the Equal Credit Opportunity Act, as well as under state law theories of both negligent misrepresentation and negligent hiring, training, and supervision. *Id.* at PageID #244–49.

Pending before the Court are two separate motions, both filed by Defendants. U.S. Bank filed a Motion to Dismiss for Failure to State a Claim. Doc. #16. Plaintiffs filed a response in opposition, Doc. #22, and U.S. Bank filed a reply in support of their motion. Doc. #26. Henley also filed a separate Motion to Dismiss for Failure to State a Claim. Doc. #26. Likewise, Plaintiffs filed a response to this motion, Doc. #29, and Henley filed a reply. Doc. #30. Both motions are ripe for review.

For the reasons set forth below, U.S. Bank's Motion to Dismiss, Doc. #16, is SUSTAINED IN PART and OVERRULED IN PART, and Henley's Motion to Dismiss, Doc. #28, is SUSTAINED.

I. **Legal Standard**

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

2

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the [opposing party] has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on the motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Treesh*, 487 F.3d at 476.

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief." *Id.* at 679.

To survive to the discovery phase, a plaintiff need only establish that the pleadings be plausible, not probable. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011). "Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." *Id.*

## II. Procedural and Factual Background

Plaintiffs Diana Davoli Turner and Carlos Turner are a married couple who reside in a house in Springboro, Ohio. Carlos Turner is a Black, African American male and Diana Davoli Turner is a Canadian citizen with permanent residency in the United States. Doc. #9, PageID #218. Diana Davoli Turner purchased the house in November 2020, and she, along with Carlos Turner, is a guarantor and mortgagor on the applicable mortgage covering the property. *Id.* at PageID #226.

When the Turner Plaintiffs purchased the property in November 2020, the house had an unfinished basement which the Turners intended to, and did, renovate at a cost of $30,000. *Id.* at PageID #226–27. Since mortgage rates were generally low at the time, the Turners began exploring the possibility of refinancing their existing mortgage. *Id.* at PageID #227. They received an appraisal from their lender

4

in March 2022, placing the value of their home at $520,000, but did not lock in the rate. *Id*. at PageID #227–28.

When rates began to rise around the country, the Turners explored other options to refinance the home. One such option was U.S. Bank, which had advertised opportunities to refinance loans at 4%. *Id.* at PageID #228. Diana Davoli Turner began working with U.S. Bank, hoping to "cash out"[2] approximately $60,000. *Id.* The Turners' application was denied after a hard credit check,[3] to the surprise of the couple. *Id.* Diana Davoli Turner visited a U.S. Bank branch in person and spoke with an employee named Stephanie. *Id.* This employee provided a loan disclosure form for a home equity loan of $55,000 at 5.9% interest and told Diana Davoli Turner that the approval of the home equity loan would not be an issue. *Id.* The resulting application was also denied. *Id.* at PageID #229.

---

[2] Plaintiffs employ the term "cash out" to describe their plan to refinance the house. Doc. #9, PageID #228. In essence, if the Turners were successful in refinancing the house, they would be able to receive a payment commensurate with the equity they had built both by paying down the original mortgage and by increasing the value of the house. *See Refinancing a Mortgage: Is it Right for You?*, U.S. BANK, https://www.usbank.com/financialiq/manage-your-household/home-ownership/what-is-refinancing-a-mortgage.html (June 17, 2024).

[3] A "hard credit check" occurs when lenders check a potential borrower's credit report. This type of check will typically appear on the credit report itself and multiple credit checks within a short period of time can negatively affect an individual's credit score. In comparison, a "soft credit check" occurs when an individual checks their own credit or when a company prequalifies an individual for a loan, but no application is submitted. Soft credit checks typically do not affect an individual's credit score. *See* Ben Luthi, *What Is a Hard Inquiry and How Does It Affect Credit?*, Experian (Nov. 8, 2024), https://www.experian.com/blogs/ask-experian/what-is-a-hard-inquiry

After further communications with the bank, the Turners applied for a $15,000 home equity loan at a rate of 6.25%. *Id.* While evaluating the application, U.S. Bank performed a second hard credit check on the Turners, breaking a promise made to Diana Davoli-Turner that their credit report would not be further affected by the process. *Id.* Ultimately, this $15,000 loan was also denied. *Id.* The Turners were given two reasons for the denial: (1) denial based on collateral; and (2) denial based on history of delinquency. *Id.*

The Turners continued to work with U.S. Bank and reached out to Stephanie's supervisor, Bruce. *Id.* at PageID #230. Neither Stephanie nor Bruce could confirm the existence of an internal company policy, but after conducting research though the bank's website, the Turners learned that the bank's customary policy was that they would be willing to loan up to 80% of a home's value through refinancing (an 80% Loan-to-value Ratio or "LtV"). *Id.* At any rate, U.S. Bank claimed they could not loan up to an 80% LtV to the Turners because of Diana Davoli Turner's status as a Canadian citizen. *Id.* As the Turners continued their application process, U.S. Bank requested a copy of Diana Davoli Turner's green card as proof of her Permanent Resident status. *Id.*

Finally, the Turners were approved for a Home Equity Line of Credit ("HELOC") in April 2022. *Id.* As a part of the final approval, U.S. Bank ordered an appraisal of the house, even though the house had been appraised 27 days earlier by a different

6

lender. *Id.* at PageID #230–31. The second appraisal consisted of an external, drive-by viewing of the property and was conducted by Residential Equity Specialists. *Id.* at PageID #231. Because the appraisal viewed only the exterior of the house, it did not consider any efforts the Turners had expended remodeling the interior of the house. *Id.* This second appraisal came back at $485,000. *Id.*

When Diana Davoli-Turner questioned why the interior was not considered in this appraisal, U.S. Bank determined they would conduct a third appraisal with a new appraiser who would consider the interior as well. *Id.* This new appraisal was completed by Kevin Henley of Henley Appraisals, LLC. *Id.* at PageID #232. When the appraisal was finished, Henley valued the property at $470,000. *Id.* at PageID #233. The Turners, surprised that this appraisal came back lower, asked U.S. Bank to disregard this third appraisal. *Id.* U.S. Bank responded by having Henley reconsider the appraisal, a process in which Henley gathered more information about other homes in the area. *Id.* at PageID #234. Ultimately Henley stood by his appraisal and U.S. Bank stated that the appraisal would be final. *Id.* In June 2022, understanding that they had limited options and seeing that interest rates were continuing to rise, the Turners accepted a HELOC with a credit limit of $34,363 for a 30-year term and a variable interest rate. *Id.*

Believing that they had been unlawfully discriminated against, the Turners contacted the Miami Valley Fair Housing Center ("MVFHC") which began to

investigate the matter. *Id.* at PageID #237. MVFHC undertook a "whitewashed" appraisal, in which the Turners removed all markers of Black or Canadian identity in the home, including family photographs. *Id.* at PageID #237−38. This whitewashed appraisal, the fourth appraisal on the home in little more than a year, was completed in May 2023, by an independent appraiser, Clark Davis. *Id.* at PageID #238, 347. This fourth appraisal came back with a valuation of $655,000. *Id.*

Plaintiffs filed this lawsuit on February 26, 2024, bringing six claims: (1) violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, brought by all three Plaintiffs against all Defendants ("Count One"); (2) violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and 1988(a), brought by Plaintiff Carlos Turner against all Defendants ("Count Two"); (3) violation of the Ohio Fair Housing Act, Ohio Rev. Code § 4112.01, *et seq.*, brought by all Plaintiffs against all Defendants ("Count Three"); (4) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, brought by the Turners against U.S. Bank ("Count Four"); (5) Negligent Misrepresentation, brought by the Turners against Henley ("Count Five"); and (6) Negligent Hiring, Training, and Supervision, brought by the Turners against all Defendants ("Count Six"). Doc. #9, PageID #244−49.

## III.    Analysis

Under federal law, venue is proper in the district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of

property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Therefore, venue is proper in the Southern District of Ohio as the events are alleged to have occurred in Springboro, Ohio, a city within the Southern District. To determine the precise location within the Southern District in which the case properly belongs, one must turn to the Local Rules.

Unlike the federal venue analysis, venue within the Southern District of Ohio is based primarily on the residency of the defendants, permitting venue based on alleged events *only if* no defendants are residents of the Southern District. S.D. Ohio Civ. R. 82.1(e) (outlining venue determination based on events or omissions "[i]f no defendant is a resident of this District"). The Amended Complaint provides no allegations as to the residency of any of the named Defendants. If the Court were to assume, then, that no Defendants are a resident of the Southern District, only then would the venue determination hinge on the events described in the Amended Complaint. However, it appears that the events occurred in Warren County, Ohio. The Local Rules specify that actions arising from Warren County, Ohio, are to be served by the Western Division at Cincinnati, rather than Dayton. S.D. Ohio Civ. R. 82.1(b). But, as neither party has raised this issue, the Court considers the issue waived under Fed. R. Civ. P. 12(h).

A full analysis of pending claims always requires a court to wade through complex webs of facts and allegations. This is even more true here where there are

9

multiple claims brought by multiple plaintiffs against multiple defendants. In the pursuit of efficiency and clarity, it is therefore prudent to untangle this web by looking at the conduct which lays at the hub of the case before analyzing the separate claims. These allegations can broadly be separated into two discrete series of events, both of which will need to be addressed: (1) the appraisal process itself and the value that it concluded the house was worth; and (2) the decision-making process that U.S. Bank employed when it determined whether, and how, to extend an offer to refinance.

Plaintiffs allege that Henley performed the appraisal of the house at the invitation of U.S. Bank and that U.S. Bank endorsed the appraisal, including any discriminatory practices that occurred, after learning of the allegations. Doc. #9, PageID #241–42. Plaintiffs do not allege, however, that Henley had anything to do with the decision process that U.S. Bank employed to ultimately determine the Turners' eligibility to refinance. While Defendants refute many of these allegations, at this stage the Court must view the facts in the light most favorable to Plaintiffs. Therefore, to decide the pending motions, the Court will consider both the appraisal process and the decision-making process to determine whether the claims against U.S. Bank may proceed, but the Court will only consider the events of the appraisal process itself in determining whether the claims against Henley may proceed.

10

## A.    Conclusory v. Factual Allegations

At this stage in the proceeding, the Court is bound to view the alleged facts in the light most favorable to Plaintiffs. Even so, this standard does not apply to conclusory allegations. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). However, delineating conclusory allegations from factual allegations is anything but an easy task. Black's Law Dictionary defines conclusory as "Expressing a factual inference without stating the underlying facts on which the inference is based." *Conclusory*, BLACK'S LAW DICTIONARY (11th ed. 2019). Such a relatively short definition does little to provide clarity to the issue, so the Court must turn to caselaw to find guidance.

Perhaps the most apparent demonstration of the fact-conclusion pleading requirement is *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In *Twombly*, the plaintiff, William Twombly, alleged that four telephone companies had worked together by agreeing not to compete against each other in violation of federal antitrust laws. *Id.* at 551. At first glance, one might argue that he provided the required factual allegations to get past a motion to dismiss. After all, Mr. Twombly identified the telephone companies involved and the business practices that he believed to be in violation of the law. However, the Court determined his allegations were inadequate conclusory statements. *Id.* at 556. Noting that Mr. Twombly had not provided any allegations of express communications between the telephone

11

companies regarding a tacit agreement not to compete, the Court dismissed his complaint and the allegations that the companies conspired with each other in violation of the Sherman Antitrust Act. *Id.* at 564.

The Sixth Circuit has addressed conclusory allegations within the context of loan discrimination. In *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013), the plaintiff brought discrimination claims in relation to a loan he had applied for. *Id.* at 503. The court recognized that plaintiff had alleged his membership in a protected class, and that his loan application was denied. He alleged that the denial was on account of the protected class membership. *Id.* at 505. Despite these allegations, Judge Sutton, writing for the court, discussed how plaintiff's discrimination claims compared with the obvious alternate explanation: that the bank determined the loan was a poor business decision.[4] *Id.* Ultimately, the court found that dismissal was warranted because the plaintiff failed to plead facts which would plausibly support the discrimination claim. *Id.* at 506.

Even with this guidance by higher courts, one must admit that the line between conclusory allegations and factual allegations can appear murky in certain

---

[4] "Where, as here, the complaint alleges facts that are merely consistent with liability (i.e., being [a member of a protected class] and being denied a loan extension) as opposed to facts that demonstrate discriminatory intent (i.e., disparate impact or direct evidence), the existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013).

scenarios. For many years, scholars have identified difficulties in the factual allegation pleading standard. *See* Robert G. Bone, *Plausibility Pleading Revisited and Revised: A Comment on* Ashcroft v. Iqbal, 85 NOTRE DAME L. REV. 849, 867 (2010) (arguing that attempting to draw a difference between factual allegations and conclusory allegations is nearly impossible); Adam N. Steinman, *The Pleading Problem*, 62 STAN. L. REV. 1293, 1318 (2010) (warning of an "endless cascade of inquiry" that would follow if allegations may not draw conclusions based on other allegations).

More recent writings have attempted to study the precise meaning of the term "conclusory" in an attempt to provide helpful guardrails to both judges and practitioners. *See* Donald J. Kochan, *While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance*, 73 U. PITT. L. REV. 215 (2011) (undertaking a comprehensive study of the use of "conclusory" in dictionaries and court opinions); Howard M. Erichson, *What is the Difference Between a Conclusion and a Fact?*, 41 Cardozo L. Rev. 899 (2020) (attempting to define the conclusion-fact distinction by categorizing cases). Despite these attempts, the difference remains difficult to define, and many are left to describe it with the famous quote by Justice Potter Stewart: "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197 (Stewart, J., concurring) (1964).

13

Plaintiffs' Amended Complaint contains a number of proper factual allegations.

For example:

> 61. After extensive discussions, Plaintiff Davoli-Turner texted a U.S. Bank loan officer named Stephanie. Plaintiff Davoli-Turner also emailed Stephanie's supervisor named Bruce. These communications were prompted by a prior verbal conversation with U.S. Bank that they would be unable to do up to 80% Loan-to-Value Ratio (LtV) because of Plaintiff Davoli-Turner's status as a Canadian.
>
> . . .
>
> 63. The MVFHC investigation demonstrated that 80% LtV for loans is the standard at U.S. Bank so long as you are from the United States, unlike Plaintiff Davoli-Turner, and not a Black, African-American male, unlike Plaintiff Turner.
>
> . . .
>
> 104. Plaintiffs made no significant improvements in their home in the interim, and although median home prices had increased, the movement from Defendant Henley's appraisal of $470,000 to the Whitewashed Appraisal of $655,000 represented a 39.4% increase in value, which far exceeds the expected value increase on an annual basis in the Springboro housing market.

Doc. #9, PageID #230, 239. These allegations specify particular facts that can form the basis of claims. They are verifiable and therefore able to be refuted by Defendants with future evidentiary productions. These types of allegations are the precise allegations which are to be presumed true for the purpose of deciding a motion to dismiss.

However, the Amended Complaint also contains a significant number of conclusions based on speculation rather than fact. These allegations implicitly ask the Court to draw unreasonable inferences to support the stated conclusions. For example:

14

> 73. As explained herein, the Henley Defendants' undervaluation of the Turner Plaintiffs' home reflected Defendant Henley's belief that, because Plaintiff Turner is Black, and Plaintiff Davoli-Turner is not a U.S. citizen, but rather from Canada, that they did not belong in Springboro, a predominantly white city made up primarily of affluent United States residents.
>
> . . .
>
> 86. The Henley Defendants intentionally discriminated against the Turner Plaintiffs in the provision of their appraisal services because of Plaintiff Turner's race and Plaintiff Davoli-Turner's national origin.

Doc. #9, PageID #232, 236. These allegations do nothing more than state the conclusions that Plaintiffs urge the Court to adopt. These conclusions do not receive the presumption of truth that factual allegations receive and, therefore, must be disregarded when deciding a motion to dismiss.

### B. The Claims against Henley

Plaintiffs bring five claims against Henley, including violations of the FHA, OFHA, the Civil Rights Act of 1866, as well as common law claims for negligent misrepresentation and negligent hiring, training, and supervision.

Plaintiffs allege that Henley's appraisal was unlawfully discriminatory. Specifically, they allege that Henley knew that they were members of protected classes because of personal interactions. Doc. #9, PageID #232, 240. They also allege that the house contained family photographs and "markers of Black and Canadian identify" from which Henley would have known that the Turners were

15

members of protected classes.[5] *Id.* at PageID #238, 241. They also allege that, with the knowledge of Plaintiffs' protected status and because of that status, Henley arbitrarily and unjustifiably performed the appraisal in a manner which concluded in a valuation unreasonably low. This included intentionally misrepresenting the square footage of the house, selecting ill-suited comparison homes, and discounting the recently finished basement. *Id.* at PageID #232–33, 239–40.

In his response, Henley challenges the contention that he ever interacted with the Turners or had any knowledge of their membership in protected classes. Doc. #28, PageID #536. He also states that his appraisal was conducted in accordance with his licensure and experience and adhered to uniform appraisal standards. *Id.*

Plaintiff Diana Davoli Turner's claims against Henley are reminiscent of the allegations in *Twombly* and *Flagstar Bank* and are similarly insufficient to defeat a motion to dismiss. Plaintiff alleges that Henley knew that she was Canadian and discriminated against her because of that. Taking as true that Henley spoke with the Turners and was aware of their membership in protected classes, Plaintiffs still fail to plead a claim that Henley discriminated against them with that knowledge.

---

[5] Plaintiffs do not specifically allege that the house contained "markers of Black and Canadian identity" at the time that Henley appraised the house. Instead, they only allege that markers were removed prior to the whitewashed appraisal conducted the year after the Henley appraisal. Doc. #9, PageID #238. However, it appears plausible to assume that the house also contained these markers when the Henley appraisal took place.

Additionally, while the Henley appraisal resulted in a valuation $185,000 lower than the one conducted a year later, it was only $15,000 lower than the second appraisal and $50,000 lower than the first appraisal conducted by a different bank. Although Plaintiffs conclude that this must mean that the valuation is unreasonable, they lack sufficient factual allegations to adequately plead this claim.

Plaintiffs here include no such allegations about similarly situated homeowners who were also appraised by Henley. While there is no requirement that Plaintiffs must provide allegations that detail disparate impact or direct evidence of the discrimination, the Court is not required to blindly ignore the obvious alternative theory: that Henley honestly thought the property was worth the amount that he appraised it for. *See supra* note 3. Merely stating that Henley discriminated against the Turners, is insufficient as a matter of law under Rule 8(a).

Plaintiff Carlos Turner's claims against Henley fare no better. Aside from the claims brought under the FHA and the OFHA, Carlos Turner also alleges violations of the Civil Rights Act of 1866. Doc. #9, PageID #245–46. These claims all share the same alleged basis as the claims of Diana Davoli Turner. The only difference, in fact, between the claims is that those by Diana Davoli Turner allege discrimination based on national origin while the claims brought by Carlos Turner allege discrimination based on race. In any event, the Amended Complaint similarly lacks

17

sufficient factual allegations to support the conclusory allegations that Carlos Turner was the recipient of discrimination.

While an advocacy organization such as MVFHC may have standing to pursue cases alongside or in lieu of named individuals, these claims still require the same factual, not conclusory, allegations that are required of individuals under Rule 8(a). *See Miami Valley Fair Hous. Ctr. v. Connor Grp.*, 805 F. Supp. 2d 396, 403 (S.D. Ohio 2011). As stated above, the Amended Complaint fails to set forth these factual allegations, and the portions of the complaint stating that MVFHC investigated the incident do not rectify the pleading inadequacies.

Plaintiffs' common law claims against Henley are also based on the alleged discriminatory practices. Doc. #9, PageID #248–49. They allege that Henley claimed to be providing a nondiscriminatory appraisal and, as the appraisal was in fact discriminatory, this representation was false. *Id.* This claim, however, relies on the allegation that the appraisal is indeed discriminatory. As explained above, Plaintiffs have failed to make this requisite allegation and thus the claim that Henley misrepresented his actions must also fail as a matter of law.

Likewise, the claim of negligent hiring, training, and supervision against Henley depends on the underlying allegations of discrimination. Without the factual foundation for these allegations, this claim also fails. Therefore, the Motion to

Dismiss filed by Henley, Doc. #28, is SUSTAINED and all claims against Henley Appraisals, LLC and Kevin D. Henley are DISMISSED.

### C.    The Claims Against U.S. Bancorp and U.S. Bank National Association

In their motion, U.S. Bank advocates for the dismissal of U.S. Bancorp under the theory that it is a holding company and is not alleged to have engaged in any conduct relevant to this lawsuit. *See United States v. Bestfoods*, 524 U.S. 51, 63 (1998). Plaintiffs do not address this argument in their responsive briefing and thus have waived any contrary argument they may have. Given that U.S. Bancorp is the parent company to U.S. Bank National Association, the party alleged to be involved in this case, and given that there are no allegations against U.S. Bancorp itself, this portion of the motion is SUSTAINED. As a result, all claims against U.S. Bancorp are DISMISSED.

The claims brought against the subsidiary U.S. Bank National Association (hereafter "U.S. Bank") are not so easily analyzed. Five claims are brought against U.S. Bank, many of which overlap in significant ways. These involve three claims brought under anti-discrimination statutes specifically targeted toward housing: Count One, Count Three, and Count Four. There is another anti-discrimination claim, Count Two, brought under the Civil Rights Act of 1866 by Carlos Turner only. Finally, the Turners allege a common law count of negligent hiring, training, and supervision (Count Six). The Court will address these categories separately.

19

### 1. Discrimination Claims

As described above, Plaintiffs' claims against U.S. Bank follow one of two broad trajectories. First, they present a theory that U.S. Bank is liable for the discriminatory appraisal of Henley, given that they ordered the appraisal, and did not attempt to fix the faults in the process once the Turners reported the errors. Doc. #9, PageID #233–34. The second theory is based on U.S. Bank's own decision-making process. Under this theory, Plaintiffs contend that U.S. Bank violated the anti-discrimination statutes when they refused to finalize one of the earlier loan applications with more favorable terms. Plaintiffs also allege that U.S. Bank has a policy by which 80% LtV loans for are available for White, American citizens, but only 60% LtV loans are available for applicants like the Turners who may be racial minorities or have a foreign national origin. *Id.* at PageID #236. They also allege that U.S. Bank has a policy which does not permit prospective borrowers to appeal the appraisal when they suspect discrimination played a factor. *Id.* at PageID #237.

U.S. Bank provides several responses. They first argue that the loans were denied for purely nondiscriminatory reasons: that the borrowers had a history of delinquency on their credit reports. Doc. #16, PageID #408. U.S. Bank also points out that it was the bank's own continued effort to work with the Turners that permitted them to eventually meet the qualification process for any loan. *Id.* at PageID #409. Finally, they dispute the Turners' allegations that no appeal of the

20

appraisal was permitted. U.S. Bank points out that, not only is an appeal process available, but the Turners used that process to require Henley to reconsider his appraisal. *Id.* at PageID #410–11.

Plaintiffs' claims which are based on Henleys actions alone are unsustainable. As outlined above, the Amended Complaint fails to establish a viable claim against Henley for the appraisal process. Therefore, any argument that U.S. Bank is liable for that valuation due to their position as the party who ordered the appraisal also fails.

However, Plaintiffs' second theory, that U.S. Bank's own process was discriminatory, may yet provide a well-pleaded claim. Plaintiffs allege that U.S. Bank has a policy which places an upper limit on the possible value that borrowers may take out against their home. They also allege that, based on what U.S. Bank's employees told Diana Davoli Turner, this upper limit is lower for members of certain protected classes, like national origin or race, than it is for white American citizens. Doc. #9, PageID #236. At the motion to dismiss, stage the Court considers these facts in the light most favorable to Plaintiffs and therefore assumes these allegations to be true.

U.S. Bank states that its decision was based on the Turners' ability to repay the loan, given their credit record. Plaintiffs state that the decision was based on a policy of discrimination and one that does not permit potential borrowers to challenge

21

the valuation. The evidence may vindicate U.S. Bank's explanation and rationale, but it is not the Court's task at this stage to wade into a factual dispute such as this one. Instead, viewing the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have stated a valid claim for discrimination on the part of U.S. Bank. Therefore, Plaintiffs' claims under the FHA, OFHA, and ECOA may continue against U.S. Bank.

### 2. *Violation of Civil Rights Act of 1866*

Count Two alleges a violation of the Civil Rights Act of 1866 and is brought by Plaintiff Carlos Turner only. Doc. #9, PageID #245. This claim, like the claims brought under the FHA, OFHA, and ECOA, is a claim based on discriminatory treatment. The difference, however, is that this claim relates only to Carlos Turner's inability to secure a loan that would have been available to others who were not a member of a racial minority. In fact, Plaintiffs openly state that this claim does not depend on the denial of his wife's application, only his own. Doc. #22, PageID #488.

U.S. Bank's challenges to this claim fall into one of two categories. First, they argue that Carlos Turner lacks standing to bring a claim because he was not the applicant. Doc. #16, PageID #403–04. Second, they bring the same substantive arguments that the Amended Complaint does not sufficiently allege discrimination previously analyzed above. *Id.* at PageID #404–06. Given that the Court previously

22

found that the discrimination allegations were sufficient to proceed at this stage, these arguments need not be reanalyzed here.

U.S. Bank's challenge to standing, however, does need to be addressed. Any potential claims of discrimination against Carlos Turner must involve facts, or allegations of facts, to show that Carlos Turner was personally involved in the loan application process. U.S. Bank argues that the Amended Complaint lacks sufficient allegations to link the applications and Carlos Turner. Doc. #16, PageID #403–04. While the Amended Complaint is littered with allegations of Diana Davoli Turner's interactions with U.S. Bank, including the loan applications, appraisals, and interactions with bank employees, Doc. #9, PageID #228–30, according to U.S. Bank, Plaintiffs fail to allege that Carlos Turner ever visited a U.S. Bank branch, interacted with bank employees, or applied with his wife on any of the loans. Doc. #16, PageID #404.

Carlos Turner claims that he did execute paperwork to apply for loan. Doc. #22, PageID #487. The Amended Complaint supports this stance and a copy of the executed HELOC, signed by both Diana Davoli Turner and Carlos Turner is attached as Exhibit 5 to the Amended Complaint. Doc. #9, PageID #241, 367.

The Civil Rights Act of 1866 ensures that members of racial minorities may enjoy the same abilities to enter into contracts, benefit from the protections of laws, and are able to carry out the same transactions of property as white citizens. 42

23

U.S.C. §§ 1981, 1982. Therefore, to properly assert a claim under this Act, Carlos Turner must allege that he was prevented from entering into some sort of transaction because of discrimination. While the Amended Complaint and Exhibit 5 show that Carlos Turner was a signatory to the HELOC ultimately executed, it does not specifically allege that he was a signatory to any of the other loans applied for along the way.

Carlos Turner argues that he could not be expected to provide evidence of other loans where he was listed on the application before discovery has been undertaken. Doc. #22, PageID #488. Ultimately, however, the failure to even allege his signature on earlier loan applications, a fact which would be well within his knowledge even if he cannot access the paperwork at this point, is detrimental. Without these allegations, the Court cannot draw an inference for Plaintiffs on that issue and the facts do not support the idea that Carlos Turner was denied a loan at all, let alone that he was denied because of his race.

Without these necessary allegations, this claim fails. As a result, U.S. Bank's Motion to Dismiss is SUSTAINED with regard to Count Two of the Amended Complaint.

### 3.    *Negligent Hiring, Training, and Supervision*

Count Six was brought by the Turners against U.S. Bank. Doc. #9, PageID #248–49. Under this claim, Plaintiffs allege that U.S. Bank breached a duty of

24

reasonable care in the hiring, training, and supervision of employees. *Id.* Specifically, Plaintiffs allege that U.S. Bank failed to supervise Henley, as well as several U.S. Bank employees: Stephanie, Bruce, and other currently unknown employees. *Id.* at PageID #249.

To properly allege a claim for negligent hiring, training, and supervision under Ohio law, a Plaintiff must plead: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of the plaintiff's injuries. *Evans v. Akron Gen. Med. Ctr.*, 2018-Ohio-3031, ¶ 26 (Ohio Ct. App. Aug. 1, 2018); *Douglas v. Salem Cmty. Hosp.*, 153 Ohio App.3d 350, 366 (Ohio Ct. App. 2003).

In their motion, U.S. Bank asserts that this claim should be dismissed because the Amended Complaint offers "bare-bones" conclusions based on "information and belief" which themselves are insufficient to plead a claim. Doc. #16, PageID #414. In their own defense, Plaintiffs argue that their negligence claim does in fact meet the federal pleading standard. Doc. #22, PageID #491. Plaintiffs' Amended Complaint alleges that Stephanie and Bruce are both employees of U.S. Bank; that the two named employees lacked training in certain areas or failed to implement their training; that U.S. Bank knew or should have known of these issues; that these

25

issues injured Plaintiffs; and that the failure to train was the proximate cause of the injuries. Doc. #9, PageID #230, 234, 235. Taken together, these form a viable basis to bring a claim for negligent hiring, training, and supervision.

However, Defendant also challenges whether these allegations are truly factual allegations or whether they are merely conclusions. Doc. #26, PageID #523-24. This distinction makes a difference as a plaintiff's conclusory allegations cannot support a valid claim; it must be built on factual allegations. *Twombly*, 550 U.S. at 555. Separating and recognizing the difference between factual allegations and conclusory allegations can often be difficult. In this case, both U.S. Bank and Plaintiffs point to the same paragraph in the Amended Complaint to show contradictory conclusions: either that (a) the allegation is conclusory and therefore inadequate or (b) the allegations are sufficiently factual and particularized to survive a motion to dismiss.

Certainly, if the allegation consisted only of "U.S. Bank failed to properly train and supervise Bruce, Stephanie, and other employees who are unknown at this time," these allegations would merely be restating the conclusion they hope a jury may find ultimately decide. Doc. #9, PageID #235. However, this allegation does not end there. In fact, the Amended Complaint lays out four specific items that it alleges the employees were not properly trained on which may have had an effect here: "(1) how to analyze and evaluate loan applications; (2) how to process an

26

appraisal appeal when discrimination is suspected; (3) how to audit or supervise the work of a contracted appraiser; and (4) how to underwrite a loan where appraisal discrimination has been suspected or reported."[6] *Id.*

These are not, as U.S. Bank argues, conclusory allegations. These are factual allegations which may properly sustain a claim. Similarly, Plaintiffs' other allegations meet the other required factors under Ohio law and these claims may go forward as they pertain to Bruce, Stephanie, and other employees of U.S. Bank. Therefore, U.S. Bank's Motion to Dismiss is OVERRULED with respect to Plaintiffs' claim of negligent hiring, training, and supervision against U.S. Bank.

## IV. Conclusion

For the reasons set forth above, the Motion for Dismiss filed by Defendants Henley Appraisals, LLC & Kevin Henley is SUSTAINED and all claims against Henley Appraisals, LLC and Kevin Henley are DISMISSED. Further, the Motion to Dismiss filed by Defendants U.S. Bancorp & U.S. Bank National Association is SUSTAINED IN PART and OVERRULED IN PART. Specifically, Count Two is DISMISSED and all

---

[6] These four itemized allegations may appear to be conclusory statements at first glance. However, these allegations are supported by other factual allegations in the Amended Complaint. Specially, these items follow logically from the interactions described with the U.S. Bank employees and would be easily proven or disproven based on items disclosed in discovery. *See* Calleen McNamara, Iqbal *as Judicial Rorschach Test*, 105 Nw. U. L. Rev. 401, 415 (2011).

claims against U.S. Bancorp are DISMISSED. Counts One, Three, Four, and Six may proceed against Defendant U.S. Bank National Association.

Plaintiffs have 30 days from the issuance of this decision to file any motion seeking leave to amend their Complaint should they deem such an amendment necessary and consistent with Fed. R. Civ. P. Rule 11.


Date: March 11, 2025

Walter H. Rice
_____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE